UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                        :
RUSAVIAINVEST, OOO,                                     :
                                                        :
                        Plaintiff,                      :            Index No.
                                                        :
        v.                                              :
                                                        :            **COMPLAINT**
                                                        :
STEVEN T. MNUCHIN, in his official capacity as          :
The Secretary of the Treasury,                          :
ANDREA M. GACKI, in her official capacity as            :
the Acting Director of the Office of Foreign Assets     :
Control,                                                :
JEFF SESSIONS, in his official capacity as the          :
Attorney General of the United States, and             :
UNITED STATES DEPARTMENT OF THE                         :
TREASURY, OFFICE OF FOREIGN ASSETS                      :
CONTROL,                                                :
                        Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        Plaintiff Rusaviainvest, OOO, by its attorneys, Creizman PLLC, for its complaint,

alleges as follows:

**INTRODUCTION**

1.      This lawsuit arises out of the denial by the United States Department of the

Treasury, Office of Foreign Assets Control ("OFAC") of applications for licenses to

unblock $1.4 million USD that Plaintiff Rusaviainvest, OOO ("Rusaviainvest")

attempted to pay to OJSC National Air Company Uzbekistan Airways ("Uzbekistan

Airways"), by wire transfer under two contracts to purchase used airplanes.

2.      The funds have been frozen for well over a year based on OFAC's baseless,

conclusory, and unjustified determination that the blocked funds "involves an interest of

[a] person sanctioned pursuant to Executive Order 13224," which purports to block

property and prohibit transactions with persons who commit, threaten to commit, or support terrorism.

3.      In making this determination, OFAC ignored Rusaviainvest's numerous submissions detailing the nature of, and reasons for the transaction.  OFAC also ignored Rusaviainvest's representations, including a sworn affidavit by its sole shareholder and chief executive officer, that neither Rusaviainvest, nor any of its officers or employees, has done business with any terrorist or terrorist organization.  Nor is Rusaviainvest, or any of its officers or employees on OFAC's Specifically Designated Global Terrorist (SDGT) list of sanctioned persons and entities.  Moreover, OFAC's conclusory determination does not address the fact that Uzbekistan Airways is not designated as an SDGT, or that it operates in the United States.

4.      Rusaviainvest has suffered, and continues to suffer substantial harm as a result of OFAC's refusal to release the funds to it.  As an initial matter, Rusaviainvest has had to endure financial difficulties without a significant amount of its cash assets, which have been unavailable to it.  Additionally, Uzbekistan Airways seeks monetary damages from Rusaviainvest in the Uzbekistan courts based on Rusaviainvest's alleged failure to perform under the contracts, i.e., by failing to pay the amounts due.

5.      Although Rusaviainvest has argued that OFAC's seizure should be considered as an "act of God" under the contracts' Force Majeure clause, the Uzbekistan courts will not accept Rusaviainvest's defense without a declaration by a United States court that OFAC's seizure of the funds should be regarded as a circumstance within the Force Majeure clauses of the contracts.  Rusaviainvest continues to face enormous financial pressure as a result of Uzbekistan Airways' efforts to recover contractual damages.

6.      After denying Rusaviainvest's applications to release the funds without meaningful explanation, OFAC has sat on Rusaviainvest's application for reconsideration of its denial for five months.  And despite numerous telephone messages, emails, and letters to OFAC and its representatives, not a single official has responded to Rusaviainvest's request for an explanation of the basis for its determination.

7.      This lawsuit challenges OFAC's denial of Rusaviainvest's application to unblock funds and its continued freezing of those funds as arbitrary and capricious under the Administrative Procedure Act.  Rusaviainvest also seeks injunctive relief to unblock the funds.

## PARTIES

### Rusaviainvest

8.      Plaintiff Rusaviainvest is a limited liability corporation organized under the laws of the Russian Federation.  Its principal place of business is located in Moscow.

9.      Rusaviainvest engages in the business of wholesale trading of transportation vehicles, including airplane spare parts and engines, and also contracts for the maintenance and repair of such vehicles, including aircraft.  The company is 100% owned by Andrey Vorobev, who is also its Director.  Neither Rusaviainvest nor Mr. Vorobev are not designated by OFAC as entities or persons on the SDGT list.

10.     Rusaviainvest has been in business since 2008, and has eight employees.  The company does not deal in weapons, arms, or military equipment and does not do business with any Country's military or any military organization.  Prior to the transaction at issue with Uzbekistan Airways, Rusaviainvest has never had any of its funds relating to any of its transactions blocked by OFAC.

### Defendants

3

11.     Defendant Steven T. Mnuchin is sued in his official capacity as Secretary of the Treasury.  He is responsible for designating individuals and entities as Specially Designated Global Terrorists in consultation with the Secretary of State and the Attorney General, is responsible for administering and enforcing the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, and Executive Order 13224, dated September 23, 2001, against designated individuals and entities.

12.     Defendant John E. Smith is sued in his official capacity as the Director of OFAC. He is responsible for designating individuals and entities as Specially Designated Global Terrorists in consultation with the Secretary of the Treasury, the Secretary of State and the Attorney General, is responsible for administering and enforcing the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, and Executive Order 13224, dated September 23, 2001, against designated individuals and entities.

13.     Defendant Jeff Sessions is sued in his official capacity as the Attorney General. He is responsible for designating individuals and entities as Specially Designated Global Terrorists in consultation with the Secretary of the Treasury and the Secretary of State, is responsible for administering and enforcing the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, and Executive Order 13224, dated September 23, 2001, against designated individuals and entities.

14.     Defendant OFAC is the Government of the United States, acting through OFAC.

## JURISDICTION AND VENUE

15.     This action arises under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1361.

16.    This Court may grant declaratory relief under the Declaratory Judgment Act, 28

U.S.C. § 2201, *et seq.*, and Fed. R. Civ. P. 57.  This Court may grant injunctive relief

under Fed. R. Civ. P. 65.

17.    Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because a substantial

part of the events giving rise to the claim occurred in this District in that the funds that

Rusaviainvest attempted to transfer to Uzbekistan Airways were blocked by JPMorgan

Chase Bank, N.A. ("Chase Bank") and Deutsche Bank Trust Company Americas

("Deutsche Bank").  Chase Bank and Deutsche Bank are both headquartered in New

York, and the blocked funds remain frozen in the possession, custody, and control of the

respective banks pending authorization by OFAC to release or otherwise dispose of the

funds.

## STATEMENT OF FACTS

### The Contract for the purchase of the aircraft and the blocking of wire transfers

18.    In October 2016, Rusaviainvest entered into certain contracts with Uzbekistan

Airways to purchase a used aircraft for $2 million USD.  (Copies of the contracts and of

the invoices for the aircraft are annexed hereto as Exhibits A-D).  The purpose of the

transaction was for Rusaviainvest to sell the parts of the aircraft.

19.    Rusaviainvest initiated wire transfers in the amounts of $200,000 and $1,000,000

on March 30, 2017 and March 31, 2017, respectively, directed to the bank account of

Uzbekistan Airways towards the purchase of the aircraft under the contracts.

20.    Rusaviainvest's bank, Absolut Bank, informed Rusaviainvest that Chase, the

intermediary bank, had blocked the wire transfers, and relayed Chase's explanation that

the payments were blocked "as per OFAC" "under the global terrorism sanctions regulations." (Copies of those communications are annexed hereto as Exhibits E and F).

21.     Rusaviainvest initiated another wire transfer on April 10, 2017 in the amount of $200,000 towards the purchase of the aircraft from Uzbekistan Airways under the contracts. The following day, Absolut Bank informed Rusaviainvest that Deutsche Bank was holding the funds pending further review by Deutsche Bank's compliance department. (A copy of that communication is annexed hereto as Exhibit G).

22.     Absolut Bank subsequently communicated to Rusaviainvest that Deutsche Bank advised that "under regulations issued by the US Office of Foreign Assets Control (OFAC), please be advised that the funds have been placed into a blocked account at Deutsche Bank Trust Company. We regret any inconvenience our actions may have caused, but we are prohibited from returning blocked funds until such time as OFAC issues a license permitting release of the funds." (A copy of that communication is annexed hereto as Exhibit H.)

**Rusaviainvest files an application with OFAC for a license to unblock the funds**

23.     Rusaviainvest's sole owner and Director, Andrey Vorobev, filed license applications to unblock the funds, with exhibits, including the contracts with Uzbekistan Airways, Rusiviainvest's corporate documents, and his passport. (A copy of those applications, without the attached exhibits, are annexed hereto as Exhibits I-K).

24.     In or about June 2017, Rusaviainvest retained undersigned counsel to pursue the applications for licenses to unblock the funds. To that end, on June 6, 2017, Rusaviainvest's counsel submitted a letter with numerous exhibits in order to supplement the company's initial applications, including describing the nature and purpose of the

transaction, the background and business of Rusaviainvest, and the reasons why the funds should be unblocked.  (A copy of the June 6, 2017 letter, without exhibits, is annexed hereto as Exhibit L).

25.     In order to suggest that OFAC may have made a mistake, the June 6 letter advised OFAC that Rusaviainvest "should not be confused with a company with a similar name, 'Rusavia, Ltd.' whose website is en.rusavia.com, which according to the website, deals in a 'Russian-American project' titled 'Warplanes to Syria.'"  (Ex. L at 2).  The letter made plain that Rusaviainvest "does not deal in weapons, arms, or military equipment and does not do business with any Country's military or any military organization." (*Id.*).

26.     Furthermore, the letter advised that Rusaviainvest "has absolutely nothing to do with any terrorist organization," and that Vorobev is neither "affiliated with any" Specially Designated Nationals and Blocked Persons ("SDN"), nor "does he do business with any SDNs." (Ex. L at 3).  In addition, "[n]one of the Company's employees is an SDN." (*Id.*).  The letter also informed OFAC that before the blocking of the funds at issue, "Rusaviainvest has never had any of its funds relating to any of its transactions blocked by OFAC." (*Id.* at 2).

**Counsel attempts unsuccessfully to communicate with OFAC.**

27.     Having received no response from OFAC, and unable to speak with any OFAC representative despite repeated emails and voice messages, undersigned counsel sent a letter to Alison Cooper, then the Chief of Blocked Assets Administration and Analysis at OFAC, dated July 5, 2017.  (A copy of the July 5, 2017 letter, without exhibits, is annexed hereto as Exhibit M).  Counsel advised Ms. Cooper of his efforts to communicate with OFAC and obtain the release of the blocked funds.

28.     Undersigned counsel sent a letter to OFAC's Compliance Department dated

August 21, 2017, reiterating the arguments supporting the unblocking of the funds.  (A

copy of the August 21, 2017 letter, without exhibits, is annexed hereto as Exhibit N).

Counsel advised that he had: (i) provided a comprehensive submission, with exhibits, on

June 6; (ii) a letter to the Chief of Blocked Assets Administration and Analysis, on July

5; and (iii) "tried on a weekly basis for several months now to actually communicate with

a live human being in the appropriate department so that we can address the issues and so

I can provide answers to my client. . . ."  (Ex. N at 1).

29.     The August 21 letter also advised OFAC that Rusaviainvest "is not a wealthy

company.  It is an honest business and its funds were blocked in an attempted transaction

to purchase a used airplane from the Uzbekistan national air carrier.  Under the terms of

its contract, [Rusaviainvest] is arguably subject to liquidated damages."

30.     Having received no response, counsel followed up with another letter to OFAC,

dated September 26, 2017, and, in October 2017, an email to OFAC and a

communication over LinkedIn to the Chief of Blocked Assets Administration and

Analysis .  (A copy of the September 26, 2017 letter is annexed hereto as Exhibit O, and

a copy of the email and LinkedIn communication are annexed hereto as Exhibit P).

**OFAC summarily denies Rusaviainvest's application**

31.     In identically-worded letters to Andrey Vorobev, dated October 5, 2017, from

Mary Patricia Rasmussen, Chief of the Licensing Division of OFAC, OFAC advised

Rusaviainvest that it had denied Rusaviainvest's applications for licenses to unblock the

frozen funds with the barebones explanation that "the blocked funds transfer in question

involves an interest of a person sanctioned pursuant to Executive Order 13224." (Copies of the October 5, 2017 letters are annexed hereto as Exhibit Q).

32.     OFAC did not inform Rusaviainvest whether it believed the "interest of a person" related to any person related to Rusaviainvest or to Uzbekistan Airways.  It provided no information whatsoever or any reasoning why the arguments Rusaviainvest had advanced were incorrect.  Nor did OFAC identify that any of the factual statements by Rusaviainvest in its submissions were inaccurate.  If the reason the funds were blocked was because of Uzbekistan Airways—which seems unlikely since it is Uzbekistan's national air carrier and it operates in the United States—OFAC did not explain why it would not release the funds to Rusaviainvest.  OFAC did not even bother to address the fact that neither Rusaviainvest nor Uzbekistan Airways appear on the SDGT list.

**Rusaviainvest requests reconsideration, which OFAC continues to ignore**

33.     On November 28, 2017, undersigned counsel submitted applications to OFAC for reconsideration of its denial of Rusaviainvest's applications.  (Copies of the applications for reconsideration, without exhibits, are annexed hereto as Exhibit R).

34.     The applications for reconsideration were supplemented by a sworn affidavit by Andrey Vorobev attesting to the fact that Rusaviainvest "has never had any relations with any person or organization specified under the Executive order."  Vorobev added that Uzbekistan Airways "has [had] long-standing cooperation with [the] Boeing company and operates more than dozen[s] of Boeing aircraft."  (A copy of the Vorobev affidavit is annexed hereto as Exhibit S).

35.     Just like before OFAC's denial, undersigned counsel has attempted to engage in dialogue with OFAC and seek an explanation for why OFAC denied Rusaviainvest's

application for licenses to unblock the funds.  On January 25, 2018, undersigned counsel
wrote Mary Patricia Rasmussen, the Chief of OFAC's Licensing Division, advising her
of the pending applications for reconsideration and asking OFAC to enable Rusaviainvest
to address OFAC's reasons for denying the applications:

> We have no understanding as to why the funds were blocked in the first place.  If
> the reason is that OFAC has any information that the Company or any of its
> owners or officers are affiliated with terrorism or any terrorist organizations, we
> submit that information is inaccurate.  To that end, the president and sole owner
> of the Company submitted a sworn affidavit that neither he nor any employees
> have anything whatsoever to do with any terrorist organization.
>
> On the other hand, the counterparty to the contract at issue is the national air
> carrier for Uzbekistan, which flies planes to and from the United States.  Thus, we
> have no understanding why OFAC is blocking the funds.  At a minimum, the
> Company should get a refund.  If OFAC takes a different position, we would like
> the actual reasons for it, so that we can address what we think is an error on
> OFAC's part.
>
> Unfortunately, I have not been able to speak to a single human being from
> OFAC—no lawyer, regulator, or anyone—and I have tried very hard to engage in
> a dialogue, so I can explain to my client why it is not getting its funds back.

(A copy of the January 25, 2018 letter to Mary Patricia Rasmussen is annexed hereto as
Exhibit T).  Ms. Rasmussen never responded to the letter.

36.    Subsequent telephone calls, voice messages, and emails from undersigned counsel
to OFAC went unanswered, aside from one fortuitous call that a staff member from
OFAC picked up.  The staff member took down the information concerning the
applications and promised to get back to undersigned counsel with information, but never
did.  Further attempts to reach that staff member were unsuccessful.

37.    Undersigned counsel sent a letter to Bradley T. Smith, Chief Counsel of OFAC,
dated March 26, 2018, reiterating all of Rusaviainvest's arguments to release the funds
and counsel's repeated, unsuccessful attempts to engage in a dialogue with OFAC or

otherwise get answers.  Needless to say, undersigned counsel received no response from OFAC.

38.      As of the date of this filing, according to an automated OFAC hotline, the applications for reconsideration remain pending.

39.      To date, after well over a year, OFAC has yet to demonstrate that it has reviewed the relevant data, or articulate a satisfactory explanation for its denial of Rusaviainvest's applications for licenses to unblock the frozen funds.  Nor has OFAC identified a rational connection between whatever facts that it has found and the decision it has made.

## FIRST CLAIM FOR RELIEF
**Declaratory Judgment that OFAC's denial of Rusaviainvest's application for licenses to unblock funds violates the Administrative Procedure Act**

40.      Plaintiff realleges each and every prior allegation herein.

41.      OFAC's refusal to grant a license to Rusaviainvest to unblock the frozen funds under these circumstances is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the Administrative Procedure Act, 5 U.S.C. § 551, *et seq*.

42.      OFAC's refusal to grant a license to Rusaviainvest to unblock the frozen funds under these circumstances constitutes an action in excess of its statutory authority requiring the exercise of discretion in the issuance or denial of licenses.

## SECOND CLAIM FOR RELIEF
**Injunctive relief to unblock the funds**

43.      Plaintiff realleges each and every prior allegation herein.

44.      OFAC's blocking of Rusaviainvest's funds transfers were not authorized by the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, or Executive Order 13224, dated September 23, 2001.

45.     The goals and purposes of the Global Terrorism Sanctions regulations, 31 C.F.R.

Part 594, and Executive Order 13224, dated September 23, 2001, are not achieved or

promoted through the continued blocking of the funds and they should be released.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

A.      A declaratory judgment that OFAC's blocking of the funds in the amount of $1.4 million USD and its denial of Rusaviainvest's application to unblock those funds violate the Administrative Procedures Act, 5 U.S.C. § 551, *et seq*.

B.      An injunction compelling OFAC to grant Rusaviainvest's applications for licenses to unblock the $1.4 million USD at issue or otherwise immediately release those funds to Rusaviainvest.

C.      An order awarding Rusaviainvest the costs of this suit, including attorneys' fees, under the Equal Access to Justice Act, 28 U.S.C. § 2412, *et seq.*, and

D.      An order awarding any such other and further relief as this Court deems just and proper.

Dated: New York, New York
        June 22, 2018

By: /s/ Eric M. Creizman
Eric M. Creizman (EC-7684)
565 Fifth Avenue, 7th Floor
New York, New York 10017
Telephone: (212) 972-0200
Facsimile: (646) 200-5022
Email: ecreiz@creizmanllc.com

*Attorneys for Plaintiff*
*Rusaviainvest, OOO*