**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RUSAVIAINVEST, OOO,<br><br>     Plaintiff,<br><br>  v.<br><br>STEVEN T. MNUCHIN, in his official capacity as the Secretary of the Treasury; ANDREA M. GACKI, in her official capacity as the Director of the Office of Foreign Assets Control; WILLIAM BARR, in his official capacity as the Attorney General of the United States; and UNITED STATES DEPARTMENT OF THE TREASURY, OFFICE OF FOREIGN ASSETS CONTROL,<br><br>     Defendants. | No. 18 Civ. 5676 (PGG) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
(212) 637-2663

JENNIFER JUDE
Assistant United States Attorney,
Of Counsel

**Table of Contents**

Page:

PRELIMINARY STATEMENT ............................................................................................1

BACKGROUND .............................................................................................................2

    A. Historical Overview ..............................................................................................2

    B. IEEPA.......................................................................................................................3

    C. Executive Order No.13,224...................................................................................4

    D. OFAC Regulation ..................................................................................................6

    E. Factual Background.................................................................................................6

    F. Plaintiff's Lawsuit ..................................................................................................9

ARGUMENT ..................................................................................................................10

I. Standard of Review ....................................................................................................10

II. OFAC's Denial Of Plaintiff's License Applications Was Not Arbitrary, Capricious, or in Excess of Its Authority .............................................................................................11

    A. OFAC's Decision Is Entitled to Substantial Deference ...............................11

    B. OFAC's Well-Reasoned Decision Easily Satisfies the APA's Standard....................13

III. Plaintiff Is Not Entitled to Injunctive Relief.......................................................17

CONCLUSION................................................................................................................18

# Table of Authorities

Cases:                                                                                    Page(s)

*Air Cargo v. U.S. Postal Serv.*,
674 F.3d 852 (D.C. Cir. 2012)................................................................................. 17

*Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*,
462 U.S. 87 (1983)................................................................................................ 11

*Bellevue Hosp. Center v. Leavitt*,
443 F.3d 163 (2d Cir. 2006).............................................................................. 11, 12

*Bowman Transp., Inc., v. Arkansas-Best Freight Sys. Inc.*,
419 U.S. 281 (1974).............................................................................................. 11

*Camp v. Pitts*,
411 U.S. 138 (1973)......................................................................................... 10, 18

*Charles T. Main Int'l, Inc. v. Khuzestan Water & Power Auth.*,
651 F.2d 800 (1st Cir. 1981)................................................................................. 13

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971).............................................................................................. 11

*Consarc Corp. v. Dep't of the Treasury*,
71 F.3d 909 (D.C. Cir. 1995)................................................................................ 13

*Dames & Moore v. Regan*,
453 U.S. 654 (1981).............................................................................................. 13

*De Cuellar v. Brady*,
881 F.2d 1561 (11th Cir. 1989) ............................................................................ 13

*Empresa Cuban Exportada de Alimentos y Productos Varios v. U.S. Dep't of Treasury*,
606 F. Supp. 2d 59 (D.D.C. 2009)........................................................................ 13

*Empresa Cuban Exportada de Alimentos y Productos Varios v. U.S. Dep't of Treasury*,
516 F. Supp. 2d 43 (D.D.C. 2007)........................................................................ 18

*Fares v. Smith*,
901 F.3d 315 (D.C. Cir. 2018)............................................................................. 15

*Florida Power & Light Co. v. Lorion*,
470 U.S 729 (1985)............................................................................................... 18

*Freedom to Travel Campaign v. Newcomb*,
   82 F.3d 1431 (9th Cir. 1996) ......................................................... 13

*Global Relief Found., Inc. v. O'Neill*,
   207 F. Supp. 2d 779 (N.D. Ill. 2002) ............................................ 12

*Global Relief Found., Inc. v. O'Neill*,
   315 F.3d 748 (7th Cir. 2002) ........................................................... 5

*Harisiades v. Shaughnessy*,
   342 U.S. 580 (1952) ...................................................................... 12

*Havana Club Holding, S.A. v. Galleon, S.A.*,
   203 F.3d 116 (2d Cir. 2000) ......................................................... 13

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) .......................................................................... 12

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   219 F. Supp. 2d 57 (D.D.C. 2002) ............................................... 12

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
   333 F. 3d 57 (D.C. Cir. 2003) ................................................. 15, 16

*Int'l Fabricare Inst. v. EPA*,
   972 F.2d 384 (D.C. Cir. 1992) ..................................................... 11

*Islamic Am. Relief Agency v. Gonzales*,
   477 F.3d 728 (D.C. Cir. 2007) ..................................................... 13

*Islamic Am. Relief Agency v. Unidentified FBI Agents*,
   394 F. Supp. 2d 34 (D.D.C. 2005) ............................................... 12

*Just Bagels Mfg., Inc. v. Mayorkas*,
   900 F. Supp. 2d 363 (S.D.N.Y. 2012) ......................................... 10

*Kadi v. Geithner*,
   42 F. Supp. 3d 1 (D.D.C. 2012) .............................................. 10, 15

*Marsh v. Oregon Natural Resources Council*,
   490 U.S. 360 (1989) ...................................................................... 11

*Monsanto Co. v. Geertson Seed Farms*,
   561 U.S. 139 (2010) ...................................................................... 17

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)................................................................................. 12

*Nat'l Ass'n of Home Builders v. Defs. of Wildlife*,
    551 U.S. 644 (2007)............................................................................... 17

*Nat'l Council of Resistance of Iran v. Dep't of State*,
    251 F.3d 192 (D.C. Cir. 2001)............................................................. 15

*OKKO Business PE v. Lew*,
    133 F. Supp. 3d 17 (D.D.C. 2015)................................................. 16, 17

*Orvis v. Brownell*,
    345 U.S. 183 (1953)................................................................................. 3

*Paradissiotis v. Rubin*,
    171 F.3d 983 (5th Cir. 1999)................................................................ 13

*Propper v. Clark*,
    337 U.S. 472 (1949)................................................................................. 3

*Regan v. Wald*,
    468 U.S. 222 (1984)................................................................. 3, 6, 12, 13

*Richardson v. Simon*,
    560 F.2d 500 (2d Cir. 1977).................................................................. 13

*State of New York v. Shalala*,
    21 F.3d 485 (1994)................................................................................. 18

*Environmental Defense v. U.S. Dep't of Environmental Protection*,
    369 F.3d 193 (2d Cir. 2004).................................................................. 11

*World Fuel Corp. v. Geithner*,
    568 F.3d 1345 (11th Cir. 2009)............................................................ 18

*Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*,
    750 F. Supp. 2d 150 (D.D.C. 2010)........................................... 12, 16, 17

*Zevallos v. Obama*,
    10 F. Supp. 3d 111 (D.D.C. 2014)............................................. 10, 12, 18

Statutes:

5 U.S.C. § 500-706 .................................................................................. 2

5 U.S.C. § 704.......................................................................................... 9

5 U.S.C. § 706 .............................................................................................. 10, 11

50 U.S.C. app. § 1-44 ........................................................................................ 2

50 U.S.C. § 1701(a) ........................................................................................... 3

50 U.S.C. § 1702(a)(1)(B) ................................................................................. 3

50 U.S.C. § 1702(c) ............................................................................... 7, 15, 16

50 U.S.C. §§ 1701-1707 .................................................................................... 3

Rules:

Fed. R. Civ. P. 25(d) .......................................................................................... 1

Fed. R. Civ. P. 56(a) ........................................................................................ 10

Regulations:

31 C.F.R. Part 500 .............................................................................................. 6

31 C.F.R. § 501.801-802 ................................................................................... 6

31 C.F.R. Part 594 .......................................................................................... 1, 3

31 C.F.R. § 594.201 ..................................................................................... 5, 16

31 C.F.R. § 594.203 .......................................................................................... 7

31 C.F.R. § 594.309 ........................................................................................ 15

31 C.F.R. § 594.310 .......................................................................................... 5

Other Authorities:

S. Rep. No. 95-466, 1977 U.S.C.C.A.N. 4540 ................................................. 3

Exec. Order No. 12,978 ..................................................................................... 4

Exec. Order No. 13,224 .............................................................................. passim

Exec. Order No. 13,382 ..................................................................................... 4

Defendants Steven T. Mnuchin, in his official capacity as the Secretary of the Treasury; Andrea M. Gacki, in her official capacity as the Director of the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC"); William Barr, in his official capacity as the Attorney General of the United States;[1] and OFAC (together, the "Defendants" or the "Government"), by and through their attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion for summary judgment with respect to the complaint of Plaintiff Rusaviainvest, OOO ("Plaintiff").

## PRELIMINARY STATEMENT

When Plaintiff attempted to wire three payments totaling $1.4 million to Uzbekistan Airways in March and April 2017, U.S.-based intermediary banks froze the funds because they were blocked under Executive Order 13,224 and the Global Terrorism Sanctions Regulations, 31 C.F.R. Part 594. The funds were frozen because OFAC, the component of the Treasury Department that administers and enforces the United States' global economic sanctions programs, had determined that a "person" (which is defined in regulations to include individuals or entities) on OFAC's list of Specially Designated Nationals and Blocked Persons (the "SDN list") had an interest in the funds. After receiving notice of the blocking, Plaintiff submitted applications for a license to unblock the funds to OFAC along with letters (and supporting materials) arguing that the blocking was a mistake because neither Plaintiff nor Uzbekistan Airways was on the SDN list. OFAC denied Plaintiff's applications on the basis that a designated person had an interest in the blocked funds.

---

[1] Under Federal Rule of Civil Procedure 25(d), the successor of a public officer sued in his or her official capacity is automatically substituted as a party when his or her predecessor leaves office.

In this lawsuit, Plaintiff challenges OFAC's denial of its license applications as arbitrary, capricious, and in excess of the agency's statutory authority (and in violation of its own regulations), and asks the Court to declare that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 500-706, and to order that the funds be unblocked. OFAC has compiled the administrative record concerning the agency's decision to deny Plaintiff's license applications. Because much of that record is classified or privileged, the Government is filing a redacted version of it and submitting the unredacted version to the Court for *ex parte*, *in camera* review, which is permitted by statute. Because the administrative record shows that OFAC evaluated the information before it, including Plaintiff's submissions, and came to a reasoned and well-supported decision to deny Plaintiff's license applications, Defendants are entitled to summary judgment on Plaintiff's claims. But even if the Court were to disagree (and the Government is confident it will not), the only remedy for violation of the APA is to vacate OFAC's decision and remand to OFAC for further consideration, not an order directing the Government to unblock the funds as Plaintiff has requested.

## BACKGROUND

### A. Historical Overview

For nearly its entire history, the United States has utilized economic sanctions as a tool of foreign policy and national security. In much of the 20th century, U.S. sanctions programs were governed by the Trading With the Enemy Act ("TWEA"), enacted in 1917. *See* 40 Stat. 411 (codified as amended at 50 U.S.C. app. §§ 1-44). As amended in 1933, TWEA granted the President "broad authority" to "investigate, regulate . . . prevent or prohibit . . . transactions" in times of war or declared national emergencies. *See* 50 U.S.C. app. § 5(b); *Dames & Moore v. Regan,* 453 U.S. 654, 672 (1981). Although TWEA does not use the term "block," the authority

it conveyed to the Executive to regulate, prevent, or prohibit transactions consistently has been interpreted to encompass the power to block or freeze an entity's property.  *See, e.g.*, *Orvis v. Brownell*, 345 U.S. 183, 187-88 (1953); *Propper v. Clark,* 337 U.S. 472, 483-84 (1949).

## B.  IEEPA

In 1977, Congress amended TWEA and enacted the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. §§ 1701-1707, to delineate "the President's authority to regulate international economic transactions during wars or national emergencies."  *See* S. Rep. No. 95-466 at 2, *reprinted in* 1977 U.S.C.C.A.N. 4540, 4541.  IEEPA limited TWEA's application to periods of declared wars and to certain existing TWEA programs, with IEEPA available during other times of declared national emergency.  *See Regan v. Wald*, 468 U.S. 222, 227-28 (1984).  Although the broad authorities granted to the President under TWEA and IEEPA remained essentially the same as those under TWEA, with certain limited exceptions, *see id.*, IEEPA requires the President to declare a national emergency "to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States." *See* 50 U.S.C. § 1701(a).  Similar to TWEA, IEEPA authorized the President to:

> investigate, block during the pendency of an investigation, regulate, direct and compel, nullify, void, prevent or prohibit, any acquisition, holding, withholding, use, transfer, withdrawal, transportation, importation or exportation of, or dealing in, or exercising any right, power or privilege with respect to, or transactions involving, any property in which any foreign country or a national thereof has any interest by any person, or with respect to any property, subject to the jurisdiction of the United States . . . .

*Id.* § 1702(a)(1)(B).

Pursuant to this expansive authority, Presidents have designated persons under sanctions programs based on IEEPA in response to a variety of declared national emergencies.  *See, e.g.*,

Exec. Order No. 13,382, 70 Fed. Reg. 38567 (July 1, 2005) (blocking the property and interests in property of persons who, among other things, have engaged in transactions that have materially contributed to the proliferation of weapons of mass destruction); Exec. Order No. 12,978 § 1, 60 Fed. Reg. 54579 (Oct. 21, 1995) (blocking property and interests in property of persons who, among other things, play a significant role in international narcotics trafficking centered in Colombia). In October 2001, the United and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act of 2001 (the "USA PATRIOT Act") amended IEEPA. Among other things, the amendments provided that, in case of judicial review of an IEEPA blocking, an agency record containing classified information "may be submitted to the reviewing court *ex parte* and *in camera*." *See* 50 U.S.C. § 1702(c), *added by* Pub. L. No. 107-56, § 106, 115 Stat. 272, 278 (2001).

## C. Executive Order No. 13,224

Following the September 11, 2001 terrorist attacks, President Bush issued Executive Order No. 13,224, effective on September 24, 2001, declaring a national emergency with respect to the "grave acts of terrorism committed by foreign terrorists . . . and the continuing and immediate threat of further attacks on United States nationals or the United States," because such acts constitute "an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States." *See* Exec. Order No. 13,224, Preamble (as amended). In making this determination and declaring an emergency to deal with that threat, the President invoked the authority of, *inter alia,* IEEPA. *See id.* Twenty-seven persons were listed in the annex to Executive Order No. 13,224, the effect of which is the blocking of their property and interests in property that are in the United States, that subsequently come within the United

States, or that subsequently come within the "possession or control of U.S. persons." *Id.* § 1 & Annex.

The Order, as subsequently amended, authorizes the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to designate foreign persons determined to have committed, or to pose a significant risk of committing, acts of terrorism that threaten the security of U.S. nationals or the national security, foreign policy, or economy of the United States. The Order also authorizes the Secretary of the Treasury, in consultation with the Secretary of State, the Attorney General, and the Secretary of Homeland Security, to designate other persons who are "owned or controlled by" or "act for or on behalf of" persons listed in the Annex or designated pursuant to this Order, or because they "assist in, sponsor, or provide . . . support for, or financial or other services to, or in support of, such acts of terrorism" or persons listed in the Annex or designated pursuant to this Order, or are "otherwise associated" with those persons. *Id.* § 1(c)-(d). Persons listed in the Annex of or designated pursuant to Executive Order 13,224 are known as "Specially Designated Global Terrorists" ("SDGTs"). 31 C.F.R. § 594.310. Such persons are added to OFAC's SDN list, along with persons designated under other sanctions programs administered by OFAC.[2] *See id.* § 594.201, Note 2 to Paragraph (a).

Executive Order 13,224 authorizes the Secretary of the Treasury to "employ all powers granted to the President by IEEPA," to promulgate rules and regulations to carry out the purposes of the Order, and to re-delegate such functions. *See* Exec. Order No. 13,224 § 7; 31 C.F.R. Part 594 (the "Global Terrorism Sanctions Regulations"). Also, due to the exigencies of

---

[2] *See* Office of Foreign Assets Control, Specially Designated Nationals and Blocked Persons List, available at https://www.treasury.gov/ofac/downloads/sdnlist.pdf (last visited March 14, 2019).

the national emergency, the President has declared that SDGTs need not be given notice prior to being designated as such because to do so "would render these measures ineffectual." *Id.* § 10.

## D. OFAC Regulations

OFAC has also promulgated recordkeeping and procedural regulations applicable to all of the United States' various sanctions programs. *See* 31 C.F.R. Part 500; *see also Regan*, 468 U.S. at 226 n.2. These regulations permit a designated or blocked person to seek a license from OFAC to engage in transactions involving blocked property. *See* 31 C.F.R. §§ 501.801-802. In addition, the regulations establish a procedure to allow a person to "seek administrative reconsideration" of a designation or blocking if a party believes an error has been made. *Id.* §§ 501.806-807.

## E. Factual Background

According to the Complaint, Plaintiff is a Russian company located in Moscow that "engages in the business of wholesale trading of transportation vehicles, including airplane spare parts and engines, and also contracts for the maintenance and repair of such vehicles, including aircraft." Dkt. No. 3 ("Compl.") ¶¶ 8-9. In October 2016, Plaintiff entered into contracts with Uzbekistan Airways to purchase a used aircraft for $2 million. *Id.* ¶ 18 & Ex. A-D. On March 30, 2017, and March 31, 2017, Plaintiff initiated wire transfers in the amounts of $200,000 and $1,000,000, respectively, from Absolut Bank in Moscow, to the bank account of Uzbekistan Airways towards the purchase of the aircraft. *Id.* ¶¶ 19-20. JPMorgan Chase N.A., an intermediary bank, blocked each transaction. *See id.* ¶ 20 & Exs. E-F. On April 10, 2017, Plaintiff initiated another wire transfer in the amount of $200,000 towards the purchase of the aircraft. *Id.* ¶ 21. Intermediary bank Deutsche Bank blocked that transaction. *See id.* ¶ 21 & Ex.

G.  Absolut Bank informed Plaintiff of each of the blockings and that Plaintiff would need licenses from OFAC to unblock the frozen assets.[3]  *Id.* ¶¶ 20-22 & Exs. E-H.

Plaintiff's owner, Andrey Vorobev, sought to unblock the funds by filing three license applications (one for each wire transfer) on April 24, 2017, April 24, 2017, and May 19, 2017, and attaching to those applications copies of his passport and Plaintiff's corporate documents, among other documents.[4]  *Id.* ¶ 23 & Exs. I-K; AR 0253-61, 0488-96, 0776-803.  On June 6, 2017, Plaintiff's counsel sent a letter to OFAC's Licensing Division providing supplemental information and submitting that "the funds were blocked in error."  AR 0262-0333, 0561-0632, 0804-0875.  In his letter, Plaintiff's counsel stated that neither Plaintiff, Mr. Vorobev, nor any of their employees is an SDN or affiliated with any SDN, and that Plaintiff has "absolutely nothing to do with any terrorist organization" and should not be confused with Rusavia, Ltd., another company with a similar name.  *Id.* ¶¶ 24-26 & Ex. L.  Plaintiff's counsel sent follow-up letters and emails requesting information about the status of the license applications on July 5, 2017,

---

[3] As the license denial letter explained, "[a] blocked wire transfer is generally placed into an interest-bearing account, and the holder is prohibited from engaging in any transaction in such property or from exercising any rights, powers, or privileges with respect to such property, absent authorization from OFAC."  AR 0473-74, 0753-55, 1004-06; *see* 31 C.F.R. § 594.203. Citations to "AR__" are citations to the administrative record submitted by the Government with this motion.  As OFAC's decision to deny Plaintiff's licenses is based in part on information that is classified or law enforcement privileged, Defendants have lodged a copy of the unredacted administrative record with the Court for its *ex parte*, *in camera* review.  *See* 50 U.S.C. § 1702(c). In addition, Defendants are submitting to the Court for its *ex parte*, *in camera* review, two declarations related to the redacted portions of the administrative record.  The first declaration explains the basis for Defendants' assertions of the law enforcement privilege.  The second declaration explains certain aspects of the classified portion of the record.  The Declaration of Michael W. Mason, which has been filed together with the Government's motion, provides unclassified, publicly releasable information about these two *ex parte* declarations.

[4] In addition, Plaintiff submitted several additional license applications about the same wire transfers, which OFAC closed as duplicates or merged with existing license applications.

August 9, 2017, August 21, 2017, and October 3, 2017. *See* AR 0334-439, 0441, 0633-729, 0876-980.

On August 22, 2017, officials in OFAC's Licensing Division consulted with officials in OFAC's Office of Global Targeting by email about Plaintiff's license applications. Specifically, a Licensing Officer requested that an investigator in the Office of Global Targeting "review the request and attached documentation." The investigator responded, "Yes this transaction was made in the interest of an SDN." AR 0447-49, 0734-36, 0981-83.

Using that information and other information available to it, OFAC's Licensing Division denied each of Plaintiff's license applications and sent three letters dated October 5, 2017, explaining that "the blocked funds transfer in question involves an interest of a person sanctioned pursuant to Executive Order 13224." AR 0473-74, 0753-55, 1004-06; Compl. ¶ 31 & Ex. Q. The letters also explain that "[an] interest in property sufficient to require blocking may be an interest of any nature whatsoever, direct or indirect. . . . Once a wire transfer has been blocked, OFAC does not recognize attempts to extinguish the interest of the sanctions target in the transfer by, for example, canceling the original payment instructions or effecting a second payment to the beneficiary." *Id.*

On November 28, 2017, Plaintiff's counsel requested that OFAC reconsider its denial of Plaintiff's license applications. Compl. ¶ 33 & Ex. R. Plaintiff's reconsideration applications attached an affidavit by Mr. Vorobev stating that Plaintiff "has never had any relations with any person or organization specified under the Executive order" and stating that Uzbekistan Airways has a long-standing relationship with American company Boeing.[5] *Id.* ¶ 34 & Ex. S.

---

[5] Plaintiff's reconsideration applications, which remain pending, are not part of the administrative record for this case because the APA only permits review of "final agency

**F. Plaintiff's Lawsuit**

In this lawsuit, Plaintiff "challenges OFAC's denial of [Plaintiff's] application[s] to unblock funds and its continued freezing of those funds as arbitrary and capricious under the Administrative Procedure Act" and "also seeks injunctive relief to unblock the funds."[6] *Id.* ¶ 7. Specifically, Plaintiff alleges that OFAC "ignored Rusaviainvest's numerous submissions detailing the nature of, and reasons for the transaction," *id.* ¶ 3, and Plaintiff's arguments that its assets may have been blocked by mistake, *id.* ¶ 25. Further, Plaintiff takes issue with the fact that OFAC "provided no information whatsoever or any reasoning why the arguments Rusaviainvest had advanced were incorrect" and "did not explain why it would not release the funds to Rusaviainvest." *Id.* ¶ 32. As such, according to Plaintiff, OFAC has not "identified a rational connection between whatever facts that it has found and the decision it has made." *Id.* ¶ 39.

In the Complaint, Plaintiff brings two claims. In Count One, Plaintiff seeks a declaration that OFAC's denial of the license applications violated the APA because the denials were either "arbitrary, capricious, an abuse of discretion, [or] otherwise not in accordance with the [APA]." *Id.* ¶ 41. Plaintiff also asserts that OFAC's denials violate the APA because they constitute action "in excess of its statutory authority requiring the exercise of discretion in the issuance or denial of licenses." *Id.* ¶ 42. In Count Two, Plaintiff seeks injunctive relief, specifically that the

---

action," 5 U.S.C. § 704, and there has been no final agency action with respect to those applications.

[6] Plaintiff names as defendants the Secretary of the Treasury, the Attorney General, the Director of OFAC, and OFAC itself. *See* Compl. ¶¶ 11-14. OFAC, which is part of the U.S. Department of Treasury, issued the license denials and compiled the administrative record in support of those denials. Plaintiff does not allege any final agency action, much less unlawful action, on the part of the Secretaries of Treasury, the Attorney General, or the Director of OFAC and those defendants should be dismissed for that reason alone.

Court order OFAC to unblock the funds because the blocking was "not authorized by the Global Terrorism Sanctions regulations, 31 C.F.R. Part 594, or Executive Order 13,224." *Id.* ¶ 44.

## ARGUMENT

### I. Standard of Review

Ordinarily, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As here, when "a party seeks review of agency action under the APA, the 'entire case on review is a question of law,' such that '[j]udicial review of agency action is often accomplished by filing cross-motions for summary judgment.'"[7] *Just Bagels Mfg., Inc. v. Mayorkas*, 900 F. Supp. 2d 363, 372 (S.D.N.Y. 2012) (citation omitted); *see Zevallos v. Obama*, 10 F. Supp. 3d 111, 117 (D.D.C. 2014) (quoting *Kadi v. Geithner*, 42 F. Supp. 3d 1, 9 (D.D.C. 2012)), *aff'd*, 793 F.3d 106 (D.C. Cir. 2015) ("[S]ummary judgment [] serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review."); *see also id.* (noting the court's "limited role" "in reviewing the administrative record" and explaining that "[w]hen assessing a summary judgment motion in an APA case, 'the district judge sits as an appellate tribunal'") (citation omitted). A court's review of an agency's action under the APA is generally limited to the administrative record compiled by the agency. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam).

---

[7] Because in an APA case the entire case on review is a question of law, the Government has not submitted a Local Civil Rule 56.1 statement of material facts as to which there is no genuine issue to be tried.

## II.  OFAC's Denial of Plaintiff's License Applications Was Not Arbitrary, Capricious, or in Excess of Its Authority

### A.  OFAC's Decision Is Entitled to Substantial Deference

Under the APA, this Court may only hold unlawful and set aside an agency decision that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." *See* 5 U.S.C. § 706(2).  Review under the APA's "arbitrary and capricious" standard is "narrow and particularly deferential," requiring the agency only to demonstrate that it "has considered the evidence, examined the relevant factors, and spelled out a satisfactory rationale for its action including the demonstration of a reasoned connection between the facts it found and the choice it made." *Envtl. Def. v. U.S. E.P.A.*, 369 F.3d 193, 201 (2d Cir. 2004); *see also*, *e.g.*, *Marsh v. Oregon Natural Resources Council*, 490 U.S. 360, 378 (1989); *Int'l Fabricare Inst. v. EPA*, 972 F.2d 384, 389 (D.C. Cir. 1992) (stating that this "highly deferential standard of review presumes 'agency action to be valid'").

Courts have "no license to substitute [their] policy judgment for that of the agency." *Bellevue Hosp. Center v. Leavitt*, 443 F.3d 163, 174 (2d Cir. 2006) (citing *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).  Rather, the court's task is to determine whether the agency's decision is "within the bounds of reasoned decisionmaking." *Baltimore Gas & Elec. Co. v. Natural Resources Defense Council*, 462 U.S. 87, 105 (1983).  To do this, courts must determine whether the agency has considered the relevant factors and articulated a rational connection between the facts found and the choice made.  *See Bowman Transp., Inc., v. Arkansas-Best Freight Sys. Inc.*, 419 U.S. 281, 285-86 (1974).  The agency's decision must be respected unless "the agency 'has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it

could not be ascribed to a difference in view or the product of agency expertise.'"  *Bellevue Hosp.*, 443 F.3d at 174 (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

This deference is further heightened in cases, such as this one, that involve national security and foreign affairs.  Such deference is required because courts should respect the Executive's expertise in the national security and foreign policy arenas.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 33-34 (2010); *Regan*, 468 U.S. at 242 ("Matters relating 'to the conduct of foreign relations . . . are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference.'") (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 589 (1952)); *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 45 (D.D.C. 2005) (recognizing that the conduct of foreign relations is to be left to the political branches, and stating that "'[a]s a general principle, . . . this Court should avoid impairment of decisions made by the Congress or the President in matters involving foreign affairs or national security'") (quoting *Global Relief Found., Inc. v. O'Neill*, 207 F. Supp. 2d 779, 788 (N.D. Ill. 2002), *aff'd*, 315 F.3d 748 (7th Cir. 2002)).

Cases involving OFAC's actions implementing U.S. sanctions programs, as quintessential national security and foreign policy cases, are entitled to that deference.  *See Zevallos*, 10 F. Supp. 3d at 119 (recognizing additional deference beyond that typically accorded to an agency under the APA); *Zarmach Oil Servs., Inc. v. U.S. Dep't of the Treasury*, 750 F. Supp. 2d 150, 155 (D.D.C. 2010) ("courts owe a substantial measure of 'deference to the political branches in matters of foreign policy,' including cases involving blocking orders") (citation omitted); *Holy Land Found. for Relief & Dev. v. Ashcroft* ("*Holy Land I*"), 219 F. Supp. 2d 57, 84 (D.D.C. 2002) ("Blocking orders are an important component of U.S. foreign policy,

and the President's choice of this tool to combat terrorism is entitled to particular deference."),

*aff'd*, 333 F.3d 156 (D.C. Cir. 2003); *Empresa Cubana Exportada de Alimentos y Productos*

*Varios v. U.S. Dep't of Treasury*, 606 F. Supp. 2d 59, 68 (D.D.C. 2009) ("A review of a decision

made by OFAC is 'extremely deferential' because OFAC operates 'in an area at the intersection

of national security, foreign policy, and administrative law.'") (quoting *Islamic Am. Relief*

*Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007)).  Indeed, for decades, courts have

consistently accorded uniquely broad deference to sanctions programs and actions under both

IEEPA and its predecessor, TWEA.[8]

## B.    OFAC's Well-Reasoned Decision Easily Satisfies the APA's Standard

Applying the highly deferential standard of review required by the APA and the national

security and foreign policy nature of the Global Terrorism Sanctions program, the Court should

uphold OFAC's decision to deny Plaintiff's license applications.  As an initial matter, Plaintiff

---

[8] *See, e.g., Dames & Moore*, 453 U.S. at 672 (noting the "broad authority of the Executive when acting under this congressional grant of power"); *Regan*, 468 U.S. at 243-44 (confirming the deference due the Executive Branch's implementation of TWEA-based sanctions programs); *Havana Club Holding, S.A. v. Galleon, S.A.*, 203 F.3d 116, 125 (2d Cir. 2000) (OFAC's interpretation of its regulation given controlling weight); *Paradissiotis v. Rubin*, 171 F.3d 983, 988 (5th Cir. 1999) ("The IEEPA grants the President sweeping powers . . . ."); *Freedom to Travel Campaign v. Newcomb*, 82 F.3d 1431, 1439 (9th Cir. 1996) (declining to examine the policy reasons underlying the Cuban travel ban and citing the "history of judicial deference" to executive decision-making in the foreign policy area); *Consarc Corp. v. Dep't of the Treasury*, 71 F.3d 909, 914-15 (D.C. Cir. 1995) ("The IEEPA grants broad powers to the President to control property within the dominion of the United States in which an enemy nation has an interest."); *De Cuellar v. Brady*, 881 F.2d 1561, 1570 (11th Cir. 1989) (affirming OFAC's application of Cuban asset control regulations to plaintiff, a U.S. resident, as well as the agency's denial of a specific license, and stating that the agency's decision is "entitled to great deference from this court"); *Charles T. Main Int'l, Inc. v. Khuzestan Water & Power Auth.*, 651 F.2d 800, 807 (1st Cir. 1981) ("The language of IEEPA is sweeping and unqualified."); *Richardson v. Simon*, 560 F.2d 500, 504 (2d Cir. 1977) ("Since decisions in these matters may implicate our relations with foreign powers, and since a wide variety of classifications must be defined in the light of changing political and economic circumstances, such decisions are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary.").

frames its challenge as primarily one to OFAC's denial of its license applications, but also criticizes OFAC for the underlying blocking itself. *See* Compl. ¶¶ 1, 44 ("OFAC's blocking . . . [was] not authorized"). The administrative record encompasses and supports both. The administrative record fully supports OFAC's decision not to issue a license to Plaintiff and demonstrates that the determination that the a blocked person had an interest in the funds was plainly within the agency's authority under the Global Terrorism Sanctions Regulations and Executive Order 13,224. The funds at issue should remain blocked because the information considered by OFAC, including classified and law enforcement privileged information, supports OFAC's reasonable conclusion that a blocked person had an interest in the funds. Because the information about the blocked person's interest is classified or privileged, it cannot be discussed here. Defendants instead refer the Court to pages AR 0001-240 of the administrative record for a description of the key information considered by OFAC that supports its license denial decision and the underlying blocking.

Plaintiff's allegation that OFAC ignored Plaintiff's submissions suggesting that the agency had made a mistake is not supported by the administrative record. *See* Compl. ¶ 25. Plaintiff states that OFAC "did not explain why it would not release the funds to Rusaviainvest" and "did not even bother to address the fact that neither Rusaviainvest nor Uzbekistan Airways appear on the SDGT list," and infers from this that OFAC did not consider Plaintiff's submissions. *See id.* ¶ 32. But the record shows that the agency did review those submissions. *See* AR 0253-445, 0488-0729, 0776-0980. OFAC has provided information to the extent possible, consistent with the Government's need to protect classified and law enforcement sensitive information. The Government regularly relies on classified and privileged information to make determinations related to its sanctions programs and when those determinations are

reviewed, is permitted to provide that information to the Court for *ex parte*, *in camera* review, as it does here, pursuant to IEEPA. 50 U.S.C. § 1702(c); *see Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 197 (D.C. Cir. 2001) ("[T]he record can, and in our experience generally does, encompass classified information . . . as to which the alleged terrorist organization never has any access . . . .") (internal quotations marks omitted); *Holy Land Found. for Relief & Dev. v. Ashcroft* ("*Holy Land II*"), 333 F.3d 156, 162 (D.C. Cir. 2003) ("it is clear that the government may decide to designate an entity based on a broad range of evidence, including intelligence data and hearsay declarations."); *Fares v. Smith*, 901 F.3d 315, 324-25 (D.C. Cir. 2018) (rejecting argument that Government cannot rely on undisclosed classified and law enforcement privileged information); *Kadi*, 42 F. Supp. 3d at 24 ("it was wholly proper for OFAC to rely on classified material in making its determination").

The fact that, as Plaintiff states, "neither Rusaviainvest nor Uzbekistan Airways appear on the SDN list," does not mean that OFAC's determination was not well-reasoned or was somehow beyond the scope of its authority. IEEPA permits the Government to block "any property" in which a sanctioned party has "any interest." 50 U.S.C. § 1702(a)(1)(B). OFAC has interpreted "property" to include "any other property, real, personal, or mixed, tangible or intangible, or interest or interests therein, present, future or contingent." 31 C.F.R. § 594.309. OFAC's interpretation "has been repeatedly upheld by the courts." *See Holy Land II*, 333 F.3d 156, 160-61 (D.C. Cir. 2003).

Thus, it does not matter than Plaintiff and Uzbekistan Airways may be (according to the Complaint) the only persons with legally enforceable (here, contractual) interests in the funds, because IEEPA permits the Government to reach interests "not defined in traditional common law terms." *Id.* at 163 (citing *Global Relief Found., Inc. v. O'Neill*, 315 F.3d 748 (7th Cir.

2002)).  For example, in *Holy Land II*, the D.C. Circuit rejected Holy Land Foundation's ("HLF") argument that "IEEPA permits blocking of property only where there is a 'legally enforceable' interest to be blocked."  *Id.* at 163.  As the court explained, "[t]he interest need not be a legally protected one in order to be caught within the net of § 1702.  In this case, there was ample evidence of foreign 'interests' in HLF's assets.  There was evidence demonstrating that HLF operated as a fundraiser for Hamas in the United States and that Hamas officials provided HLF with funds. . . . OFAC needed only to determine that Hamas had an interest in HLF's property, and the record provided substantial evidence to support that conclusion."  *Id.*; *see also Zarmach*, 750 F. Supp. 2d at 156; *OKKO Business PE v. Lew*, 133 F. Supp. 3d 17, 23-24 (D.D.C. 2015).  Thus, even accepting Plaintiff's assertions in the Complaint that the frozen funds were part of a transaction between two non-sanctioned parties does mean that no sanctioned party has an interest in those funds.

Plaintiff's recent update in a letter to the Court that "the contemplated transaction between Plaintiff and Uzbekistan Airways has been canceled and . . . Uzbekistan Airways maintains possession of the aircraft," *see* Dkt. No. 32 at 2, does not affect whether OFAC's license application denial was reasonable.  As OFAC explained in its October 5, 2017 letters denying Plaintiff's applications, the agency does not recognize attempts to extinguish a sanctioned party's interest in blocked property.  *See* AR 0473-74, 0753-55, 1004-06.  There is "no provision by which the efforts of a sanctions target and a company it wishes to do business with can, on their own, 'un-block' assets frozen by OFAC."  *Zarmach*, 750 F. Supp. 2d at 157; *see* 31 C.F.R. § 594.201.  This is because "[m]aking exceptions for third parties . . . who attempt to cancel their transaction with a sanction[ed] entity would dilute the effectiveness of the sanctions program by lowering the risks and costs of doing business with sanctions targets."

*OKKO Business*, 133 F. Supp. 3d at 27-28; *see Zarmach*, 750 F. Supp. 2d at 157 (OFAC's policy "discourages companies worldwide from doing business with the sanctions target and places companies at risk for having their assets frozen should they inadvertently be routed through the United States, increasing transaction costs on such businesses and forcing sanctions targets to pay higher prices for goods and services.").

In sum, the administrative record and relevant case law on the scope of OFAC's blocking power under IEEPA amply supports OFAC decision, which satisfies the standard of review under the APA.

### III.    Plaintiff Is Not Entitled to Injunctive Relief

Even if the Court were to find that OFAC had not complied with the APA (and the Government believes that it should not), the proper remedy would not be an order directing Defendants to unblock the assets as Plaintiff requests.  Compl. ¶¶ 43-44.  The standard remedy in APA cases is vacatur of the agency's decision and remand to the agency.  *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 657 (2007) ("[I]f the EPA's action was arbitrary and capricious, . . . the proper course would have been to remand to the Agency for clarification of its reasons."); *see also Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) ("An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course.").  As Plaintiff has not shown that any exceptional circumstances warrant an injunction, the only remedy available to it is for the Court to vacate OFAC's decision and remand this matter to the agency.  *See N. Air Cargo v. U.S. Postal Serv.*, 674 F.3d 852, 861 (D.C. Cir. 2012) ("When a district court reverses agency action and determines that the agency acted unlawfully, ordinarily the appropriate course is simply to identify a legal error and then remand to the agency, because the role of the district court in such situations is to act as an appellate

tribunal."); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also State of New York v. Shalala*, 21 F.3d at 493 ("If the record before the agency does not support the agency action . . . or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course . . . is to remand to the agency for additional investigation or explanation."); *see, e.g.*, *Empresa Cubana Exportadora de Alimentos y Productos Varios v. U.S. Dep't of Treasury*, 516 F. Supp. 2d 43, 53-54 (D.D.C. 2007) (citing *Camp*, 411 U.S. at 141); *Zevallos v. Obama*, 793 F.3d 106, 115 (D.C. Cir. 2015) ("Even if Zevallos proved a procedural error sufficient to invalidate Treasury's decision, at most we would vacate Treasury's determination and remand for Treasury to rule again."); *World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1348 (11th Cir. 2009) (discussing district court's remand of license application to OFAC for reconsideration).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment should be granted.

Dated:     New York, New York
           March 20, 2019

                                   Respectfully submitted,

                                   GEOFFREY S. BERMAN
                                   United States Attorney for the
                                   Southern District of New York

                                   By:  *s/ Jennifer Jude*
                                   JENNIFER JUDE
                                   Assistant United States Attorney
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Telephone: (212) 637-2663
                                   Facsimile: (212) 637-2686
                                   jennifer.jude@usdoj.gov
                                   *Counsel for Defendants*