# B.1

Initial Communication regarding
Blocked Transaction SDGT-10522

AR 0475

# B.1.a

Internal OFAC email exchange

AR 0476

# Section B.1.a – Section B.2 Withheld in Full

Bates Numbers AR 0477 – AR 0487

(Including section and sub-section cover pages)

# B.3

License Application (SDGT-2017-344570-1), including supplemental materials, submitted by Rusaviainvest to OFAC on 4/24/2017. Documents include online application, bank document, invoice, passport of Director/Owner Andrei Vorobev, and SWIFT report.

AR 0488



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | USD | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

our company Rusaviainvest payment amount 1000000 USD for Uzbekistan Airways was blocked. Please unlock the translation

## Contact Information

### Applicant

| | | | |
|---|---|---|---|
| **Contact Category:** | Institution | | |
| **Organization Name:** | RUSAVIAINVEST | | |
| **Point of Contact Name:** | | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | | |
| Line2: | | | |
| Line3: | | | |
| City: | Shelkovo | **State:** | |
| Zip: | | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | |
| **Phone:** Office: | 7-4955444375 | | |
| Mobile: | | | |
| Fax: | | | |
| **Principal Place of Business:** | Moscow region | | |
| **Place where Business is Incorporated:** | Russia | | |

### Correspondent

| | | | |
|---|---|---|---|
| **Contact Category:** | Institution | | |
| **Organization Name:** | RUSAVIAINVEST | | |
| **Point of Contact Name:** | | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | | |
| Line2: | | | |
| Line3: | | | |
| City: | Shelkovo | **State:** | |
| Zip: | | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | |
| **Phone:** Office: | 7-4955444375 | | |
| Mobile: | | | |
| Fax: | | | |
| **Principal Place of Business:** | Moscow region | | |
| **Place where Business is Incorporated:** | Russia | | |

### Financial Blocked Funds

| | | | |
|---|---|---|---|
| **Contact Category:** | Institution | | |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. | | |
| **Point of Contact Name:** | | | |
| **Address:** Line1: | | | |
| Line2: | | | |
| Line3: | | | |
| City: | New York | **State:** | NY |
| Zip: | 10004 | **Country:** | United States |
| **Email Address:** | | | |

AR 0489

**Phone:**     **Office:**
           **Mobile:**
           **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | **RUSAVIAINVEST** | |
| **Point of Contact Name:** | | |
| **Address:**   **Line1:** | | |
|      **Line2:** | | |
|      **Line3:** | | |
|      **City:** | Schelkovo | **State:** |
|      **Zip:** | | **Country:**   Russia (Russian Fed.) |

**Email Address:**
**Phone:**     **Office:**
           **Mobile:**
           **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | AKB ABSOLUT BANK (PAO) | |
| **Point of Contact Name:** | | |
| **Address:**   **Line1:** | | |
|      **Line2:** | | |
|      **Line3:** | | |
|      **City:** | Moscow | **State:** |
|      **Zip:** | | **Country:**   Russia (Russian Fed.) |

**Email Address:**
**Phone:**     **Office:**
           **Mobile:**
           **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | JPMORGAN CHASE BANK | |
| **Point of Contact Name:** | | |
| **Address:**   **Line1:** | | |
|      **Line2:** | | |
|      **Line3:** | | |
|      **City:** | | **State:** |
|      **Zip:** | | **Country:** |

**Email Address:**
**Phone:**     **Office:**
           **Mobile:**
           **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | National air company of the Republic of Uzbekistan "Uzbekistan Airways" | |
| **Point of Contact Name:** | | |
| **Address:**   **Line1:** | | |
|      **Line2:** | | |
|      **Line3:** | | |
|      **City:** | Tashkent | **State:** |

AR 0490

|  | Zip: |  | Country: | Uzbekistan |
|---|---|---|---|---|

**Email Address:**
**Phone:**     Office:
               Mobile:
               Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**     Institution
**Organization Name:**     National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**     Line1:
               Line2:
               Line3:

|  | City: | Tashkent | State: |  |
|---|---|---|---|---|
|  | Zip: |  | Country: | Uzbekistan |

**Email Address:**
**Phone:**     Office:
               Mobile:
               Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
|---|---|
| bank answer | Supplemental Information |
| swift | Supplemental Information |
| invoice | Supplemental Information |
| pasport | Supplemental Information |

## Certification

**Signature:**                                       Date:     4/24/2017
**Email Address:**     info@rusaviainvest.ru



# Абсолют Банк

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S
Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000.000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017 YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION REFERENCE NUMBER 1685792093JX.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113377S

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500 PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

1

AR 0492

 **Абсолют Банк**

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S

Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION
REFERENCE NUMBER 1665792093JX .PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED: THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средства необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.
Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

AR 0493

## UZBEKISTAN airways

**INVOICE № 2.2.1-2353**
**DATE: 01.11.2016**

**Seller:** State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition

**ADDRESS:** 55, Uzbekistan Ave., 100003 Tashkent, Uzbekistan

**Participant:** UZBEKISTAN AIRWAYS
**ADDRESS:** 41, Amir Temur Ave., 100060, Tashkent, Uzbekistan

Please remit payment without deduction to the following bank account of the Participant:

**Account No.:** (USD) 7030

**Account with:** Central operation branch of the National bank for Foreign Economic Activity of the Republic of Uzbekistan

**SWIFT CODE:** NBFAUZ2X    |    **BANK CODE:** 00882

**E-mail:** fo@uzairways.com

**Purchaser:** RUSAVIAINVEST, LTD.

**ADDRESS:** 25, 1 Soviet side str., Shchelkovo, 141100 Moscow, Russia

**ATTENTION:** Director General
A.K. Vorobyev

**E-mail:** rusaviainvest@mail.ru

| SUBJECT: AIRCRAFT | MSN | PRICE USD | VAT % | TOTAL USD |
|---|---|---|---|---|
| Three AVRO Model RJ-85 aircrafts bearing Reg. No. UK 80001, UK 80002, UK 80003 | E2312 | 2 800 000,00 | | |
| Each AC equipped with:    two Honeywell model LF507-1F engines and one APS-1000 auxiliary power unit | E2309 | 1 600 000,00 | | 8 400 000,00 |
| Three LF507-1F engines, one APS-100 APU and aviation spare parts In accordance with the Agreement No. 3 on Sale-Purchase of Aircraft dated October 27, 2016 | E2319 | 1 600 000,00 2 400 000,00 | , | |
| **TOTAL AMOUNT** | | | | **8 400 000,00** |

Note: Uzbekistan Airways has right to correct the Invoice in case of disagreements

**GENERAL DIRECTOR**                                    V.N. TYAN

**FINANCIAL DIRECTOR**                                  A.A. SATTAROV

AR 0484



РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION

РОССИЙСКАЯ ФЕДЕРАЦИЯ
RUSSIAN FEDERATION

RUS

TE 3652107

Тип / Type
P

Код / Code
RUS

Фамилия / Surname
ВОРОБЬЕВ
VOROBEV

Имя / Given names
АНДРЕЙ КОНСТАНТИНОВИЧ /
ANDREI

Пол / Sex
М / M

Дата рождения / Date of birth
31.08.2016

Место рождения / Place of birth
Г. МОСКВА / USSR

Гражданство / Nationality
РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION

Дата выдачи / Date of issue
31.08.2026

Орган, выдавший документ / Authority
ФМС 50022

Operator:

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier:       O CHASUS33XXX 103 496908/07-03 170403

### Message Header

| | | |
|---|---|---|
| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:

|  |  |  |
|---|---|---|
| Unit: | None | |
| Institution: | ABSLRUMMXXX | ABSOLUT BANK<br>MOSCOW, RUSSIAN FEDERATION |

Receiver:

|  |  |  |
|---|---|---|
| Institution: | CHASUS33XXX | JPMORGAN CHASE BANK, N.A.<br>NEW YORK, NY, UNITED STATES |

### Message Text

**20:  Sender's Reference**
496908/07-03

**23D: Bank Operation Code**
CRED

**32A: Value Date/Currency/Interbank Settled Amount**
170403
USD
1,000,000.00

**33B: Currency/Instructed Amount**
USD
1,000,000.00

**50F: Ordering Customer**
3843
1/OOO RUSAVIAINVEST
1/
2/SOVETSKIY 1-Y PER, D. 25
3/RU/SHELKOVO 141100

**57A: Account With Institution**
NBFAUZ2XXXX
NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
TASHKENT
UZBEKISTAN

**59:  Beneficiary Customer**
7030
UZBEKISTAN AIRWAYS,
41, AMIR TEMUR AVE.,
100060 TASHKENT,
UZBEKISTAN

**70:  Remittance Information**
PAYMENT BY INVOICE 2.2.1-2353 DATED
01/11/2016 ACCORDING THE AGREEMENT
3 DD 27.10.16 FOR AIRCRAFT RJ-85

**71A: Details of Charges**
OUR

### Network Data

Network: SWIFT*

### End of Report

Mon Apr 10 17:18:22 2017

Отражение в балансе Банка

Дт                                    Кт

АКБ "АБСОЛЮТ БАНК" (ПАО)
БИК
К/с
03 апр 2017

AR 0496

1

# B.4

Duplicate License Application received 4/26/2017. New case file created (SDGT-2017-344759-1) but closed upon discovery application was duplicate of SDGT-2017-344570-1

AR 0497



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | USD | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

Our transfer 1 million USD was blocked as per OFAC. This funds is prepayment of purchase agreement with national uzbekistan aircompany. Our company, owner, and Uzbekistan Airways are not sanctions comapany. We ask unlocked the funds or return us

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** | **Line1:** | 25, 1st Soviet pereulok |
| | **Line2:** | |
| | **Line3:** | |
| | **City:** | Shelkovo |
| | **Zip:** | |

**State:**
**Country:** Russia (Russian Fed.)

| | | |
|---|---|---|
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** | **Office:** | 7-4955444375 |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** | **Line1:** | 25, 1st Soviet pereulok |
| | **Line2:** | |
| | **Line3:** | |
| | **City:** | Shelkovo |
| | **Zip:** | |

**State:**
**Country:** Russia (Russian Fed.)

| | | |
|---|---|---|
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** | **Office:** | 7-4955444375 |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

### Financial Blocked Funds

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. | |
| **Point of Contact Name:** | | |
| **Address:** | **Line1:** | |
| | **Line2:** | |
| | **Line3:** | |
| | **City:** | New York |
| | **Zip:** | 10004 |

**State:** NY
**Country:** United States

**Email Address:**

AR 0498

**Phone:**    **Office:**
         **Mobile:**
         **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | | Institution | | |
| **Organization Name:** | | RUSAVIAINVEST | | |
| **Point of Contact Name:** | | | | |
| **Address:** | **Line1:** | 25, 1st Soviet pereulok | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Schelkovo | **State:** | |
| | **Zip:** | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | info@rusaviainvest.ru | | |
| **Phone:** | **Office:** | 7-4955444375 | | |
| | **Mobile:** | | | |
| | **Fax:** | | | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | | Institution | | |
| **Organization Name:** | | AKB ABSOLUT BANK (PAO) | | |
| **Point of Contact Name:** | | | | |
| **Address:** | **Line1:** | | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Moscow | **State:** | |
| | **Zip:** | | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | | | |
| **Phone:** | **Office:** | 7-4957777171 | | |
| | **Mobile:** | | | |
| | **Fax:** | | | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | | Institution | | |
| **Organization Name:** | | JPMORGAN CHASE BANK | | |
| **Point of Contact Name:** | | | | |
| **Address:** | **Line1:** | | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | | **State:** | |
| | **Zip:** | | **Country:** | |
| **Email Address:** | | | | |
| **Phone:** | **Office:** | | | |
| | **Mobile:** | | | |
| | **Fax:** | | | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

| | | | |
|---|---|---|---|
| **Contact Category:** | | Institution | |
| **Organization Name:** | | National air company of the Republic of Uzbekistan "Uzbekistan Airways" | |
| **Point of Contact Name:** | | | |
| **Address:** | **Line1:** | | |
| | **Line2:** | | |
| | **Line3:** | | |
| | **City:** | Tashkent | **State:** |

|                |            |                        |          |            |
|----------------|------------|------------------------|----------|------------|
|                | **Zip:**   |                        | **Country:** | **Uzbekistan** |

**Email Address:**
**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**      Institution
**Organization Name:**     National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**     **Line1:**
                 **Line2:**
                 **Line3:**
                 **City:**     **Tashkent**                    **State:**
                 **Zip:**                                      **Country:**     Russia (Russian Fed.)
**Email Address:**
**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| **Name**                        | **Document Type**            |
|---------------------------------|------------------------------|
| passport of director and owner  | Supplemental Information     |
| invoice                         | Supplemental Information     |
| swift                           | Supplemental Information     |
| bank letter                     | Supplemental Information     |

## Certification

**Signature:**                                                          **Date:**     4/26/2017
**Email Address:**     info@rusaviainvest.ru



**Абсолют Банк**

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S
Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000.000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017 YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION REFERENCE NUMBER 1665792093JX.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113377S

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500 PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

*[Печать: Абсолют Банк, Отдел корреспондентских счетов]*

1

AR 0581



**Абсолют Банк**

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S

Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION
REFERENCE NUMBER 1665792093JX. PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED: THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.
Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

AR 0502

| | UZBEKISTAN airways | | INVOICE № 2.2.1-2353 DATE: 01.11.2016 | | | |
|---|---|---|---|---|---|---|

**Seller:** State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition

**ADDRESS:** 55, Uzbekistan Ave., 100003 Tashkent, Uzbekistan

**Participant:** UZBEKISTAN AIRWAYS
**ADDRESS:** 41, Amir Temur Ave., 100060, Tashkent , Uzbekistan

Please remit payment without deduction to the following bank account of the Participant:
**Account No.:** (USD) ☐ 7030
**Account with:** Central operation branch of the National bank for Foreign Economic Activity of the Republic of Uzbekistan
**SWIFT CODE:** NBFAUZ2X ☐ BANK CODE: 00882
**E-mail:** fo@uzairways.com

**Purchaser:** RUSAVIAINVEST, LTD.

**ADDRESS:** 25, 1 Soviet side str. Shchelkovo, 141100 Moscow, Russia

**ATTENTION:** Director General
A.K. Vorobyev

**E-mail:** rusaviainvest@mail.ru

### SUBJECT: AIRCRAFT

| | MSN | PRICE USD | VAT % | TOTAL USD |
|---|---|---|---|---|
| Three AVRO Model RJ-85 aircrafts bearing Reg. No. UK 80001, UK 80002, UK 80003 | E2312 | 2 800 000,00 | | |
| | E2309 | 1 600 000,00 | | 8 400 000,00 |
| Each AC equipped with: two Honeywell model LF507-1F engines and one APS-1000 auxiliary power unit | E2319 | 1 600 000,00 | - | |
| Three LF507-1F engines, one APS-100 APU and aviation spare parts | | 2 400 000,00 | | |
| In accordance with the Agreement No. 3 on Sale-Purchase of Aircraft dated October 27, 2016 | | | | |
| **TOTAL AMOUNT** | | | | **8 400 000,00** |

Note: Uzbekistan Airways has right to correct the invoice in case of disagreements

**GENERAL DIRECTOR**        V.N. TYAN

**FINANCIAL DIRECTOR**        A.A. SATTAROV

AR 0503



РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION
РОССИЙСКАЯ ФЕДЕРАЦИЯ
RUSSIAN FEDERATION

RUS

ВОРОБЬЕВ /
VOROBEV

АНДРЕЙ КОНСТАНТИНОВИЧ /
ANDREI

М / М

31.08.2016

Г. МОСКВА / USSR

РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION

ФМС 50022

RUS

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier:       O CHASUS33XXX 103 496908/07-03 170403

## Message Header

| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
|---|---|---|
| Priority: | Normal | |
| Monitoring: | None | |

Sender:

|  | Unit: | None | |
|---|---|---|---|
|  | Institution: | ABSLRUMMXXX | ABSOLUT BANK MOSCOW, RUSSIAN FEDERATION |

Receiver:

|  | Institution: | CHASUS33XXX | JPMORGAN CHASE BANK, N.A. NEW YORK, NY, UNITED STATES |

## Message Text

**20:** Sender's Reference
496908/07-03

**23D:** Bank Operation Code
CRED

**32A:** Value Date/Currency/Interbank Settled Amount
170403
USD
1,000,000.00

**33B:** Currency/Instructed Amount
USD
1,000,000.00

**50P:** Ordering Customer
[redacted]3843
1/OOO RUSAVIAINVEST
1/[redacted]
2/SOVETSKIY 1-Y PER, D. 25
3/RU/SHELKOVO 141100

**57A:** Account With Institution
NBFAUS2XXXX
NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
TASHKENT
UZBEKISTAN

**59:** Beneficiary Customer
[redacted]7030
UZBEKISTAN AIRWAYS,
41, AMIR TEMUR AVE.,
100060 TASHKENT,
UZBEKISTAN

**70:** Remittance Information
PAYMENT BY INVOICE 2.2.1-2353 DATED
01/11/2016 ACCORDING THE AGREEMENT
3 DD 27.10.16 FOR AIRCRAFT RJ-85

**71A:** Details of Charges
OUR

## Network Data

Network: SWIFT*

## End of Report

Mon Apr 10 17:18:22 2017

## Отражение в балансе Банка

Дт [redacted]                    Кт [redacted]

# B.5

Supplemental information submitted as new license application on 5/15/20217.  New case file created (SDGT-2017-344769) but merged with active case file (SDGT-2017-344750-1) upon discovery case file was supplemental material.

AR 0506



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | Reconsideration |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | usd | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

We have a blocked transaction in the amount of 1 million dollars as a preliminary payment under an official contract to the national airline of Uzbekistan for old and unused aircraft. Our Russian company Rusaviainvest and the Uzbek national company, Uzbekistan Airways are not on the sanctions lists. Correcpondent Bank advised us thatfunds have blocked as per OFAC of global terrorism programm. The our deal is clean and has no relationship with terrorism, all amounts go to the national bank of Uzbekistan.

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is Incorporated:** | Russia | |

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is Incorporated:** | Russia | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |
| **Point of Contact Name:** | |
| **Address:** Line1: | |
| Line2: | |
| Line3: | |

| | City: | New York | State: | NY |
|---|---|---|---|---|
| | Zip: | 10004 | Country: | United States |

**Email Address:**
**Phone:**      Office:
             Mobile:
             Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

**Contact Category:**         Institution
**Organization Name:**        RUSAVIAINVEST
**Point of Contact Name:**
**Address:**     Line1:        25, 1st Soviet pereulok
              Line2:
              Line3:
              City:         Schelkovo                  **State:**
              Zip:                                     **Country:**     Russia (Russian Fed.)
**Email Address:**            info@rusaviainvest.ru
**Phone:**      Office:       7-4955444375
             Mobile:
             Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

**Contact Category:**         Institution
**Organization Name:**        AKB ABSOLUT BANK (PAO)
**Point of Contact Name:**
**Address:**     Line1:
              Line2:
              Line3:
              City:         Moscow                     **State:**
              Zip:                                     **Country:**     Russia (Russian Fed.)
**Email Address:**
**Phone:**      Office:       7-4957777171
             Mobile:
             Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

**Contact Category:**         Institution
**Organization Name:**        JPMORGAN CHASE BANK
**Point of Contact Name:**
**Address:**     Line1:
              Line2:
              Line3:
              City:                                    **State:**       NY
              Zip:          10004                      **Country:**     United States
**Email Address:**
**Phone:**      Office:
             Mobile:
             Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

**Contact Category:**         Institution
**Organization Name:**        National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:**     Line1:

AR 0508

|            | Line2: |          |          |            |
|------------|--------|----------|----------|------------|
|            | Line3: |          |          |            |
|            | City:  | Tashkent | State:   |            |
|            | Zip:   |          | Country: | Uzbekistan |

**Email Address:**
**Phone:**    Office:
        Mobile:
        Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**    Institution
**Organization Name:**    National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**    Line1:
        Line2:
        Line3:

|            | City:  | Tashkent | State:   |            |
|------------|--------|----------|----------|------------|
|            | Zip:   |          | Country: | Uzbekistan |

**Email Address:**
**Phone:**    Office:
        Mobile:
        Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| **Name**  | **Document Type**        |
|-----------|--------------------------|
| contract  | Supplemental Information  |
| contract  | Supplemental Information  |

## Certification

**Signature:**                                              **Date:**    5/15/2017
**Email Address:**    info@rusaviainvest.ru

# П Е Р Е Ч Е Н Ь

**воздушных судов НАК «Узбекистон хаво йуллари», подлежащих реализации**

## ООО «РУСАВИАИНВЕСТ» (Российская Федерация)

| | Тип воздушного судна и авиационных двигателей | Бортовой номер | Заводской номер | Дата выпуска | Стоимость в долл. США |
|---|---|---|---|---|---|
| 1 | Воздушное судно    RJ-85 | UK 80001 | E2312 | 1997 | 2 800 000 |
| | Авиационный двигатель LF507-1F | | LF07620 | 1997 | |
| | Авиационный двигатель LF507-1F | | LF07622 | 1997 | |
| | Авиационный двигатель LF507-1F | | LF07625 | 1997 | |
| | Авиационный двигатель LF507-1F | | LF07626 | 1997 | |
| | Силовая установка   APS-1000 | | SP-E977525 | 1997 | |
| 2 | Воздушное судно    RJ-85 | UK 80002 | E2309 | 1997 | 1 600 000 |
| | Авиационный двигатель LF507-1F | | P07656 | 1997 | |
| | Авиационный двигатель LF507-1F | | P07699 | 1998 | |
| | Авиационный двигатель LF507-1F | | LF07606 | 1997 | |
| | Авиационный двигатель LF507-1F | | P07602 | 1997 | |
| | Силовая установка   APS-1000 | | SP-E977512 | 1997 | |
| 3 | Воздушное судно    RJ-85 | UK 80003 | E2319 | 1997 | 1 600 000 |
| | Авиационный двигатель LF507-1F | | P07655 | 1997 | |
| | Авиационный двигатель LF507-1F | | P07658 | 1997 | |
| | Авиационный двигатель LF507-1F | | P07657 | 1997 | |
| | Авиационный двигатель LF507-1F | | LF07607 | 1997 | |
| | Силовая установка   APS-1000 | | SP-E977526 | 1997 | |
| | **Всего:** | | | | 6 000 000 |

# ПЕРЕЧЕНЬ

авиационных двигателей, силовой установки и запасных частей для
воздушных судов RJ-85 НАК «Узбекистон хаво йуллари», подлежащих
реализации ООО «РУСАВИАИНВЕСТ» (Российская Федерация)

| № п/п | Наименование имущества | Заводской номер | Количество |
|---|---|---|---|
| 1 | Авиационный двигатель LF507-1F (1997 г.в.) | LF07603 | 1 |
| 2 | Авиационный двигатель LF507-1F (1997 г.в.) | LF07641 | 1 |
| 3 | Авиационный двигатель LF507-1F (1998 г.в.) | P07727 | 1 |
| 4 | Силовая установка A PS-1000 (1997 г.в.) | SP-E977533 | 1 |
| 5 | Клапан (VALVE) | 715745 | 1 |
| 6 | Гидроагрегат (PTU) | 4204002 | 1 |
| 7 | Конвертор (AN.CONVE) | 4501882 | 1 |
| 8 | Топливный манифолд (MANIFOLD) | 4950245 | 1 |
| 9 | Клапан (VALVE) | 4950385 | 1 |
| 10 | Клапан (ANTI SURGE VALVE) | 4950899 | 2 |
| 11 | Клапан отбора воздуха (BLEED AIR VALVE) | 4952764 | 1 |
| 12 | Кислородный баллон (OXYGEN CYLINDER CARGO) | 89794077 | 1 |
| 13 | Датчик положения (RESOLVER ASSY) | 676301231 | 1 |
| 14 | Компьютер состояния двигателей (ENGINE LIFE COMPUTER) | 0826KEL06-2I0 | 1 |
| 15 | Клапан (VALVE) | 13120-5 | 1 |
| 16 | Соединительная муфта (MUFF INFLET ASSY) | I344D620 | 1 |
| 17 | Блок навигационной системы (NMU-GNSK) | 14141-0345 | 1 |
| 18 | Клапан СКВ (VALVE CONTROL TEMPER) | I54615-3-1 | 1 |
| 19 | Дисплей (GNS-CONTROL DISPLAY) | 16270-0101-06 | 1 |
| 20 | Масляный радиатор (OILCOLLR) | 168661-3 | 2 |
| 21 | Индикатор масляной системы (IND OIL/OTY/PRESS) | 185-102-1 | 2 |
| 22 | Инвертор (INVERTER) | 1B250-1B1B1642 | 1 |
| 23 | Аудио селектор (AUDIO SELECTOR) | 1U550-0O1 | 1 |
| 24 | Привод (ACTUATOR) | 2-160-350-39 | 4 |
| 25 | Привод (ACTUATOR ASSEMBLY) | 2-160-350-40 | 2 |
| 26 | Топливный насос (FUELPUMP) | 2-160-790-11 | 1 |
| 27 | Насос-регулятор топливный (HMA) | 2-193-330-10 | 1 |
| 28 | Корпус фильтра (PUMP OIL AND FILTER BOWL) | 2-193-790-01 | 1 |
| 29 | Клапан (VALVE ASSEMBLY) | 2-300-711-01 | 1 |
| 30 | Модуль зажигания (IGNITION) | 2-303-026-02 | 4 |
| 31 | Датчик оборотов (PICKUP) | 2-303-246-03 | 4 |
| 32 | Клапан (VALVE AS) | 2-303-432-02 | 1 |
| 33 | Радиатор (EXCHANGE) | 2-303-491-02 | 1 |
| 34 | Датчик оборотов (SPEED P) | 2-303-626-01 | 2 |
| 35 | Процессор (PROCESSOR ALF507) | 2-303-864-02 | 1 |
| 36 | Клапан (VALVE) | 2-303-901-01 | 1 |
| 37 | Датчик оборотов (SPEED PU) | 2-303-951-01 | 1 |
| 38 | Клапан (VALVE) | 2-303-969-01 | 2 |
| 39 | Контроллер превышения оборотов (OVE CONT) | 2-313-072-01 | 3 |
| 40 | Приемопередатчик радара (RTA-4A) | 2041214-0414 | 1 |
| 41 | Приемопередатчик радара (RTA-4A) | 2041217-0414 | 1 |
| 42 | Дисплей радара (WEATHER RADAR INDICATOR) | 2041222-0435 | 1 |
| 43 | Электромотор (MOTOR) | 23I3MI58-I | 1 |
| 44 | Электромотор (MOTOR) | 23I3MI58-2 | 1 |
| 45 | Клапан (VALVE) | 235IA000-004 | 1 |
| 46 | Клапан (VALVE ISOLATION) | 2985AOOO-003 | 1 |
| 47 | Проблесковый огонь (LIGHT-STROBE TAIL) | 30-1579-1 | 1 |
| 48 | Проблесковый огонь (STROBE.WING TIP) | 30-1809-1 | 1 |
| 49 | Контроллер (CABON PRESS CONTROLLER) | 3104A0000-001 | 1 |
| 50 | Дисплей (DISPLAY) | 322EDP2-1 | 1 |

| | | | |
|---|---|---|---|
| 51 | Клапан рециркуляции (RECIRCULATION VALVE | 3503B000 | 1 |
| 52 | Привод антенны радара (WEATHER RADAR DRIVE | 3614071-0401 | 1 |
| 53 | Высотомер (BAROMETRIC ALTIMETER) | 4039892-909 | 1 |
| 54 | Панель управления (PANEL) | 4066190-901 | 1 |
| 55 | Панель управления (EFIS CONTROL PANEL) | 4066191-901 | 1 |
| 56 | Дисплей (DISPLAY UNIT) | 4066192-901 | 3 |
| 57 | Генератор символов (EFIS SYMBOL GENERATOR) | 4066300-911 | 2 |
| 58 | Панель управления (PANEL) | 4068251-902 | 1 |
| 59 | Привод (AUTOPILOT SERVO) | 4068252-801 | 1 |
| 60 | Привод (A/P SERVO) | 4068252-901 | 1 |
| 61 | Привод (ACTUATOR) | 4068254-902 | 1 |
| 62 | Привод (ACTUATOR) | 4068255-902 | 2 |
| 63 | Муфта автомата тяги (CLUTCH) | 4068256-901 | 1 |
| 64 | Датчик (SENSOR) | 4068259-902 | 1 |
| 65 | Компьютер воздушных данных (AIR DATE COMPUTER) | 4068900-903 | 1 |
| 66 | Датчик (SENSOR) | 4372C000 | 1 |
| 67 | Блок регулирования подачи топлива (FCU) | 4501714C | 1 |
| 68 | Вентилятор охлаждения (COOLING FAN ASSY) | 4502904B | 1 |
| 69 | Индикатор TCAS (VERTICAL SPEED INDICTR TCAS) | 457400GB1901 | 1 |
| 70 | Печатная плата (CONTROL BOARD) | 46546-524-0 | 1 |
| 71 | Клапан (VALVE) | 4679C000 | 1 |
| 72 | Клапан (VALVE) | 4747C000 | 1 |
| 73 | Топливный клапан ВСУ (SOLENOID MAX& MAIN | 4950240-1 | 2 |
| 74 | Топливный клапан (MAIN FUEL SOLENOID VALVE) | 495240-1 | 1 |
| 75 | Стартер (STARTER) | 501-1-13775-008 | 1 |
| 76 | Генератор ВСУ (GENERATOR WITHOUT GEARBOX) | 503-1-06680-003 | 1 |
| 77 | Клапан (VALVE) | 5581C00O | 1 |
| 78 | Топливный насос (PUMP-FUEL) | 568-1-25663-001 | 2 |
| 79 | Клапан (VALVE) | 5688C000 | 2 |
| 80 | Огнетушитель (FIRE EXTINGUISHER) | 57333-012 | 2 |
| 81 | Блок питания (DRIVE PACK, TAIL STROBE) | 60-2388-101 | 1 |
| 82 | Блок питания (POWER SUPPLY) | 60-3550-1 | 4 |
| 83 | Усилитель (AMPLIFI) | 622-4096-002 | 1 |
| 84 | Приемопередатчик DME (DME TRANSCEIVER) | 622-4540-001 | 3 |
| 85 | Приемник радиокомпаса (ACF RECEIVER) | 622-5272-420 | 1 |
| 86 | Приемопередатчик КВ (HF TRANSCEIVER) | 622-5272-020 | 1 |
| 87 | Приемопередатчик ATC (ATC TRANSPONDER) | 622-7878-201 | 2 |
| 88 | Приемник (RECEIVER) | 622-9738-420 | 1 |
| 89 | Датчик вибрации двигателя (ACCELERA) | 6222S50AM1 | 1 |
| 90 | Индикатор пеленга/дальности (DISTANCE BEARING INDICATOR) | 63543-280-1 | 1 |
| 91 | Селектор выпуска шасси (L-G SELECTOP SWITCH) | 6435-003-00 | 2 |
| 92 | Кипятильник (COFFEE MAKER-RUMBOLD) | 64763-201-003 | 1 |
| 93 | Монитор уровня вибрации (CONDITNR) | 6610M44 | 1 |
| 94 | Блок управления генератора (GENERATOR CONTROL UNIT) | 700-1-22490-520 | 1 |
| 95 | Детектор дыма (DETECTOR) | 72-130003-001 | 1 |
| 96 | Топливный клапан (LP FUEL VALVE) | 79I3003K | 1 |
| 97 | Клапан (VALVE) | 7940066F | 1 |
| 98 | Печатная плата (SWITCH CARD L/GEAR ETC) | 8-060-02 | 1 |
| 99 | Приемник (RECEIVER) | 822-0726-120 | 2 |
| 100 | Приемопередатчик УКВ (VHF COM TX/RX) | 822-1044-005 | 1 |
| 101 | Блок питания (PWR UNIT) | 8ES002769-03 | 2 |
| 102 | Датчик расхода топлива (FUEL FLOW METER) | 9-127-48 | 2 |
| 103 | Модуль зажигания (EXCITER) | 9048900-2 | 1 |
| 104 | Датчик уровня масла (OIL CONTENS TX) | 9201000-226 | 1 |
| 105 | Регистратор полетных данных (RECORDER) | 93A100-30 | 1 |
| 106 | Речевой регистратор (COCKPIT VOICE RECORDER) | 93A100-80 | 1 |
| 107 | Компьютер опасного сближения (GPWS) | 965-0676-020 | 1 |
| 108 | Регистратор полетных данных (SOLID STATE FLIGHT) | 980-4700-003 | 1 |
| 109 | Контактор (CONTACT) | A703CSM | 1 |
| 110 | Контактор (CONTACT) | A848MLS | 1 |
| 111 | Контактор (CONTACT) | A957CSD | 1 |
| 112 | Блок управления аудио (AUDIO CONTROL UNIT) | AA15504-11-007 | 2 |
| 113 | Клапан (VALVE) | AC65716 | 1 |
| 114 | Клапан тормозной системы (SOLENOID BRAKE VALVE) | AC65718 | 1 |
| 115 | Клапан (VALVE) | AC67726 | 1 |
| 116 | Клапан (VALVE) | AC67728 | 1 |
| 117 | Клапан (VALVE) | AC69618 | 1 |
| 118 | Датчик скорости вращения колес (WHEEL SPEED TRANSDUCER) | ACM28076 | 1 |

| № | Наименование | Обозначение | Кол. |
|---|---|---|---|
| 119 | Гидравлический предохранитель (HYDRAULI) | ACM30506 | 1 |
| 120 | Клапан антиюзовый (ANTI SKID VALVE) | ACM67650 | 1 |
| 121 | Индикатор температуры (INDICATOR BRAKE TEMPERATURE) | AE20657 | 1 |
| 122 | Клапан (VALVE) | AIR91656-0 | 1 |
| 123 | Контактор (CONTACTOR) | B345LS | 1 |
| 124 | Огнетушитель (EXTNGUIS) | BA20723A2 | 1 |
| 125 | Огнетушитель туалетный (EXTINGUISHER-FJREL-LAV) | BA23098-1 | 2 |
| 126 | Огнетушитель (FIRE EXT) | BA51015GR3 | 1 |
| 127 | Огнетушитель (FIRE EXTINGUISHER PORTABLE) | BA51015GSR3 | 1 |
| 128 | Огнетушитель (FIRE EXT) | BA51015SR3 | 1 |
| 129 | Антенна (ANTENNA) | C1408-20 | 1 |
| 130 | Блок сбора данных ВС (ACQUISITION UNIT) | 612-1-43530-103 | 1 |
| 131 | Блок анти-юзовой системы (ANTI-SKID BOX) | AE20612 | 1 |
| 132 | Блок для снятия часов/циклов с ВСУ (APU HOUR/EVENT) | 4951559 | 1 |
| 133 | Датчик угла атаки (SENSOR AOA) | C8I717-I | 1 |
| 134 | Селектор инерциальной системы (SELECTOR) | CG2001AB02 | 1 |
| 135 | Детектор (DETECTOR) | CG7PT2 | 1 |
| 136 | Вентилятор охлаждения (FAN) | D104219 | 3 |
| 137 | Вентилятор охлаждения (FAN) | D92098 | 1 |
| 138 | Монитор наземного питания (GPU MONITOR) | E327AD | 1 |
| 139 | Детектор (DETECTOR) | E37040S | 1 |
| 140 | Контроллер (ADF CONTROLLER) | 06762-05 | 1 |
| 141 | Панель управления (ATC/TCAS CONTR) | G6990-I5 | 3 |
| 142 | Панель управления радио (RADIO MANAGEMENT PANEL) | G7104-04 | 2 |
| 143 | Панель управления VOR (VOR) | G7108-01 | 1 |
| 144 | Резервный авиагоризонт (GYRO HORIZON) | H34IAZM | 1 |
| 145 | Компенсатор (COMPENS) | HC273H0820-000 | 3 |
| 146 | Компенсатор (COMPENS) | HC273H0820-002 | 3 |
| 147 | Печатная плата (PCB) | HC921H0451-009 | 1 |
| 148 | Печатная плата (PCB) | HC921H0473-000 | 1 |
| 149 | Печатная плата (LID ASSY PCB VOLTAGE) | HC921 HI 829-002 | 1 |
| 150 | Подставка (CRADLE) | HCC4100-12-10 | 1 |
| 151 | Трубка бортпроводников (HANDSET-ATTENDANTS) | HCS4100-12-10 | 1 |
| 152 | Блок инерциальной системы (DUAL LNERTIAL REF UNIT) | HG2001BC02 | 1 |
| 153 | Клапан VALVE AS | HP942400S3 | 1 |
| 154 | Привод (ACTUATOR) | HTE2IQOI4 | 3 |
| 155 | Обратный клапан (NON RETURN VALVE) | HTE4345-2 | 1 |
| 156 | Клапан (VALVE) | HTE530004-I | 2 |
| 157 | Клапан (VALVE) | HTE530004-1 | 1 |
| 158 | Привод (ACTUATOR) | HTE9082-! | 2 |
| 159 | Клапан (SELECTRO VALVE ASSY) | HTE9490-4 | 1 |
| 160 | Клапан (VALVE ASSY) | HTE9531-3 | 1 |
| 161 | Электроклапан (M VALVE) | HTE9635-3 | 2 |
| 162 | Клапан (BALL VALVE ASSY) | HTE9683 | 1 |
| 163 | Замок створки шасси (DOOR LOCK ASSY) | JEC44-090-2 | 1 |
| 164 | Часы (CLOCK) | M8IIB24 | 1 |
| 165 | Контроллер (CONTROLE) | NF0075-3600 | 1 |
| 166 | Лобовое стекло (WINDSHIELD) | NF20216-I56 | 1 |
| 167 | Лобовое стекло (WINDSCREEN PANEL RH) | SPSBAEI46-3-I-I | 1 |
| 168 | Лобовое стекло (WINDSCREEN-PANEL B LH) | SPSBAE146-4-1-! | 1 |
| 169 | Датчик температуры (T.SWITCH) | TAS203-OOI | 1 |
| 170 | Указатель температуры водяной системы (GAUGE) | VC524 | 1 |
| 171 | Клапан кислородный (CHARGE VALVE OXYGEN) | WKA36682-2 | 1 |
| 172 | Клапан (VALVE ASSY ISOLATION) | WKA36684-2 | 3 |
| 173 | Клапан (VALVE ASSY ISOLATION) | WKA3 6684-2 | 1 |
| 174 | Клапан (VALVE ASSY ISOLATION) | WKA366842 | 1 |
| 175 | Кислородный баллон (CYLINDER) | WKA36690 | 1 |
| 176 | Кислородный баллон (CYLINDER) | WKA36692-I | 2 |
| 177 | Кислородный баллон (CYLINDER) | WKA36692-1 | 1 |
| 178 | Клапан (VALVE) | WKA37577 | 1 |
| 179 | Индикатор (INDICATOR) | WL020IKIDI | 1 |
| 180 | Резервный высотомер (STANDBY ALTIMETER/ASI) | WLI02AMS3 | 1 |
| 181 | Гарнитура (HEAD SET) | 64300-100 | 1 |
| 182 | Вентилятор охлаждения электронной системы полета (EFIS COOLING FAN) | 34944 | 1 |
| 183 | Вентилятор охлаждения инершиальной системы (IRS COOLING FAN) | 20470 | 1 |
| 184 | Блок радиостанции УКВ (VHF UNIT VHF COMM) | 822-0693-005 | 1 |
| 185 | Речевой блок управления (UNIT AUDIO CONTROL) | AA15504-11-007 | 1 |

| 186 | Дисплей параметров двигателя (PRIMARY ENGINE DISPLAY) | 322EDP2-1 | 1 |
|-----|---|---|---|
| 187 | Радиовысотомер (RA) | 622-4542-420 | 1 |
| 188 | Электронный блок управления двигателя (ECU ENGINE) | П0600А6-0633 | 1 |
| 189 | Преобразователь (TRU) | 509-1-02530-001 | 1 |
| 190 | Электронный блок управления ВСУ (ECU APU) | 4501700A | 1 |
| | Всего на сумму 2 400 000 долларов США | | |

**А К Т**
**приёма-передачи**

воздушного судна RJ-85
заводской № Е2312

ООО «РУСАВИАИНВЕСТ» (Покупатель) настоящим подтверждает, что согласно настоящему Договору №_____ от «    »_____ 2016 года между НАК «Узбекистон хаво йуллари» (Участник) и ООО «РУСАВИАИНВЕСТ» (Покупатель) в отношении воздушного судна RJ-85 UK80001:

(a)      Покупатель провел инспекцию воздушного судна, и воздушное судно соответствует описанию и находится в таком техническом состоянии и так оборудовано, как требуют условия настоящего Договора;

(b)      Участник передал воздушное судно;

(c)      Покупатель принял воздушное судно;

(d)      Покупатель получил всю техническую документацию по воздушному судну, провел ее инспекцию и убедился в ее полноте и удовлетворительности.

(e)      Местом Поставки является Международный аэропорт «Ташкент» и дата Поставки - «    »_____ 2016 год.

Дата  «    »_____ 2016 года

от Участника:                                     от Покупателя:
_____ /Тян В.Н. /                      _____/Воробьёв А.К./
МП                                                          М.П.

**А К Т**
приёма-передачи

воздушного судна RJ-85
заводской № Е2309

ООО «РУСАВИАИНВЕСТ» (Покупатель) настоящим подтверждает, что согласно настоящему Договору №_____ от « » _____ 2016 года между НАК «Узбекистон хаво йуллари» (Участник) и **ООО «РУСАВИАИНВЕСТ»** (Покупатель) в отношении воздушного судна RJ-85 UK 80002:

(a) Покупатель провел инспекцию воздушного судна, и воздушное судно соответствует описанию и находится в таком техническом состоянии и так оборудовано, как требуют условия настоящего Договора;

(b) Участник передал воздушное судно;

(c) Покупатель принял воздушное судно;

(d) Покупатель получил всю техническую документацию по воздушному судну, провел ее инспекцию и убедился в ее полноте и удовлетворительности.

(e) Местом Поставки является Международный аэропорт «Ташкент» и дата Поставки - « » _____2016 год.


Дата « »_____ 2016 года


от Участника:                                          от Покупателя:
_____ /Тян В.Н. /                        _____ /Воробьёв А.К./
МП                                                            М.П.

**А К Т**
приёма-передачи

воздушного судна Airbus RJ-85
заводской № E2319

ООО «РУСАВИАИНВЕСТ» (Покупатель) настоящим подтверждает, что согласно настоящему Договору №____ от « » __ 2016 года между НАК «Узбекистон хаво йуллари» (Участник) и ООО «РУСАВИАИНВЕСТ» (Покупатель) в отношении воздушного судна RJ-85 UK 80003:

(a) Покупатель провел инспекцию воздушного судна, и воздушное судно соответствует описанию и находится в таком техническом состоянии и так оборудовано, как требуют условия настоящего Договора;

(b) Участник передал воздушное судно;

(c) Покупатель принял воздушное судно;

(d) Покупатель получил всю техническую документацию по воздушному судну, провел ее инспекцию и убедился в ее полноте и удовлетворительности.

(e) Местом Поставки является Международный аэропорт «Ташкент» и дата Поставки - « » ____2016 год.

Дата « »_____ 2016 года

от Участника:                         от Покупателя:
_____ /Тян В.Н. /              _____ /Воробьёв А.К./
МП                                   М.П.

**Описание воздушного судна**

Данное Приложение является неотъемлемой частью настоящего Договора о купле-продаже и, в таком виде составляет документ, применимый к покупке воздушного судна RJ-85 заводской № Е2312, как предусмотрено пунктом 3.1. настоящего Договора.

("N/A" означает неприменимость):

| | |
|---|---|
| **1. Самолет RJ-85**<br>Изготовитель – корпорация AVRO,<br>конструкция - пассажирский,<br>модель – RJ-85,<br>заводской № Е2312,<br>принадлежность и регистрационный<br>номер - НАК «Узбекистон хаво<br>йуллари» UK 80001,<br>двигатели - LF507-1F | **2. Двигатели LF507-1F**<br>№1 SN # LF07620 13.12.1990.<br>№2 SN # LF07622 22.12.1990.<br>№3 SN # LF07625 13.12.1990.<br>№4 SN # LF07626 13.12.1990. |
| **3. Документация по Самолету -**<br>Формуляры и паспорта на воздушное<br>судно, силовые установки, агрегаты и<br>комплектующие изделия, а также<br>дополнительное оборудование | **4. Аренда (N/A)** |
| **5. Арендатор ( N/A)** | **6. Страна регистрации - Узбекистан** |
| **7АДополнительные**<br>**Предварительные Условия к**<br>**Обязательствам Участника продать**<br>**Самолет (статьи 7.4 и 7.8)**<br><br>**7ВДополнительные**<br>**Предварительные Условия к**<br>**Обязательствам Покупателя**<br>**купить Самолет (статьи 6.1, 6.2, 6.3,**<br>**6.4, 6.5, 6.6. 6.12)** | **8. Покупная цена ~ 2 800 000 (два**<br>**миллиона восемьсот тысяч)**<br>**долларов США.** |
| **9. Депозит [N/A]** | **10. Проценты по Депозиту [N/A]** |
| **11. Перерасчет при Поставке [N/A]** | **12. Банковский счет Участника**<br>ИНН ▮▮▮,<br>ОКРО▮▮▮<br>ОКОНХ ▮▮<br>Код банка 00882<br>SWIFT: NBFAUZ2X<br>Валютный счет: ▮▮▮▮▮7030<br>Центральный операционный отдел<br>Национального банка ВЭД<br>Республики Узбекистан |
| **13. Дополнительные Положения,**<br>**относящиеся к налогам [N/A]** | **14 Инспекция - за счёт Покупателя** |
| **15. Требования по Состоянию при**<br>**Поставке - «как есть, где есть»** | **16. Предел возмещения ущерба N/A** |

AR 0518

| | |
|---|---|
| **17. Полная Потеря** [N/A] | **18. Владение** - [N/A] |
| **19. Планируемая Дата Поставки** [укажите] | **20. Место Поставки**—Международный аэропорт «Ташкент» |
| **21. Окончательная Дата Поставки** [укажите] | **22. Продавец** – **Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции** |
| **23. Гарантии Изготовителя** [N/A] | **24. Компенсации** [N/A] |
| **25. Страхование Ответственности** [N/A] | **26. Дополнительные События Прекращения Договора** [N/A] |
| **27А. Дополнительные Представления и Гарантии Продавца** [N/A]<br><br>**27В. Дополнительные Представления и Гарантии Покупателя** [N/A] | **28. Извещения** [N/A] |
| **29.** [намеренно опущена] | **30. Юрисдикция** - «исключительная» |
| **31. Передача Контракта по факсу / Электронными средствами** - допустима по адресу: rusaviainvest@mail.ru | **32. Затраты и Расходы** Покупатель оплачивает расходы по пункту 4.5. настоящего Договора |
| **33. Рабочий день в г. Ташкент, г.Москва** | **34. Документы по Продаже** -- настоящий Договор со всеми Приложениями |

**В ПОДТВЕРЖДЕНИЕ ЧЕГО**, Стороны подписали данное Приложение в соответствующие даты, указанные ниже.

от Участника:

_____ /Тян В.Н. /

дша

от Покупателя:

_____ /Воробьёв А.К./

дша

AR 0519

## Описание воздушного судна

Данное Приложение является неотъемлемой частью настоящего Договора о купле-продаже и, в таком виде составляет документ, применимый к покупке воздушного судна RJ-85 заводской № E2309, как предусмотрено пунктом 3.1. настоящего Договора.

("N/A" означает неприменимость):

| | |
|---|---|
| **1. Самолет RJ-85**<br>Изготовитель – корпорация AVRO, конструкция - пассажирский, модель – RJ-85, заводской № E2309, принадлежность и регистрационный номер- НАК «Узбекистон хаво йуллари» UK 80002, двигатели - LF507-1F | **2. Двигатели LF507-1F**<br>№1 SN # P07656    1997<br>№2 SN # P07699    1998<br>№3 SN # LF07606   1997<br>№4 SN # P07602    1997 |
| **3. Документация по Самолету** - Формуляры и паспорта на воздушное судно, силовые установки, агрегаты и комплектующие изделия, а также дополнительное оборудование | **4. Аренда (N/A)** |
| **5. Арендатор ( N/A)** | **6. Страна регистрации - Узбекистан** |
| **7АДополнительные Предварительные Условия к Обязательствам Участника продать Самолет (статьи 7.4 и 7.8)**<br><br>**7ВДополнительные Предварительные Условия к Обязательствам Покупателя купить Самолет (статьи 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 6.12)** | **8. Покупная цена - 1 600 000 (один миллион шестьсот тысяч) долларов США.** |
| **9. Депозит [N/A]** | **10. Проценты по Депозиту [N/A]** |
| **11. Перерасчет при Поставке [N/A]** | **12. Банковский счет Участника**<br>ИНН ▮▮▮▮▮,<br>ОКРО ▮▮▮<br>ОКОНХ ▮▮▮<br>Код банка  00882<br>SWIFT: NBFAUZ2X<br>Валютный счет: ▮▮▮▮▮▮77030<br>Центральный операционный отдел Национального банка ВЭД Республики Узбекистан |
| **13. Дополнительные Положения, относящиеся к налогам [N/A]** | **14 Инспекция - за счёт Покупателя** |
| **15. Требования по Состоянию при Поставке  - «как есть, где есть»** | **16. Предел возмещения ущерба N/A** |

AR 0520

| | |
|---|---|
| **17. Полная Потеря** [N/A] | **18. Владение -** [N/A] |
| **19. Планируемая Дата Поставки** [укажите] | **20. Место Поставки-Международный аэропорт «Ташкент»** |
| **21. Окончательная Дата Поставки** [укажите] | **22. Продавец – Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции** |
| **23. Гарантии Изготовителя** [N/A] | **24. Компенсации** [N/A] |
| **25. Страхование Ответственности** [N/A] | **26. Дополнительные События Прекращения Договора** [N/A] |
| **27А. Дополнительные Представления и Гарантии Продавца** [N/A]<br><br>**27В. Дополнительные Представления и Гарантии Покупателя** [N/A] | **28. Извещения** [N/A] |
| **29.** [намеренно опущена] | **30. Юрисдикция - «исключительная»** |
| **31. Передача Контракта по факсу / Электронными средствами -** допустима по адресу: rusaviainvest@mail.ru | **32. Затраты и Расходы** Покупатель оплачивает расходы по пункту 4.6. настоящего Договора |
| **33. Рабочий день в г. Ташкент, г.Москва** | **34. Документы по Продаже** – настоящий Договор со всеми Приложениями |

**В ПОДТВЕРЖДЕНИЕ ЧЕГО,** Стороны подписали данное Приложение в соответствующие даты, указанные ниже.

от Участника:

_____ /Тян В.Н. /

дпа

от Покупателя:

_____ /Воробьёв А.К./

дпа

## Описание воздушного судна

Данное Приложение является неотъемлемой частью настоящего Договора о купле-продаже и, в таком виде составляет документ, применимый к покупке воздушного судна RJ-85 заводской № E2319, как предусмотрено пунктом 3.1. настоящего Договора.

("N/A" означает неприменимость):

| | |
|---|---|
| **1. Самолет RJ-85**<br>Изготовитель – корпорация **AVRO**,<br>конструкция - пассажирский,<br>модель – RJ-85,<br>заводской № E2319,<br>принадлежность и регистрационный<br>номер- НАК «Узбекистон хаво йуллари»<br>UK 80003,<br>двигатели - LF507-1F | **2. Двигатели LF507-1F**<br>№1 SN # P07655    1997<br>№2 SN # P07658    1997<br>№3 SN # P07657    1997<br>№4 SN # LF07607   1997 |
| **3. Документация по Самолету -**<br>Формуляры и паспорта на воздушное<br>судно, силовые установки, агрегаты и<br>комплектующие изделия, а также<br>дополнительное оборудование | **4. Аренда (N/A)** |
| **5. Арендатор ( N/A)** | **6. Страна регистрации - Узбекистан** |
| **7АДополнительные Предварительные**<br>**Условия к Обязательствам Участника**<br>**продать Самолет (статьи 7.4 и 7.8)**<br><br>**7ВДополнительные**<br>**Предварительные    Условия    к**<br>**Обязательствам Покупателя купить**<br>**Самолет (статьи 6.1, 6.2, 6.3, 6.4, 6.5,**<br>**6.6, 6.12)** | **8. Покупная цена – 1 600 000 (один**<br>**миллион шестьсот тысяч) долларов**<br>**США.** |
| **9. Депозит [N/A]** | **10. Проценты по Депозиту [N/A]** |
| **11. Перерасчет при Поставке [N/A]** | **12. Банковский счет Участника**<br>ИНН ▓▓▓▓,<br>ОКРО ▓▓▓<br>ОКОНХ ▓▓▓<br>Код банка 00882<br>SWIFT: NBFAUZ2X<br>Валютный счет: ▓▓▓▓7030<br>Центральный операционный отдел<br>Национального банка ВЭД Республики<br>Узбекистан |
| **13. Дополнительные Положения,**<br>относящиеся к налогам  [N/A] | **14 Инспекция - за счёт Покупателя** |
| **15. Требования по Состоянию при**<br>Поставке - «как есть, где есть» | **16. Предел возмещения ущерба N/A** |

AR 0522

| | |
|---|---|
| 17. Полная Потеря  [N/A] | 18. Владение - [N/A] |
| 19. Планируемая Дата Поставки [укажите] | 20. Место Поставки-Международный аэропорт «Ташкент» |
| 21. Окончательная Дата Поставки [укажите] | 22. Продавец - Государственный комитет Республики Узбекстан по приватизации, демонополизации и развитию конкуренции |
| 23. Гарантии Изготовителя [N/A] | 24. Компенсации [N/A] |
| 25. Страхование Ответственности [N/A] | 26. Дополнительные События Прекращения Договора[N/A] |
| 27A. Дополнительные Представления и Гарантии Продавца [N/A]  27B. Дополнительные Представления и Гарантии Покупателя [N/A] | 28. Извещения [N/A] |
| 29. [намеренно опущена] | 30. Юрисдикция - «исключительная» |
| 31. Передача Контракта по факсу / Электронными средствами -допустима по адресу: rusaviainvest@mail.ru | 32. Затраты и Расходы Покупатель оплачивает расходы по пункту 4.6. настоящего Договора |
| 33. Рабочий день в г. Ташкент, г.Москва | 34. Документы по Продаже – настоящий Договор со всеми Приложениями |

**В  ПОДТВЕРЖДЕНИЕ ЧЕГО**, Стороны подписали данное Приложение в соответствующие даты, указанные ниже.

от Участника:

_____ /Тяп В.Н. /

от Покупателя:

_____/Воробьёв А.К./

два

| AGREEMENT № 3 ON SALE-PURCHASE OF AIRCRAFT | ДОГОВОР № 3 КУПЛИ-ПРОДАЖИ ВОЗДУШНЫХ СУДОВ  RAI |
|---|---|
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city      "27  10  2016 | Ташкент      "27  102016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter – "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушных судов (далее - «Договор») заключен в г. Ташкенте между: |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION (hereinafter – "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company "RUSAVIAINVEST" Ltd. (hereinafter – "Purchaser"), having its legal address at 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией ООО «РУСАВИАИНВЕСТ» (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" (hereinafter – "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «O'ZBEKISTON HAVO YO'LLARI» (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тяна В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |
| HEREBY IT IS AGREED the following: | НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ о следующем: |

AR 0524

| 1. **DEFINITIONS AND THEIR INTERPRETATION** | 1. **ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
|---|---|
| **Act of assessment of the technical condition of aircraft** means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | **Акт технического осмотра воздушного судна** - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путем его инспектирования и подтверждения подписями представителей Участника и Покупателя. |
| **Act of acceptance-transfer of aircraft** (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment 3.1 3.2 3.3) | **Акт приема-передачи воздушного судна** (далее по тексту Договора – «Акт приема-передачи») - документ, подтверждающий факт приема и передачи воздушного судна и технической документации, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложения № 3.1 №3.2 №3.3) |
| **Aircraft** means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No.1 (Attachments No.4.1, 4.2, 4.3) | **Воздушное судно** – описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по каждому воздушному судну, указанному в приложении №1. (Приложение № 4.1 4.2 4.3) |
| **Aircraft documentation** means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | **Документация по воздушному судну** - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| **Business Day** means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | **Рабочий день** – любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| **Delivery** means transfer of title on aircraft from Participant to Purchaser under this Agreement. | **Поставка** – передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| **Aircraft condition at delivery "as is, where is"** means technical condition of aircraft, described in Attachment at the moment of its assessment. | **Состояние воздушного судна при поставке «как есть, где есть»** - техническое состояние воздушного судна на момент Поставки |
| **Delivery date** means the day, which is Business Day and on which the aircraft delivery occurs. | **Дата поставки** - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |
| **Partial aircraft loss** means partial damages of aircraft which are not causes of total aircraft loss. | **Частичная потеря воздушного судна** - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |

| | |
|---|---|
| **Sale Documents** include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже – включают в себя настоящий Договор, Акт приёма-передачи воздушного судна, и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора |
| **2.**      **AGREEMENT SUBJECT** | **2.**      **ПРЕДМЕТ ДОГОВОРА** |
| 2.1     According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Air company "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft Airbus-310 MSN 706, MSN 574, MSN 576 to the possession of Purchaser under Attachments No. 1, No. 2, being the integral part of this Agreement, in condition "as is, where is", and Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1     В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90) и Распоряжением Президента Республики Узбекистан от 14.07.2015г № Р-4502, Продавец и Участник передают в собственность Покупателю воздушные суда RJ-85 заводской № Е2312, № Е2309, № Е2319 и авиационное имущество, согласно Приложению №1, №2, являющихся неотъемлемой частью настоящего Договора, в состоянии - «как есть, где есть», а Покупатель оплачивает стоимость и принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2     At the execution of this Agreement the aircraft and aviation assets are the property of the Republic of Uzbekistan, are not in any pledge, and there is no any encumbrance on them. | 2.2     Воздушные суда и авиационное имущество на момент заключения настоящего Договора являются собственностью Республики Узбекистан, не находятся в залоге и на них отсутствуют какие-либо обременения. |
| 2.3     Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3     Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушные суда, свободные и чистые от каких-либо прав третьих лиц. |
| 2.4     Aircraft shall be passed under acts of acceptance-transfer, executed in accordance with the Attachment No. 3.1, 3.2, 3.3 in completeness according to the accompanying technical documentation | 2.4.     Воздушные суда передаются по актам приема-передачи, оформленным в соответствии с Приложением № 3.1, 3.2, 3.3 в комплектации согласно сопроводительной технической документации. |
| 2.5     Title on aircraft and aviation assets shall be transferred to Purchaser upon receiving the money on currency account of Participant under paragraph 4.3 of this Agreement and signing the Act of acceptance-transfer for each aircraft by it. | 2.5.     Право собственности на воздушные суда и авиационное имущество переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пункту 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft.<br><br>Attachments to this Agreement are its integral part and have equal legal effect with it. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора.<br><br>Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательств Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

| | |
|---|---|
| 3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail. | 3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу. |
| 3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement. | 3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора. |
| 3.8 Participant's obligation to deliver aircraft and aviation assets shall be conditional on satisfaction its preliminary conditions with Purchaser. | 3.8 Обязательство Участника поставить воздушные суда и авиационное имущество обусловлено выполнением его предварительной договоренности с Покупателем. |
| 3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant. | 3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником. |
| 3.10 Purchaser's obligation to accept aircraft and aviation assets delivery in condition "as is, where is", together with corresponding aviation items and to pay purchase shall be conditional on satisfaction its preliminary conditions with Seller and Participant. | 3.10 Обязательство Покупателя принять поставку воздушных судов и авиационного имущества в состоянии «как есть, где есть», и оплатить покупку, обусловлено выполнением его предварительной договоренности с Продавцом и Участником. |
| 3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser. | 3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем. |
| **4. PRICE AND PAYMENT ORDER** | **4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ** |
| 4.1 Price of each aircraft and aviation assets in whole are indicated in Attachments No. 1 and 2 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement. | 4.1 Выкупная цена за каждое воздушное судно и авиационное имущество указана в Приложениях №1 и №2 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора. |
| 4.2 Prices of aircraft and corresponding aviation items are the following: | 4.2 Выкупные цены воздушных судов составляют: |
| - RJ-85 MSN E2312 – **2,800,000.00 US dollars;** | - RJ-85 заводской № E2312 - **2 800 000 долларов США;** |
| - RJ-85 MSN E2309 – **1,600,000.00 US dollars;** | - RJ-85 заводской № E2309 - **1 600 000 долларов США;** |

| | |
|---|---|
| - RJ-85 MSN E2319 – **1,600,000.00 US dollars;**<br><br>- aviation engines LF507-1F (LF07603; LF07641; P07727), APU APS-1000 (SP-E977533) and spare parts for RJ-85 on total amount 2,400,000.00 US **dollars;**<br><br>Total price of aircraft and aviation assets being realized are **8,400,000.00 (eight millions four hundred thousand) US dollars.** | - RJ-85 заводской № E2319 - **1 600 000 долларов США;**<br><br>- авиационные двигатели LF507-1F (LF07603; LF07641; P07727), ВСУ APS-1000 (SP- E977533) и запасные части для ВС RJ-85 на общую сумму **2 400 000 долларов США;**<br><br>Общая стоимость реализуемых воздушных судов и авиационного имущества составляет **8 400 000 (восемь миллионов четыреста тысяч) долларов США.** |
| 4.3    In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircrafts and signs the acts of technical inspection of aircrafts. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways". | 4.3    В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушных судов и подписывает Акты технического осмотра воздушных судов, и в течение 10 рабочих дней, с даты подписания данных Актов, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари». |
| 4.4    Net amount of payment for each aircraft and aviation items shall be transferred to the currency account of the Participant in US Dollars. | 4.4    Чистая сумма выкупного платежа за каждое воздушное судно   должна быть переведена в Долларах США на банковский счет Участника. |
| 4.5    Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 10 386,205 US dollars as well as amount for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment. | 4.5    Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 10 386,25 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты. |
| 4.67   Date of money receiving on the currency account of the Participant shall be considered as date of payment. | 4.6.    Датой оплаты считается дата поступления денежных средств на валютный счет Участника. |
| **5. SELLER'S OBLIGATIONS** | **5    ОБЯЗАТЕЛЬСТВА ПРОДАВЦА** |
| 5.1    Seller undertakes to make registration of this Agreement. | 5.1    Продавец обязуется произвести регистрацию настоящего Договора. |
| **6. PURCHASER'S RIGHTS AND OBLIGATIONS** | **6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ** |
| 6.1    Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft and aviation assets before inspection of its technical condition and on date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery. | 6.1    Покупатель или его представители имеют право на "предварительный осмотр" воздушных судов и авиационного имущества до проведения инспекции его технического состояния на дату Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по |

| | |
|---|---|
| | хранению воздушного судна на момент Поставки. |
| 6.2 After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of each aircraft on the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the date and in such place that shall be agreed by the Participant and Purchaser. | 6.2 После подписания настоящего договора, Покупатель за свой счет имеет право произвести инспекцию технического состояния каждого воздушного судна на дату Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель. |
| Inspection shall include: | Инспекция должна включать: |
| 1. physical inspection of technical documentation of aircraft; | 1. физическую инспекцию технической документации на воздушное судно; |
| 2. physical inspection of aircraft: | 2. физическую инспекцию воздушного судна: |
| (a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine; | (a) выполнение полной видео-инспекции бароскопом (A) компрессоров низкого и высокого давления и (B) зоны турбины; |
| (b) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable; | (b) проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо; |
| 6.3 If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement. | 6.3 При не удовлетворительных результатах инспекции, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор. |
| 6.4 Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted due to death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant. | 6.4 Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника. |
| 6.5 Purchaser shall make payment or money transfer in amount of price of aircraft and aviation items as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement. | 6.5 Покупатель производит оплату выкупного платежа за воздушные суда, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3. и 11.3. настоящего Договора. |

| | |
|---|---|
| 6.6 Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days form the moment of invoice receiving. | 6.6 Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5 настоящего Договора. |
| 6.7 Purchaser shall make phased aircraft acceptance under this Agreement according to the technical condition and completeness, set in the Act of assessment, taking into account calendar tear and wear and possible environmental influence. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser. | 6.7 Покупатель, на условиях настоящего Договора осуществляет приемку воздушных судов и их технической документации. Результаты приема-передачи каждого воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем. |
| 6.8 Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser. | 6.8 Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного судна с момента перехода воздушного судна в собственность Покупателя. |
| 6.9 Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country. | 6.9 Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя. |
| **7. RIGHTS AND OBLIGATIONS OF PARTICIPANT** | **7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА** |
| 7.1 Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft. | 7.1 Участник совместно с Покупателем до момента подписания настоящего Договора произведёт «предварительный осмотр» воздушных судов |
| 7.2 Participant shall agree with Purchaser the date and time of inspection of technical condition of each aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days. | 7.2 Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния каждого воздушного судна, а также окажет содействие в её проведении в течение 10 последующих дней. |
| 7.3 Participant shall agree with Purchaser the date of Delivery of each aircraft and phased transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for each aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation. | 7.3 Участник согласует с Покупателем дату Поставки каждого воздушного судна и поэтапно передаст Покупателю воздушные суда с оформлением Акта приема-передачи на каждое воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушных судов в стране ввоза. |
| 7.4 Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate | 7.4 Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в ходе технической инспекции воздушного судна и извещения Покупателя о принятом решении Участника: (а) устранить выявленные недостатки за счет Участника; |

| | |
|---|---|
| this Agreement. | или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5 Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5 Участник устранит выявленные Покупателем недостатки в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6 Participant shall provide performing of all formalities (including customs procedures), set for aircraft export form the country of Seller. | 7.6 Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7 Participant shall inform Purchaser during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7 Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8 Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted due to death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8 Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1 Transfer of each aircraft shall be performed by Participant on the terms "FCA – International airport Tashkent". Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1. Передача каждого воздушного судна будет осуществлена Участником на условиях «FCA - Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2 Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2 Датой передачи воздушного судна считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3 Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser after technical inspection of aircraft and fixing by Participant. | 8.3 Акт приёма-передачи воздушного судна подписывается Участником и Покупателем после проведения его технического осмотра и устранения Участником выявленных несоответствий. |
| 8.4 Fixing the discrepancies found during technical inspection of aircraft shall be performed by Participant during twenty (20) calendar days. | 8.4 Устранение выявленных недостатков в ходе технической инспекции воздушного судна будет осуществлено Участником в течение 20 (двадцати) календарных дней. |
| 8.5 Purchaser's representative shall have originals of power of attorney (in three exemplars) for aircraft obtaining and signing | 8.5 Представитель Покупателя должен иметь оригиналы доверенности в трех экземплярах на право получения |

| | |
|---|---|
| the Act of acceptance-transfer. | воздушного суда и подписания Акта приема-передачи. |
| 8.6 Risk of accidental loss or accidental damage of aircraft shall pass from Participant to Purchaser upon transferring the aircraft to the possession of Purchaser. | 8.6 Риск случайной утраты или случайного повреждения воздушного судна переходит от Участника к Покупателю с момента перехода воздушного судна в собственность Покупателя. |
| 8.7 In the place of acceptance-transfer of aircraft Purchaser on its own account shall make decoding of necessary equipment and remove registration and state marks in accordance with Aviation rules of the Republic of Uzbekistan unless otherwise agreed by the Parties. | 8.7 В пункте приема-передачи воздушного суда Покупатель за свой счет производит раскодировку необходимого оборудования и удаляет регистрационные, государственные опознавательные знаки и символики в соответствии с Авиационными правилами Республики Узбекистан, если иное не согласовано Сторонами. |
| **9. TECHNICAL DOCUMENTATION** | **9 ТЕХНИЧЕСКАЯ ДОКУМЕНТАЦИЯ** |
| 9.1 Technical documentation (logbooks, passports etc.) for aircraft, power unit, aggregates and componentry as well as additional equipment shall be properly executed and passed by Participant to Purchaser in whole volume. | 9.1 Техническая документация (формуляры, паспорта и т.д.) на воздушные суда, силовые установки, агрегаты и комплектующие изделия, а также дополнительное оборудование должны быть оформлены соответствующим образом и переданы Участником Покупателю в полном объёме. |
| 9.2 Technical documentation shall contain all exploitation records, executed in established order, total operating time for aircraft, engines, units and aggregates as well as signatures and seals of operating enterprises. | 9.2 Техническая документация должна содержать все эксплуатационные записи, оформленные в установленном порядке, итоговые наработки воздушного судна, двигателей, узлов и агрегатов, а также подписи и печати эксплуатационных предприятий. |
| 9.3 Passing the documentation shall be recorded in the Act of acceptance-transfer. | 9.3 Передача документации отражается в Акте приема-передачи. |
| **10 PARTIES' GUARANTEES** | **10 ГАРАНТИИ СТОРОН** |
| 10.1 Each Party has all rights and authorities and has undertaken all necessary actions in accordance with its articles of association within the legislation in force for execution and performing this Agreement and for successful fulfillment of other actions provided for by this Agreement. | 10.1 Каждая из Сторон располагает всеми правами и полномочиями и предприняла все необходимые действия в соответствии со своими учредительными документами в рамках действующего законодательства для выполнения и оформления настоящего Договора, а также для успешного выполнения иных действий, предусмотренных настоящим Договором. |
| 10.2 This Agreement is the legally executed instrument, valid and binding for fulfillment for each Parties and has legal force for each Parties in accordance with its provisions. | 10.2 Настоящий Договор является юридически оформленным документом, действующим и обязательным к выполнению для каждой из Сторон и имеет юридическую силу в отношении каждой из Сторон в соответствии с его положениями. |
| 10.3 Purchaser confirms and ensures Seller and Participant that at date of signing this Agreement: | 10.3 Покупатель подтверждает и гарантирует Продавцу и Участнику, что на дату подписания настоящего Договора: |

a) it is independent legal entity, properly established under the legislation of Russian Federation, and will carry out its activity regarding purchased aircraft according to the current legislation of state of registration;

b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized;

c) it is not in process of any reorganization and doesn't assume the same that may materially adversely affect its relevant financial position or ability of Purchaser to perform obligations, set in this Agreement;

d) it has received all permissions of necessary governmental bodies in order to legally and efficiently carry out its business, and information advised to Seller regarding legal status of Purchaser is full and reliable.

10.4 Seller and Participant confirm and ensure Purchaser that at date of signing this Agreement:

a) they are independent legal entity, properly established under the legislation of the Republic of Uzbekistan, and will carry out its activity regarding aircraft according to the current legislation of the Republic of Uzbekistan;

b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized;

c) they are not in process of any reorganization and don't assume the same that may materially adversely affect its relevant

---

а) он является независимым юридическим лицом, надлежащим образом организованным по законодательству Российской Федерации, и будет осуществлять свою деятельность в отношении приобретаемых воздушных судов по действующему законодательству страны регистрации;

б) лица, подписывающие настоящий Договор от имени Покупателя, являются надлежащим образом уполномоченными;

в) он не находится в процессе какой-либо реорганизации или не предполагает таковую, которая могла бы существенно и неблагоприятно отразиться на его соответствующем финансовом положении или способности Покупателя выполнять обязательства, указанные в настоящем Договоре;

г) он располагает всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Продавцу в отношении правового статуса Покупателя, является полной и достоверной.

10.4. Продавец и Участник подтверждают и гарантируют Покупателю, что на дату подписания настоящего Договора:

а) они являются независимыми юридическими лицами, надлежащим образом организованными по законодательству Республики Узбекистан, и будут осуществлять свою деятельность в отношении воздушных судов по действующему законодательству Республики Узбекистан;

б) лица, подписывающие настоящий договор от имени Продавца и Участника, являются надлежащим образом уполномоченными;

в) они не находятся в процессе какой-либо реорганизации или не предполагается таковая, которая

AR 0534

financial position or ability of Seller and Participant to perform obligations, set in this Agreement;

d) they have received all permissions of necessary governmental bodies in order to legally and efficiently carry out their business, and information advised to Purchaser regarding legal status of Seller and Participant is full and reliable.

могла бы существенно и неблагоприятно отразиться на их соответствующем финансовом положении или способности Продавца и Участника выполнять обязательства, указанные в настоящем Договоре;

г) они располагают всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Покупателю в отношении правового статуса Продавца и Участника, является полной и достоверной.

10.5 Parties mutually undertake to refrain from any actions that may result in situation when the Parties' Guarantees are not reliable or won't be performed.

10.5. Стороны принимают взаимные обязательства воздерживаться от совершения каких-либо действий, вследствие которых Гарантии Сторон не будут являться истинными или не будут выполнены.

## 11. RESPONSIBILITY OF THE PARTIES FOR BREACH OF OBLIGATION UNDER AGREEMENT

## 11. ОТВЕТСТВЕННОСТЬ СТОРОН ЗА НАРУШЕНИЕ ДОГОВОРНЫХ ОБЯЗАТЕЛЬСТВ

11.1 The Party unreasonably avoid performing its obligations under this Agreement, shall reimburse other Party all losses caused by this fact and documentary confirmed.

11.1. Сторона, необоснованно уклоняющаяся от исполнения своих обязательств по настоящему Договору, должна возместить другой Стороне все возникающие от этого документально подтвержденные убытки.

11.2 If after signing this Agreement any Party can't or doesn't comply with its obligation under this Agreement or if in any time after signing this Agreement any Party has known about any fact or event which shows that any Guarantee, set in this Agreement is incorrect or misleading or any obligation of the Parties was not or won't be observed, then in such cases the Party suffered shall have the right to judicially require invalidation or termination of this Agreement and payment of damages.

11.2 Если после подписания настоящего Договора одна из Сторон не смогла или не соблюдает все свои обязательства по настоящему Договору или, если в любое время после подписания настоящего Договора одной из Сторон становится известно о каком-либо факте или событии, которое показывает, что какая-либо Гарантия, изложенная в настоящем Договоре, является неверной или вводящей в заблуждение или, что какое-либо обязательство Сторон не было или не будет соблюдено, то в любом таком случае потерпевшая Сторона вправе требовать признания недействительным или расторжения настоящего Договора в судебном порядке и возмещения понесенных убытков.

11.3 In the case of late payments of aircraft price by Purchaser and reimbursement of expenses of Participant in accordance with paragraphs 4.3 and 4.6 of this Agreement Purchaser shall pay penalties in amount of 0.4% of outstanding payment per day of delay,

11.3 В случае несвоевременной оплаты Покупателем выкупных платежей и возмещения расходов Участника в соответствии с пунктами 4.3. и 4.5 настоящего Договора, Покупатель уплачивает Участнику пеню в размере 0,4%

AR 0539

| | |
|---|---|
| but no more than 50% of outstanding amount. If Purchaser doesn't make payment of aircraft price and Participant' expenses, including penalties (if any) during three months after date, provided for in paragraphs 4.3 and 6.5, then Seller and Participant shall have the right to terminate this Agreement in established order. | от суммы просроченного платежа за каждый день просрочки, но не более 50% суммы просроченного платежа. При этом если Покупателем в течение трех месяцев после окончания предусмотренного пунктами 4.3. и 6.6. срока не будут оплачены выкупные платежи и расходы Участника, а также пени (в случае возникновения), то Продавец и Участник вправе расторгнуть настоящий Договор в установленном порядке. |
| 11.4  In the case of Agreement termination due to Purchaser's fault the amounts previously paid in aircraft price by Purchaser under this Agreement shall be returned by Participant, provided that Participant shall apply penalty in amount of 15% of aircraft price amounts. Aircraft shall be returned to Participant by Purchaser. | 11.4  В случае расторжения настоящего Договора по вине Покупателя средства, ранее перечисленные Покупателем в счет оплаты выкупных платежей по настоящему Договору, возвращаются Участником. При этом Участник применяет штраф в размере 15% от суммы выкупных платежей. Воздушные суда возвращаются Покупателем Участнику. |
| 11.5  In the case of Agreement termination expense of Participant mentioned in paragraph 4.6 of this Agreement are not to be returned. | 11.5  В случае расторжения настоящего Договора расходы Участника, указанные в пункте 4.5. настоящего Договора, возврату не подлежат. |
| 11.6  Payment of penalty for non-fulfilment or improper fulfilment of provisions of this Agreement by the Parties shall not release Party in fault from performing obligations undertaken under this Agreement. | 11.6  Уплата неустойки за неисполнение или ненадлежащее исполнение Сторонами условий настоящего Договора не освобождает виновную Сторону от исполнения принятых на себя по Договору обязательств. |
| **12. APPLICABLE LAW, DISPUTE RESOLUTION** | **12  ПРИМЕНИМОЕ ПРАВО. РАЗРЕШЕНИЕ СПОРОВ** |
| 12.1  The laws of the Republic of Uzbekistan is the applicable law regarding possible disputes under this Agreement. | 12.1.  Применимым правом в отношении возможных споров по настоящему договору Стороны признают право Республики Узбекистан. |
| 12.2  Any disputes, controversy or claims arisen out of or related to this Agreement or breach, termination or invalidation of this Agreement in the case of impossibility to reach mutual arrangement shall be considered in the courts of the Republic of Uzbekistan in accordance with the legislation of the Republic of Uzbekistan. Parties have undertaken to assume all necessary measures for resolving possible discrepancies through negotiations, submitting written claims before applying to court of justice. | 12.2.  Любые споры, разногласия или претензии, возникающие или относящиеся к настоящему Договору, либо нарушение, прекращение действия или недействительность настоящего Договора, в случае невозможности достижения взаимной договоренности, рассматриваются в судах Республики Узбекистан в соответствии с законодательством Республики Узбекистан. Стороны берут на себя обязательства принять все необходимые меры для рассмотрения возможных разногласий путем переговоров, предъявления письменных претензий перед обращением в судебные органы. |
| 12.3  Existence of dispute, controversies or claims, as well as impending legal proceedings shall not release any Party from fulfilment its relevant obligations under this Agreement by | 12.3  Наличие спора, разногласий или претензий, равно как и предстоящее рассмотрение дела в суде не освобождает ни одну из Сторон от выполнения ею |

| | |
|---|---|
| it. | соответствующих обязательств в соответствии с настоящим Договором. |
| 12.4 Claiming order of pre-trial consideration of dispute is mandatory. Period of reply on claim received is equal 30 calendar days. | 12.4 Претензионный порядок досудебного рассмотрения спора является обязательным. Срок ответа на полученную претензию – 30 календарных дней. |
| 12.5 On matters arisen at performing, amendment or termination of this Agreement and not provided for in this Agreement the Parties shall be guided by current legislation of the Republic of Uzbekistan. | 12.5 В вопросах, возникающих при исполнении, изменении либо расторжении настоящего Договора и непредусмотренных настоящим Договором, Стороны руководствуются действующим законодательством Республики Узбекистан. |
| **13. FORCE MAJEURE** | **13 ФОРС-МАЖОР** |
| 13.1 Neither Party bears responsibility before other ones for non-fulfilment of obligations due to events of force majeure, caused by circumstances arisen without Parties' will and desire, which might not be foreseen or avoid, including declared or actual war, civil strife, epidemic, embargo, earthquake, flood, fires and other Acts of God. | 13.1 Ни одна из Сторон не несет ответственности перед другой Стороной за невыполнение обязательств вследствие событий непреодолимой силы, обусловленных обстоятельствами, возникшими помимо воли и желания Сторон, которые нельзя предвидеть или избежать, включая объявленную или фактическую войну, гражданские волнения, эпидемии, блокаду, эмбарго, землетрясения, наводнения, пожары и другие стихийные бедствия. |
| 13.2 Certificate issued by relevant authorized body of state of the Party is sufficient confirmation of existence and duration of event of force majeure. | 13.2. Свидетельство, выданное соответствующим и уполномоченным органом государства Стороны Договора, является достаточным подтверждением наличия и продолжительности действия события непреодолимой силы. |
| 13.3 Party that doesn't perform its obligations shall during thirty (30) days give the notice about restriction and its influence on obligations fulfilment under Agreement to other Parties. | 13.3 Сторона, которая не исполняет своего обязательства, должна в течение 30 (тридцати) дать другой Стороне письменное извещение дней о препятствии и его влиянии на исполнение обязательств по Договору. |
| 13.4 If force majeure circumstances exist during three (3) successive months and don't show cessation signs, then this Agreement may be terminated by the Parties through giving the notice to other Parties. | 13.4 Если обстоятельства непреодолимой силы действуют на протяжении 3 (трех) последовательных месяцев и не обнаруживают признаков прекращения, настоящий Договор может быть расторгнут Сторонами путем направления уведомления другой Стороне. |

AR 0537

| 14 LEGAL ADDRESSES, REQUISITES AND SIGNATURES OF THE PARTIES | 14. ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН |
|---|---|
| **SELLER** | **ПРОДАВЕЦ** |
| **State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition** | **Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции** |
| 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, | Республика Узбекистан 100003, г. Ташкент, пр. Узбекистанский, 55 |
| Currency account █████████89002 | Валютный счет: █████████9002 |
| RKC Main Tashkent city branch of the Central bank of the Republic of Uzbekistan | РКЦ Главное Ташкентское городское управление Центрального Банка РУз, код 00014, |
| Bank code 00014, Individual Number of tax Payer 2 | ИНН 2 |
| First Deputy Chairman | Первый заместитель председателя |
| S.X.Gafarov | Гафаров С.Х |
| Company seal | М.п. |

| **PURCHASER** | **ПОКУПАТЕЛЬ** |
|---|---|
| **"RUSAVIAINVEST" Ltd.** | **ООО «РУСАВИАИНВЕСТ»** |
| 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75 rusaviainvest@mail.ru CORRESPONDENT BANK: JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA SWIFT: CHASUS33XXX ACCOUNT WITH CORRESPONDENT BANK: █████0991 BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM BENEFICIARY'S ACCOUNT.: █████3843 | 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75 rusaviainvest@mail.ru CORRESPONDENT BANK: JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA SWIFT: CHASUS33XXX ACCOUNT WITH CORRESPONDENT BANK: █████0991 BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM BENEFICIARY'S ACCOUNT.: █████3843 |
| Director General | Генеральный директор |
| A.K.Vorobyev | Воробьёв А.К. |
| Company seal | М.п. |

| PARTICIPANT | УЧАСТНИК |
|---|---|
| **National air company of the Republic of Uzbekistan "Uzbekistan Airways"** | **НАК «Узбекистон хаво йуллари»** |
| 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan | Республика Узбекистан, 100060 г. Ташкент пр. Амира Темура 41. |
| Individual Number of tax Payer ▮▮▮▮ | ИНН ▮▮▮▮ |
| OKPO ▮▮▮▮ | ОКРО ▮▮▮▮ |
| OKONX ▮▮▮▮ | ОКОНХ ▮▮▮▮ |
| Currency account: ▮▮▮▮7030 | Валютный счет: ▮▮▮▮7030 |
| Central operation branch of the National Bank for Foreign Economic Activity of the Republic of Uzbekistan | Центральный операционный отдел Национального банка ВЭД Республики Узбекистан |
| Bank code: 00882 | Код банка: 00882 |
| SWIFT : NBFAUZ2X | SWIFT: NBFAUZ2X |
| **Director General** | **Генеральный директор** |
| V.N. Tyan | Тян В.Н. |
| Company seal | м.п. |

AR 0539

# B.6

Supplemental information submitted as new license application on 5/19/2017. New case file created (SDGT-2017-344783) but merged with active case file (SDGT-2017-344750-1) upon discovery case file was supplemental material.

AR 0540



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | USD | **Program(s):** | Foreign Terrorist Organizations |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

We have blocked transfer amount 1000 000 usd to Uzbekistan National Aircompany. It full legal contract. We ask you to clarify the circumstances and misunderstanding with this payment delay and allow execution of payment

under the contract or to perform a refund.The blocked transaction in the amount of 1 million dollars as a preliminary payment under an official

contract to the national airline of Uzbekistan. Our Russian company Rusaviainvest and the Uzbek national company, Uzbekistan Airways are not on the sanctions lists. Correspondent Bank advised us that funds have blocked as per OFAC of global terrorism programm. The our deal is clean and has no relationship with terrorism, all amounts go to the national bank of Uzbekistan.

## Contact Information

### Applicant

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | **Line1:** | 25, 1st Soviet pereulok | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Shelkovo | **State:** | |
| | **Zip:** | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | | |
| **Phone:** | **Office:** | 7-4955444375 | | |
| | **Mobile:** | | | |
| | **Fax:** | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Correspondent

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | **Line1:** | 25, 1st Soviet pereulok | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Shelkovo | **State:** | |
| | **Zip:** | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | | |
| **Phone:** | **Office:** | 7-4955444375 | | |
| | **Mobile:** | | | |
| | **Fax:** | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |

AR 0541

**Point of Contact Name:**
| | | | | |
|---|---|---|---|---|
| **Address:** | **Line1:** | | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | New York | **State:** | NY |
| | **Zip:** | 10004 | **Country:** | United States |

**Email Address:**
| | | |
|---|---|---|
| **Phone:** | **Office:** | |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |

| | | | | |
|---|---|---|---|---|
| **Address:** | **Line1:** | 25, 1st Soviet pereulok | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Schelkovo | **State:** | |
| | **Zip:** | 141100 | **Country:** | Russia (Russian Fed.) |

**Email Address:** info@rusaviainvest.ru
| | | |
|---|---|---|
| **Phone:** | **Office:** | |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | AKB ABSOLUT BANK (PAO) | |
| **Point of Contact Name:** | | |

| | | | | |
|---|---|---|---|---|
| **Address:** | **Line1:** | | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | Moscow | **State:** | |
| | **Zip:** | | **Country:** | Russia (Russian Fed.) |

**Email Address:**
| | | |
|---|---|---|
| **Phone:** | **Office:** | 7-4957777171 |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | JPMORGAN CHASE BANK | |
| **Point of Contact Name:** | | |

| | | | | |
|---|---|---|---|---|
| **Address:** | **Line1:** | | | |
| | **Line2:** | | | |
| | **Line3:** | | | |
| | **City:** | | **State:** | |
| | **Zip:** | | **Country:** | |

**Email Address:**
| | | |
|---|---|---|
| **Phone:** | **Office:** | |
| | **Mobile:** | |
| | **Fax:** | |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

AR 0542

**Contact Category:**   Institution
**Organization Name:**   National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:**   Line1:
    Line2:
    Line3:
    City:   Tashkent                                    **State:**
    Zip:                                            **Country:**   Uzbekistan
**Email Address:**
**Phone:**   Office:
    Mobile:
    Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**   Institution
**Organization Name:**   National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**   Line1:
    Line2:
    Line3:
    City:   Tashkent                                    **State:**
    Zip:                                            **Country:**   Uzbekistan
**Email Address:**
**Phone:**   Office:
    Mobile:
    Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
| --- | --- |
| registration of company | Supplemental Information |
| contract | Supplemental Information |

## Certification

**Signature:**
**Email Address:**   info@rusaviainvest.ru                          **Date:**   5/19/2017

| English | Русский |
|---|---|
| **AGREEMENT № 3 ON SALE-PURCHASE OF AIRCRAFT** | **ДОГОВОР № 3 КУПЛИ-ПРОДАЖИ ВОЗДУШНЫХ СУДОВ** RAI |
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city "27" 10 2016 | Ташкент "27" 10 2016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter – "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушных судов (далее - «Договор») заключен в г. Ташкенте между: |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION (hereinafter – "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company "RUSAVIAINVEST" Ltd. (hereinafter – "Purchaser"), having its legal address at 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией ООО «РУСАВИАИНВЕСТ» (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" (hereinafter – "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «O'ZBEKISTON HAVO YO'LLARI» (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тяна В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |
| HEREBY IT IS AGREED the following: | НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ о следующем: |

AR 0544

| 1. **DEFINITIONS AND THEIR INTERPRETATION** | 1. **ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
|---|---|
| **Act of assessment of the technical condition of aircraft** means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | **Акт технического осмотра воздушного судна** - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путем его инспектирования и подтверждения подписями представителей Участника и Покупателя. |
| **Act of acceptance-transfer of aircraft** (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment 3.1 3.2 3.3) | **Акт приема-передачи воздушного судна** (далее по тексту Договора – «Акт приема-передачи») - документ, подтверждающий факт приема и передачи воздушного судна и технической документации, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложения № 3.1 №3.2 №3.3) |
| **Aircraft** means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No.1 (Attachments No.4.1, 4.2, 4.3) | **Воздушное судно** – описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по каждому воздушному судну, указанному в приложении №1. (Приложение № 4.1 4.2 4.3) |
| **Aircraft documentation** means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | **Документация по воздушному судну** - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| **Business Day** means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | **Рабочий день** – любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| **Delivery** means transfer of title on aircraft from Participant to Purchaser under this Agreement. | **Поставка** - передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| **Aircraft condition at delivery "as is, where is"** means technical condition of aircraft, described in Attachment at the moment of its assessment. | **Состояние воздушного судна при поставке «как есть, где есть»** - техническое состояние воздушного судна на момент Поставки |
| **Delivery date** means the day, which is Business Day and on which the aircraft delivery occurs. | **Дата поставки** - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |
| **Partial aircraft loss** means partial damages of aircraft which are not causes of total aircraft loss. | **Частичная потеря воздушного судна** - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |

| | |
|---|---|
| Sale Documents include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже – включают в себя настоящий Договор, Акт приёма-передачи воздушного судна, и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора |
| **2.   AGREEMENT SUBJECT** | **2.   ПРЕДМЕТ ДОГОВОРА** |
| 2.1   According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Air company "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft Airbus-310 MSN 706, MSN 574, MSN 576 to the possession of Purchaser under Attachments No. 1, No. 2, being the integral part of this Agreement, in condition "as is, where is", and Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1   В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90) и Распоряжением Президента Республики Узбекистан от 14.07.2015г № Р-4502, Продавец и Участник передают в собственность Покупателю воздушные суда RJ-85 заводской № Е2312, № Е2309, № Е2319 и авиационное имущество, согласно Приложению №1, №2, являющихся неотъемлемой частью настоящего Договора, в состоянии - «как есть, где есть», а Покупатель оплачивает стоимость и принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2   At the execution of this Agreement the aircraft and aviation assets are the property of the Republic of Uzbekistan, are not in any pledge, and there is no any encumbrance on them. | 2.2   Воздушные суда и авиационное имущество на момент заключения настоящего Договора являются собственностью Республики Узбекистан, не находятся в залоге и на них отсутствуют какие-либо обременения. |
| 2.3   Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3   Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушные суда, свободные и чистые от каких-либо прав третьих лиц. |
| 2.4   Aircraft shall be passed under acts of acceptance-transfer, executed in accordance with the Attachment No. 3.1, 3.2, 3.3 in completeness according to the accompanying technical documentation | 2.4.   Воздушные суда передаются по актам приема-передачи, оформленным в соответствии с Приложением № 3.1, 3.2, 3.3 в комплектации согласно сопроводительной технической документации. |
| 2.5   Title on aircraft and aviation assets shall be transferred to Purchaser upon receiving the money on currency account of Participant under paragraph 4.3 of this Agreement and signing the Act of acceptance-transfer for each aircraft by it. | 2.5.   Право собственности на воздушные суда и авиационное имущество переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пункту 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора. |
| Attachments to this Agreement are its integral part and have equal legal effect with it. | Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательств Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

| | |
|---|---|
| 3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail. | 3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу. |
| 3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement. | 3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора. |
| 3.8 Participant's obligation to deliver aircraft and aviation assets shall be conditional on satisfaction its preliminary conditions with Purchaser. | 3.8 Обязательство Участника поставить воздушные суда и авиационное имущество обусловлено выполнением его предварительной договоренности с Покупателем. |
| 3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant. | 3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником. |
| 3.10 Purchaser's obligation to accept aircraft and aviation assets delivery in condition "as is, where is", together with corresponding aviation items and to pay purchase shall be conditional on satisfaction its · preliminary conditions with Seller and Participant. | 3.10 Обязательство Покупателя принять поставку воздушных судов и авиационного имущества в состоянии «как есть, где есть», и оплатить покупку, обусловлено выполнением его предварительной договоренности с Продавцом и Участником. |
| 3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser. | 3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем. |
| **4. PRICE AND PAYMENT ORDER** | **4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ** |
| 4.1 Price of each aircraft and aviation assets in whole are indicated in Attachments No. 1 and 2 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement. | 4.1 Выкупная цена за каждое воздушное судно и авиационное имущество указана в Приложениях №1 и №2 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора. |
| 4.2 Prices of aircraft and corresponding aviation items are the following: | 4.2 Выкупные цены воздушных судов составляют: |
| - RJ-85 MSN E2312 – **2,800,000.00 US dollars;** | - RJ-85 заводской № E2312 - **2 800 000 долларов США;** |
| - RJ-85 MSN E2309 – **1,600,000.00 US dollars;** | - RJ-85 заводской № E2309 - **1 600 000 долларов США;** |

- RJ-85 MSN E2319 – **1,600,000.00 US dollars;**

- aviation engines LF507-1F (LF07603; LF07641; P07727), APU APS-1000 (SP-E977533) and spare parts for RJ-85 on total amount 2,400,000.00 US dollars;

Total price of aircraft and aviation assets being realized are 8,400,000.00 (eight millions four hundred thousand) US dollars.

- RJ-85 заводской № E2319 - 1 600 000 долларов США;

- авиационные двигатели LF507-1F (LF07603; LF07641; P07727), ВСУ APS-1000 (SP- E977533) и запасные части для ВС RJ-85 на общую сумму 2 400 000 долларов США;

Общая стоимость реализуемых воздушных судов и авиационного имущества составляет 8 400 000 (восемь миллионов четыреста тысяч) долларов США.

---

4.3 In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircrafts and signs the acts of technical inspection of aircrafts. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways".

4.3 В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушных судов и подписывает Акты технического осмотра воздушных судов, и в течение 10 рабочих дней, с даты подписания данных Актов, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари».

---

4.4 Net amount of payment for each aircraft and aviation items shall be transferred to the currency account of the Participant in US Dollars.

4.4 Чистая сумма выкупного платежа за каждое воздушное судно должна быть переведена в Долларах США на банковский счет Участника.

---

4.5 Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 10 386,205 US dollars as well as amount for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment.

4.5 Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 10 386,25 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты.

---

4.67 Date of money receiving on the currency account of the Participant shall be considered as date of payment.

4.6. Датой оплаты считается дата поступления денежных средств на валютный счет Участника.

---

## 5. SELLER'S OBLIGATIONS

## 5 ОБЯЗАТЕЛЬСТВА ПРОДАВЦА

---

5.1 Seller undertakes to make registration of this Agreement.

5.1 Продавец обязуется произвести регистрацию настоящего Договора.

---

## 6. PURCHASER'S RIGHTS AND OBLIGATIONS

## 6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ

---

6.1 Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft and aviation assets before inspection of its technical condition and on date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery.

6.1 Покупатель или его представители имеют право на "предварительный осмотр" воздушных судов и авиационного имущества до проведения инспекции его технического состояния на дату Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по

| | |
|---|---|
| | хранению воздушного судна на момент Поставки. |
| 6.2 After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of each aircraft on the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the date and in such place that shall be agreed by the Participant and Purchaser. | 6.2 После подписания настоящего договора, Покупатель за свой счет имеет право произвести инспекцию технического состояния каждого воздушного судна на дату Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель. |
| Inspection shall include: | Инспекция должна включать: |
| 1. physical inspection of technical documentation of aircraft; | 1. физическую инспекцию технической документации на воздушное судно; |
| 2. physical inspection of aircraft: | 2. физическую инспекцию воздушного судна: |
| (a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine; | (a) выполнение полной видео-инспекции бароскопом (A) компрессоров низкого и высокого давления и (B) зоны турбины; |
| (b) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable; | (b) проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо; |
| 6.3 If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement. | 6.3 При не удовлетворительных результатах инспекции, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор. |
| 6.4 Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted due to death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant. | 6.4 Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника. |
| 6.5 Purchaser shall make payment or money transfer in amount of price of aircraft and aviation items as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement. | 6.5 Покупатель производит оплату выкупного платежа за воздушные суда, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3. и 11.3. настоящего Договора. |

AR 0550

| | |
|---|---|
| 6.6 Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days form the moment of invoice receiving. | 6.6 Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5 настоящего Договора. |
| 6.7 Purchaser shall make phased aircraft acceptance under this Agreement according to the technical condition and completeness, set in the Act of assessment, taking into account calendar tear and wear and possible environmental influence. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser. | 6.7 Покупатель, на условиях настоящего Договора осуществляет приемку воздушных судов и их технической документации. Результаты приема-передачи каждого воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем. |
| 6.8 Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser. | 6.8 Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного судна с момента перехода воздушного судна в собственность Покупателя. |
| 6.9 Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country. | 6.9 Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя. |
| **7. RIGHTS AND OBLIGATIONS OF PARTICIPANT** | **7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА** |
| 7.1 Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft. | 7.1 Участник совместно с Покупателем до момента подписания настоящего Договора произведёт «предварительный осмотр» воздушных судов |
| 7.2 Participant shall agree with Purchaser the date and time of inspection of technical condition of each aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days. | 7.2 Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния каждого воздушного судна, а также окажет содействие в её проведении в течение 10 последующих дней. |
| 7.3 Participant shall agree with Purchaser the date of Delivery of each aircraft and phased transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for each aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation. | 7.3 Участник согласует с Покупателем дату Поставки каждого воздушного судна и поэтапно передаст Покупателю воздушные суда с оформлением Акта приема-передачи на каждое воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушных судов в стране ввоза. |
| 7.4 Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate | 7.4 Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в ходе технической инспекции воздушного судна и извещения Покупателю о принятом решении Участника: (а) устранить выявленные недостатки за счет Участника; |

| | |
|---|---|
| this Agreement. | или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5 Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5 Участник устранит выявленные Покупателем недостатки в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6 Participant shall provide performing of all formalities (including customs procedures), set for aircraft export form the country of Seller. | 7.6 Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7 Participant shall inform Purchaser during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7 Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8 Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted due to death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8 Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1 Transfer of each aircraft shall be performed by Participant on the terms "FCA – International airport Tashkent". Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1. Передача каждого воздушного судна будет осуществлена Участником на условиях «FCA - Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2 Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2 Датой передачи воздушного суда считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3 Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser after technical inspection of aircraft and fixing by Participant. | 8.3 Акт приёма-передачи воздушного судна подписывается Участником и Покупателем после проведения его технического осмотра и устранения Участником выявленных несоответствий. |
| 8.4 Fixing the discrepancies found during technical inspection of aircraft shall be performed by Participant during twenty (20) calendar days. | 8.4 Устранение выявленных недостатков в ходе технической инспекции воздушного судна будет осуществлено Участником в течение 20 (двадцати) календарных дней. |
| 8.5 Purchaser's representative shall have originals of power of attorney (in three exemplars) for aircraft obtaining and signing | 8.5 Представитель Покупателя должен иметь оригиналы доверенности в трех экземплярах на право получения |

| | |
|---|---|
| the Act of acceptance-transfer. | воздушного суда и подписания Акта приема-передачи. |
| 8.6 Risk of accidental loss or accidental damage of aircraft shall pass from Participant to Purchaser upon transferring the aircraft to the possession of Purchaser. | 8.6 Риск случайной утраты или случайного повреждения воздушного судна переходит от Участника к Покупателю с момента перехода воздушного судна в собственность Покупателя. |
| 8.7 In the place of acceptance-transfer of aircraft Purchaser on its own account shall make decoding of necessary equipment and remove registration and state marks in accordance with Aviation rules of the Republic of Uzbekistan unless otherwise agreed by the Parties. | 8.7 В пункте приема-передачи воздушного суда Покупатель за свой счет производит раскодировку необходимого оборудования и удаляет регистрационные, государственные опознавательные знаки и символики в соответствии с Авиационными правилами Республики Узбекистан, если иное не согласовано Сторонами. |

## 9. TECHNICAL DOCUMENTATION / 9 ТЕХНИЧЕСКАЯ ДОКУМЕНТАЦИЯ

| | |
|---|---|
| 9.1 Technical documentation (logbooks, passports etc.) for aircraft, power unit, aggregates and componentry as well as additional equipment shall be properly executed and passed by Participant to Purchaser in whole volume. | 9.1 Техническая документация (формуляры, паспорта и т.д.) на воздушные суда, силовые установки, агрегаты и комплектующие изделия, а также дополнительное оборудование должны быть оформлены соответствующим образом и переданы Участником Покупателю в полном объёме. |
| 9.2 Technical documentation shall contain all exploitation records, executed in established order, total operating time for aircraft, engines, units and aggregates as well as signatures and seals of operating enterprises. | 9.2 Техническая документация должна содержать все эксплуатационные записи, оформленные в установленном порядке, итоговые наработки воздушного судна, двигателей, узлов и агрегатов, а также подписи и печати эксплуатационных предприятий. |
| 9.3 Passing the documentation shall be recorded in the Act of acceptance-transfer. | 9.3 Передача документации отражается в Акте приема-передачи. |

## 10 PARTIES' GUARANTEES / 10 ГАРАНТИИ СТОРОН

| | |
|---|---|
| 10.1 Each Party has all rights and authorities and has undertaken all necessary actions in accordance with its articles of association within the legislation in force for execution and performing this Agreement and for successful fulfillment of other actions provided for by this Agreement. | 10.1 Каждая из Сторон располагает всеми правами и полномочиями и предприняла все необходимые действия в соответствии со своими учредительными документами в рамках действующего законодательства для выполнения и оформления настоящего Договора, а также для успешного выполнения иных действий, предусмотренных настоящим Договором. |
| 10.2 This Agreement is the legally executed instrument, valid and binding for fulfillment for each Parties and has legal force for each Parties in accordance with its provisions. | 10.2 Настоящий Договор является юридически оформленным документом, действующим и обязательным к выполнению для каждой из Сторон и имеет юридическую силу в отношении каждой из Сторон в соответствии с его положениями. |
| 10.3 Purchaser confirms and ensures Seller and Participant that at date of signing this Agreement: | 10.3 Покупатель подтверждает и гарантирует Продавцу и Участнику, что на дату подписания настоящего Договора: |

a) it is independent legal entity, properly established under the legislation of Russian Federation, and will carry out its activity regarding purchased aircraft according to the current legislation of state of registration;

b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized;

c) it is not in process of any reorganization and doesn't assume the same that may materially adversely affect its relevant financial position or ability of Purchaser to perform obligations, set in this Agreement;

d) it has received all permissions of necessary governmental bodies in order to legally and efficiently carry out its business, and information advised to Seller regarding legal status of Purchaser is full and reliable.

а) он является независимым юридическим лицом, надлежащим образом организованным по законодательству Российской Федерации, и будет осуществлять свою деятельность в отношении приобретаемых воздушных судов по действующему законодательству страны регистрации;

б) лица, подписывающие настоящий Договор от имени Покупателя, являются надлежащим образом уполномоченными;

в) он не находится в процессе какой-либо реорганизации или не предполагает таковую, которая могла бы существенно и неблагоприятно отразиться на его соответствующем финансовом положении или способности Покупателя выполнять обязательства, указанные в настоящем Договоре;

г) он располагает всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Продавцу в отношении правового статуса Покупателя, является полной и достоверной.

10.4 Seller and Participant confirm and ensure Purchaser that at date of signing this Agreement:

a) they are independent legal entity, properly established under the legislation of the Republic of Uzbekistan, and will carry out its activity regarding aircraft according to the current legislation of the Republic of Uzbekistan;

b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized;

c) they are not in process of any reorganization and don't assume the same that may materially adversely affect its relevant

10.4. Продавец и Участник подтверждают и гарантируют Покупателю, что на дату подписания настоящего Договора:

а) они являются независимыми юридическими лицами, надлежащим образом организованными по законодательству Республики Узбекистан, и будут осуществлять свою деятельность в отношении воздушных судов по действующему законодательству Республики Узбекистан;

б) лица, подписывающие настоящий договор от имени Продавца и Участника, являются надлежащим образом уполномоченными;

в) они не находятся в процессе какой-либо реорганизации или не предполагается таковая, которая

AR 0554

financial position or ability of Seller and Participant to perform obligations, set in this Agreement;

d) they have received all permissions of necessary governmental bodies in order to legally and efficiently carry out their business, and information advised to Purchaser regarding legal status of Seller and Participant is full and reliable.

могла бы существенно и неблагоприятно отразиться на их соответствующем финансовом положении или способности Продавца и Участника выполнять обязательства, указанные в настоящем Договоре;

г) они располагают всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Покупателю в отношении правового статуса Продавца и Участника, является полной и достоверной.

10.5 Parties mutually undertake to refrain from any actions that may result in situation when the Parties' Guarantees are not reliable or won't be performed.

10.5. Стороны принимают взаимные обязательства воздерживаться от совершения каких-либо действий, вследствие которых Гарантии Сторон не будут являться истинными или не будут выполнены.

## 11. RESPONSIBILITY OF THE PARTIES FOR BREACH OF OBLIGATION UNDER AGREEMENT

## 11. ОТВЕТСТВЕННОСТЬ СТОРОН ЗА НАРУШЕНИЕ ДОГОВОРНЫХ ОБЯЗАТЕЛЬСТВ

11.1 The Party unreasonably avoid performing its obligations under this Agreement, shall reimburse other Party all losses caused by this fact and documentary confirmed.

11.1. Сторона, необоснованно уклоняющаяся от исполнения своих обязательств по настоящему Договору, должна возместить другой Стороне все возникающие от этого документально подтвержденные убытки.

11.2 If after signing this Agreement any Party can't or doesn't comply with its obligation under this Agreement or if in any time after signing this Agreement any Party has known about any fact or event which shows that any Guarantee, set in this Agreement is incorrect or misleading or any obligation of the Parties was not or won't be observed, then in such cases the Party suffered shall have the right to judicially require invalidation or termination of this Agreement and payment of damages.

11.2 Если после подписания настоящего Договора одна из Сторон не смогла или не соблюдает все свои обязательства по настоящему Договору или, если в любое время после подписания настоящего Договора одной из Сторон становится известно о каком-либо факте или событии, которое показывает, что какая-либо Гарантия, изложенная в настоящем Договоре, является неверной или вводящей в заблуждение или, что какое-либо обязательство Сторон не было или не будет соблюдено, то в любом таком случае потерпевшая Сторона вправе требовать признания недействительным или расторжения настоящего Договора в судебном порядке и возмещения понесенных убытков.

11.3 In the case of late payments of aircraft price by Purchaser and reimbursement of expenses of Participant in accordance with paragraphs 4.3 and 4.6 of this Agreement Purchaser shall pay penalties in amount of 0.4% of outstanding payment per day of delay.

11.3 В случае несвоевременной оплаты Покупателем выкупных платежей и возмещения расходов Участника в соответствии с пунктами 4.3. и 4.5 настоящего Договора, Покупатель уплачивает Участнику пеню в размере 0,4%

AR 0459

| | |
|---|---|
| but no more than 50% of outstanding amount. If Purchaser doesn't make payment of aircraft price and Participant' expenses, including penalties (if any) during three months after date, provided for in paragraphs 4.3 and 6.5, then Seller and Participant shall have the right to terminate this Agreement in established order. | от суммы просроченного платежа за каждый день просрочки, но не более 50% суммы просроченного платежа. При этом если Покупателем в течение трех месяцев после окончания предусмотренного пунктами 4.3. и 6.6. срока не будут оплачены выкупные платежи и расходы Участника, а также пени (в случае возникновения), то Продавец и Участник вправе расторгнуть настоящий Договор в установленном порядке. |
| 11.4 In the case of Agreement termination due to Purchaser's fault the amounts previously paid in aircraft price by Purchaser under this Agreement shall be returned by Participant, provided that Participant shall apply penalty in amount of 15% of aircraft price amounts. Aircraft shall be returned to Participant by Purchaser. | 11.4 В случае расторжения настоящего Договора по вине Покупателя средства, ранее перечисленные Покупателем в счет оплаты выкупных платежей по настоящему Договору, возвращаются Участником. При этом Участник применяет штраф в размере 15% от суммы выкупных платежей. Воздушные суда возвращаются Покупателем Участнику. |
| 11.5 In the case of Agreement termination expense of Participant mentioned in paragraph 4.6 of this Agreement are not to be returned. | 11.5 В случае расторжения настоящего Договора расходы Участника, указанные в пункте 4.5. настоящего Договора, возврату не подлежат. |
| 11.6 Payment of penalty for non-fulfilment or improper fulfilment of provisions of this Agreement by the Parties shall not release Party in fault from performing obligations undertaken under this Agreement. | 11.6 Уплата неустойки за неисполнение или ненадлежащее исполнение Сторонами условий настоящего Договора не освобождает виновную Сторону от исполнения принятых на себя по Договору обязательств. |
| **12. APPLICABLE LAW, DISPUTE RESOLUTION** | **12 ПРИМЕНИМОЕ ПРАВО. РАЗРЕШЕНИЕ СПОРОВ** |
| 12.1 The laws of the Republic of Uzbekistan is the applicable law regarding possible disputes under this Agreement. | 12.1. Применимым правом в отношении возможных споров по настоящему договору Стороны признают право Республики Узбекистан. |
| 12.2 Any disputes, controversy or claims arisen out of or related to this Agreement or breach, termination or invalidation of this Agreement in the case of impossibility to reach mutual arrangement shall be considered in the courts of the Republic of Uzbekistan in accordance with the legislation of the Republic of Uzbekistan. Parties have undertaken to assume all necessary measures for resolving possible discrepancies through negotiations, submitting written claims before applying to court of justice. | 12.2. Любые споры, разногласия или претензии, возникающие или относящиеся к настоящему Договору, либо нарушение, прекращение действия или недействительность настоящего Договора, в случае невозможности достижения взаимной договоренности, рассматриваются в судах Республики Узбекистан в соответствии с законодательством Республики Узбекистан. Стороны берут на себя обязательства принять все необходимые меры для рассмотрения возможных разногласий путем переговоров, предъявления письменных претензий перед обращением в судебные органы. |
| 12.3 Existence of dispute, controversies or claims, as well as impending legal proceedings shall not release any Party from fulfilment its relevant obligations under this Agreement by | 12.3 Наличие спора, разногласий или претензий, равно как и предстоящее рассмотрение дела в суде не освобождает ни одну из Сторон от выполнения ею |

| it. | соответствующих обязательств в соответствии с настоящим Договором. |
|---|---|
| 12.4 Claiming order of pre-trial consideration of dispute is mandatory. Period of reply on claim received is equal 30 calendar days. | 12.4 Претензионный порядок досудебного рассмотрения спора является обязательным. Срок ответа на полученную претензию – 30 календарных дней. |
| 12.5 On matters arisen at performing, amendment or termination of this Agreement and not provided for in this Agreement the Parties shall be guided by current legislation of the Republic of Uzbekistan. | 12.5 В вопросах, возникающих при исполнении, изменении либо расторжении настоящего Договора и непредусмотренных настоящим Договором, Стороны руководствуются действующим законодательством Республики Узбекистан. |
| **13. FORCE MAJEURE** | **13 ФОРС-МАЖОР** |
| 13.1 Neither Party bears responsibility before other ones for non-fulfilment of obligations due to events of force majeure, caused by circumstances arisen without Parties' will and desire, which might not be foreseen or avoid, including declared or actual war, civil strife, epidemic, embargo, earthquake, flood, fires and other Acts of God. | 13.1 Ни одна из Сторон не несет ответственности перед другой Стороной за невыполнение обязательств вследствие событий непреодолимой силы, обусловленных обстоятельствами, возникшими помимо воли и желания Сторон, которые нельзя предвидеть или избежать, включая объявленную или фактическую войну, гражданские волнения, эпидемии, блокаду, эмбарго, землетрясения, наводнения, пожары и другие стихийные бедствия. |
| 13.2 Certificate issued by relevant authorized body of state of the Party is sufficient confirmation of existence and duration of event of force majeure. | 13.2. Свидетельство, выданное соответствующим и уполномоченным органом государства Стороны Договора, является достаточным подтверждением наличия и продолжительности действия события непреодолимой силы. |
| 13.3 Party that doesn't perform its obligations shall during thirty (30) days give the notice about restriction and its influence on obligations fulfilment under Agreement to other Parties. | 13.3 Сторона, которая не исполняет своего обязательства, должна в течение 30 (тридцати) дать другой Стороне письменное извещение дней о препятствии и его влиянии на исполнение обязательств по Договору. |
| 13.4 If force majeure circumstances exist during three (3) successive months and don't show cessation signs, then this Agreement may be terminated by the Parties through giving the notice to other Parties. | 13.4 Если обстоятельства непреодолимой силы действуют на протяжении 3 (трех) последовательных месяцев и не обнаруживают признаков прекращения, настоящий Договор может быть расторгнут Сторонами путем направления уведомления другой Стороне. |

| 14 LEGAL ADDRESSES, REQUISITES AND SIGNATURES OF THE PARTIES | 14. ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН |
|---|---|
| **SELLER** | **ПРОДАВЕЦ** |
| State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition | Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции Республика Узбекистан |
| 55, Uzbekistan avenue, Tashkent. 100003, Republic of Uzbekistan, | 100003, г. Ташкент, пр. Узбекистанский, 55 |
| Currency account ▮▮▮▮▮89002 | Валютный счет: ▮▮▮▮▮9002 |
| RKC Main Tashkent city branch of the Central bank of the Republic of Uzbekistan | РКЦ Главное Ташкентское городское управление Центрального Банка РУз, код 00014, |
| Bank code 00014, Individual Number of tax Payer ▮ | ИНН ▮▮▮▮▮ |
| **First Deputy Chairman** | **Первый заместитель председателя** |
| S.X.Gafarov | Гафаров С.Х |

**PURCHASER**
"RUSAVIAINVEST" Ltd.

25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia,
Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75
rusaviainvest@mail.ru
CORRESPONDENT BANK:
JPMORGAN CHASE BANK N.A,
NEW YORK, NY, USA
SWIFT: CHASUS33XXX
ACCOUNT WITH CORRESPONDENT BANK:
▮▮▮0991
BENEFICIARY'S BANK: ABSOLUT BANK,
MOSCOW, RUSSIA SWIFT: ABSLRUMM
BENEFICIARY'S                ACCOUNT.:
▮▮▮3843

**Director General**

A.K.Vorobyev
Company seal

**ПОКУПАТЕЛЬ**
ООО «РУСАВИАИНВЕСТ»

141100 Россия, г. Москва, Щелково,
1-й Советский переулок, 25,
Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75
rusaviainvest@mail.ru
CORRESPONDENT BANK:
JPMORGAN CHASE BANK N.A,
NEW YORK, NY, USA
SWIFT: CHASUS33XXX
ACCOUNT WITH CORRESPONDENT BANK:
▮▮▮0991
BENEFICIARY'S BANK: ABSOLUT BANK,
MOSCOW, RUSSIA SWIFT: ABSLRUMM
BENEFICIARY'S                ACCOUNT.:
▮▮▮3843

**Генеральный директор**

Воробьёв А.К.
м.п.

| PARTICIPANT | УЧАСТНИК |
|---|---|
| **National air company of the Republic of Uzbekistan "Uzbekistan Airways"** | **НАК «Узбекистон хаво йуллари»** |
| 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan<br>Individual Number of tax Payer ▮▮▮<br>OKPO ▮▮▮<br>OKONX ▮▮▮<br>Currency account: ▮▮▮7030 | Республика Узбекистан, 100060<br>г. Ташкент пр. Амира Темура 41.<br>ИНН ▮▮▮<br>ОКРО ▮▮▮<br>ОКОНХ ▮▮▮<br>Валютный счет: ▮▮▮7030 |
| Central operation branch of the National Bank for Foreign Economic Activity of the Republic of Uzbekistan<br>Bank code: 00882<br>SWIFT : NBFAUZ2X | Центральный операционный отдел Национального банка ВЭД Республики Узбекистан<br>Код банка: 00882<br>SWIFT: NBFAUZ2X |

**Director General**

V. N. Tyan

Company seal

**Генеральный директор**

Тян В.Н.

м.п.

AR 0559



## Федеральная налоговая служба

# СВИДЕТЕЛЬСТВО

### О ПОСТАНОВКЕ НА УЧЕТ РОССИЙСКОЙ ОРГАНИЗАЦИИ В НАЛОГОВОМ ОРГАНЕ ПО МЕСТУ НАХОЖДЕНИЯ НА ТЕРРИТОРИИ РОССИЙСКОЙ ФЕДЕРАЦИИ

Настоящее свидетельство подтверждает, что российская организация
**Общество с ограниченной ответственностью "РУСАВИАИНВЕСТ"**

*(полное наименование в соответствии с учредительными документами)*

ОГРН `1 0 8 7 7 4 6 2 0 2 2 7 9`

поставлена на учет в соответствии с положениями
Налогового кодекса Российской Федерации  30 июня 2010 г.

*(число, месяц, год)*

в налоговом органе по месту нахождения  **Межрайонной инспекцией Федеральной налоговой службы № 16 по Московской области**

`5 0 5 0`

*(наименование налогового органа и его код)*

и ей присвоен

ИНН/КПП  `7 7 2 0 6 0 7 3 9 1` / `5 0 5 0 0 1 0 0 1`

Свидетельство подлежит замене в случае изменения приведенных в нем сведений.

Заместитель начальника Межрайонной
ИФНС России №16 по МО

**Кузнецова Любовь Витальевна**

М.П.

**серия  50  №010713961**

# B.7

Application Supplement, including attachments submitted by Creizman LLC to OFAC on behalf of Rusaviainvest, dated 6/6/2017

AR 0561

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

585 FIFTH AVENUE   7TH FLOOR
NEW YORK,  NEW YORK 10017
TEL: (212) 972-0200
FAX: (646) 200-5022
ECREIZ@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Email, Facsimile,
and Federal Express*

June 6, 2017

Office of Foreign Assets Control
Licensing Division
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Re:   **License Application to Unblock Funds**
      **Case Numbers: SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
      **Reference Numbers: ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear OFAC Licensing Officer:

This law firm has been retained to represent Rusaviainvest, OOO (the "Company" or "Rusaviainvest") in connection with the Company's above-referenced applications for licenses to unblock funds in the total amount of $1,400,000, wired by the Company to purchase a used aircraft from Uzbekistan Airways, Uzbekistan's national air carrier. A copy of the contract to purchase the aircraft (the "Contract") and a copy of the invoice for purchase (the "Invoice") are annexed hereto as Exhibits A and B. I am writing to supplement the information provided by the Company in its applications to unblock the funds, dated April 24, 2017, May 5, 2017, and May 19, 2017, which are annexed hereto as Exhibits C, D, and E. Under the terms of the Contract, the Company is required to pay liquidated damages for any delay in payment. Such damages are accruing. *See* Exhibit A at ¶¶11.1-11.6.

## Background of the Company and the Transaction

Rusaviainvest engages in the business of wholesale trading of transportation vehicles, including airplane spare parts and engines, and also contracts for the maintenance and repair of such vehicles, including aircraft. The Company's office is located in Moscow, Russia with the address: 25, 1st Soviet Side Street, Schelkovo, Moscow, 14110, Russia. The Company is 100% owned by Andrei Vorobev, who is also its CEO and only officer. (Mr. Vorobev's Russian Federation passport is annexed hereto as Exhibit F). The purpose of the transaction was for the Company to sell the parts of the aircraft.

2017 JUN 13  AM 9: 53

The Company has been in business since 2008, and has eight employees. The Company does not deal in weapons, arms, or military equipment and does not do business with any Country's military or any military organization. Prior to above-referenced matter, Rusaviainvest has never had any of its funds relating to any of its transactions blocked by OFAC.

The Company should not be confused with a company with a similar name, "Rusavia, Ltd." whose website is en.rusavia.com, which, according to the website, deals in a "Russian-American project" titled "Warplanes to Syria." In contrast, Rusaviainvest, Ltd. does not deal with military equipment or weaponry.

### The Wired Funds and Blocking of those Funds

Pursuant to the Contract and Invoice, on March 30, 2017, the Company sent a wire of $200,000 and on March 31, 2017, the Company sent a wire of $1,000,000, through its bank, Absolut Bank, with the intended recipient bank as JPMorgan Chase Bank, N.A. (*See* Exhibits G and H). Absolut Bank subsequently informed the Company that the transactions were "BLOCKED AS PER OFAC." (*See id.*). Absolut Bank later informed the Company that "THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL TERRORISM SANCTIONS REGULATIONS." (*See* Exhibits I and J).

Pursuant to the same Contract and Invoice, on April 10, 2017, the Company sent a wire of $200,000 through its bank, Absolut Bank, with the intermediary bank as JPMorgan Chase Bank, NA and with the receiving institution as Deutsche Bank Trust Company Americas. (*See* Exhibit I). Absolut Bank subsequently informed the Company that the transaction was not completed "DUE TO PENDING FURTHER REVIEW BY COMPLIANCE UNIT OR DEUTSCHE BANK COMPLIANCE POLICY. . . . WE WILL DEBIT YOUR ACCOUNT AND PLACE FUNDS INTO A SUSPENSE ACCOUNT AT DEUTSCHE BANK TRUST COMPANY." (*See* Exhibit K). Absolut Bank later informed the Company that "THE FUNDS HAVE BEEN PLACED INTO A BLOCKED ACCOUNT AT DEUTSCHE BANK TRUST COMPANY. . . . WE ARE PROHIBITED FROM RETURNING BLOCKED FUNDS UNTIL SUCH TIME AS OFAC ISSUES A LICENSE PERMITTING RELEASE OF THESE FUNDS." (*See* Exhibit L).

Additional records evidencing the wire transfers are annexed hereto as Exhibits M, N, and O.

### The Funds Should be Unblocked

The case numbers assigned to the blocking of the funds suggest that the compliance departments of JPMorgan Chase and Deutsche Bank believed that the parties to the transaction or the purposes of the transaction in some way violated the Russian/Ukranian Sanctions Program or the Global Terrorism Sanctions Program. We respectfully submit that the funds were blocked in error.

*First*, as stated above, the purpose of the transaction was to obtain the used aircraft from the Uzbekistan national air carrier to sell its spare parts for commercial purposes. The Company

does not trade with any military agency or organization and has absolutely nothing to do with any terrorist organization.

*Second*, the owner of the Company is not an SDN. He is not affiliated with any SDNs, nor does he do business with any SDNs. None of the Company's employees is an SDN. Furthermore, to the extent there is any confusion, as stated above, the Company has nothing to do with Rusavia, Ltd.

### Conclusion

Because the Company has done nothing to violate any OFAC sanctions program, and because it is now facing substantial financial hardship as a result of the blocking of those funds, we respectfully request that the funds be unblocked and delivered to Uzbekistan's national air carrier, Uzbekistan Airways. In the alternative, if the transaction is being blocked due to Uzbekistan Airways, we respectfully request the funds be returned to the Company.

I would appreciate communication from your office in order to address any questions or concerns, or to provide additional documentation, if desired.

If you have questions, please feel free to contact me.

Very truly yours,

Eric Creizman

Enclosures

# EXHIBITS

AR 0566

A

| AGREEMENT № 2 ON SALE-PURCHASE OF AIRCRAFT | ДОГОВОР № 2 КУПЛИ-ПРОДАЖИ ВОЗДУШНОГО СУДНА |
|---|---|
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city     *27* *12* 2016 | Ташкент     *27* *12* 2016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter – "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушного судна (далее - «Договор») заключен в г. Ташкенте между: |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION (hereinafter – "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company "RUSAVIAINVEST" Ltd. (hereinafter – "Purchaser"), having its legal address at 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией ООО «РУСАВИАИНВЕСТ» (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" (hereinafter – "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «O'ZBEKISTON HAVO YO'LLARI» (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тяна В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |

| HEREBY IT IS AGREED the following: | НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ о следующем: |
|---|---|
| **1. DEFINITIONS AND THEIR INTERPRETATION** | **1. ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
| **Act of assessment of the technical condition of aircraft** means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | **Акт технического осмотра воздушного судна** - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путем его инспектирования и подтверждения подписями представителей Участника и Покупателя. |
| **Act of acceptance-transfer of aircraft** (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment No. 2) | **Акт приема-передачи воздушного судна** (далее по тексту Договора – «Акт приема-передачи») - документ, подтверждающий факт приема и передачи воздушного судна, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложение № 2) |
| **Aircraft** means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No. 3 | **Воздушное судно** – описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по воздушному судну, указанному в приложении № 3 |
| **Aircraft documentation** means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | **Документация по воздушному судну** - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| **Business Day** means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | **Рабочий день** – любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| **Delivery** means transfer of title on aircraft from Participant to Purchaser under this Agreement. | **Поставка** - передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| **Aircraft condition at delivery "as is, where is"** means technical condition of aircraft, at the moment of its Delivery. | **Состояние воздушного судна при поставке «как есть, где есть»** - техническое состояние воздушного судна на момент Поставки |
| **Delivery date** means the day, which is Business Day and on which the aircraft delivery occurs. | **Дата поставки** - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |

| | |
|---|---|
| Partial aircraft loss means partial damages of aircraft which are not the causes of total aircraft loss. | Частичная потеря воздушного судна - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |
| Sale Documents include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже — включают в себя настоящий Договор, Акт приёма-передачи воздушного судна, и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора. |

| 2. AGREEMENT SUBJECT | 2. ПРЕДМЕТ ДОГОВОРА |
|---|---|
| 2.1 According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Aircompany "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft A-310 MSN 706 to the possession of Purchaser under Attachments No. 1, being the integral part of this Agreement, in condition "as is, where is", Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1 В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90), Распоряжением Президента Республики Узбекистан от 14.07.2015г № P-4502, Продавец и Участник передают в собственность Покупателю воздушное судно A-310 заводской № 706 согласно Приложению №1, являющемуся неотъемлемой частью настоящего Договора, в состоянии «как есть, где есть», а Покупатель принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2 At the execution of this Agreement the aircraft is the property of the Republic of Uzbekistan, is not in any pledge, and there is no any encumbrance on it. | 2.2 Воздушное судно на момент заключения настоящего Договора является собственностью Республики Узбекистан, не находится в залоге и на него отсутствуют какие-либо обременения. |
| 2.3 Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3 Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушное судно, свободное и чистое от каких-либо прав третьих лиц. |
| 2.4 Aircraft shall be passed under act of acceptance-transfer, executed in accordance with the Attachment No. 2, in completeness according to the accompanying technical documentation. | 2.4. Воздушное судно передаётся по акту приема-передачи, оформленным в соответствии с Приложением № 2, в комплектации согласно сопроводительной технической документации. |
| 2.5 Title on aircraft shall be transferred to Purchaser upon receiving the money on currency account of Participant and signing the Act of acceptance-transfer for aircraft by it under paragraph 4.3 of this Agreement. | 2.5. Право собственности на воздушное судно переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пункту 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments to it, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft.<br><br>Attachments to this Agreement are its integral part and have equal legal effect with it. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора. Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательств Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

| | |
|---|---|
| 3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail. | 3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу. |
| 3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement. | 3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора. |
| 3.8 Participant's obligation to deliver aircraft shall be conditional on satisfaction its preliminary conditions with Purchaser. | 3.8 Обязательство Участника поставить воздушное судно обусловлено выполнением его предварительной договоренности с Покупателем. |
| 3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant. | 3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником. |
| 3.10 Purchaser's obligation to accept aircraft delivery in condition "as is, where is" shall be conditional on satisfaction its preliminary conditions with Seller and Participant. | 3.10 Обязательство Покупателя принять поставку воздушного судна в состоянии «как есть, где есть» обусловлено выполнением его предварительной договоренности с Продавцом и Участником. |
| 3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser. | 3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем. |
| **4. PRICE AND PAYMENT ORDER** | **4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ** |
| 4.1 Price of aircraft in total is indicated in Attachments No. 1 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement. | 4.1 Выкупная цена за воздушное судно в целом указана в Приложении №1 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора. |
| 4.2 Price of aircraft is the following: A-310 MSN 706 – 2,000,000.00 US dollars; | 4.2 Выкупная цена воздушного судна составляет: А-310 заводской № 706 - 2 000 000 долларов США; |

| | |
|---|---|
| 4.3 In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircraft and signs the acts of technical inspection of aircraft. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways". | 4.3 В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушного судна и подписывает Акт технического осмотра воздушного судна, и в течение 10 рабочих дней, с даты подписания данного Акта, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари». |
| 4.4 Net amount of payment for aircraft shall be transferred to the currency account of the Participant in US Dollars. | 4.4 Чистая сумма выкупного платежа за воздушное судно должна быть переведена в Долларах США на банковский счет Участника. |
| 4.5 Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 3655 US dollars as well as amount for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment. | 4.5. Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 3 462,07 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты. |
| 4.6 Date of money receiving on the currency account of the Participant shall be considered as date of payment. | 4.6. Датой оплаты считается дата поступления денежных средств на валютный счет Участника. |
| **5. SELLER'S OBLIGATIONS** | **5 ОБЯЗАТЕЛЬСТВА ПРОДАВЦА** |
| 5.1 Seller undertakes to make registration of this Agreement. | 5.1 Продавец обязуется произвести регистрацию настоящего Договора. |
| **6. PURCHASER'S RIGHTS AND OBLIGATIONS** | **6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ** |
| 6.1 Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft before inspection of its technical condition and before date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery. | 6.1 Покупатель или его представители имеют право произвести "предварительный осмотр" воздушного судна до проведения инспекции его технического состояния и до даты Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по хранению воздушного судна на момент Поставки. |
| 6.2 After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of aircraft on or before the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the | 6.2 После подписания настоящего договора, Покупатель за свой счет имеет право произвести инспекцию технического состояния воздушного судна на момент или до даты Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция |

AR 0573

| | |
|---|---|
| date and in such place that shall be agreed by the Participant and Purchaser. | будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель. |
| Inspection shall include: | Инспекция должна включать: |
| 1. physical inspection of technical documentation of aircraft; | 1. физическую инспекцию технической документации на воздушное судно; |
| 2. physical inspection of aircraft: | 2. физическую инспекцию воздушного судна: |
| (a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine as well as full; | (a) выполнение полной видео-инспекции бароскопом (A) компрессоров низкого и высокого давления и (B) зоны турбины двигателей; |
| (b) engines starting in accordance with relevant maintenance manual; | (b) выполнение запусков двигателей в соответствии с применимым руководством по техническому обслуживанию; |
| (c) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable; | (c) проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо; |
| 6.3 If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement. | 6.3 При неудовлетворительных результатах инспекции, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор. |
| 6.4 Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant. | 6.4 Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника. |
| 6.5 Purchaser shall make payment in amount of aircraft price as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement. | 6.5 Покупатель производит оплату в размере выкупного платежа за воздушное судно, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3 и 11.3 настоящего Договора. |

6.6 Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days from the moment of invoice receiving.

6.6 Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5. настоящего Договора.

6.7 Purchaser shall make acceptance of aircraft and its technical documentation under this Agreement. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser.

6.7 Покупатель, на условиях настоящего Договора осуществляет приемку воздушного судна и его технической документации. Результаты приема-передачи воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем.

6.8 Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser.

6.8 Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного суда с момента перехода воздушного судна в собственность Покупателя.

6.9 Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country.

6.9 Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя.

## 7. RIGHTS AND OBLIGATIONS OF PARTICIPANT

## 7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА

7.1 Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft.

7.1 Участник совместно с Покупателем до момента подписания настоящего Договора произведёт осмотр воздушного судна

7.2 Participant shall agree with Purchaser the date and time of inspection of technical condition of aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days.

7.2 Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния воздушного судна, а также окажет содействие в её проведении в течение 10 последующих дней.

7.3 Participant shall agree with Purchaser the date of Delivery of aircraft and transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation.

7.3 Участник согласует с Покупателем дату Поставки воздушного судна и передаст Покупателю воздушное судно с оформлением Акта приема-передачи на воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушного судна в стране ввоза.

7.4 Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection

7.4 Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в

AR 0575

| | |
|---|---|
| of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate this Agreement. | ходе технической инспекции воздушного судна и извещения Покупателя о принятом решении Участника: (а) устранить выявленные недостатки за счет Участника; или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5 Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5 Участник устранит недостатки, выявленные Покупателем в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6 Participant shall provide performing of all formalities (including customs procedures), set for aircraft export from the country of Seller. | 7.6 Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7 Participant shall inform Purchaser in writing during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7 Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8 Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8 Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1 Transfer of aircraft shall be performed by Participant on the terms "FCA – International airport Tashkent", Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1. Передача воздушного судна будет осуществлена Участником на условиях «FCA - Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2 Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2 Датой передачи воздушного суда считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3 Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser | 8.3 Акт приёма-передачи воздушного судна подписывается Участником и |

AR 0576

| | |
|---|---|
| **AGREEMENT № 2**<br>ON SALE-PURCHASE<br>OF AIRCRAFT | **ДОГОВОР № 2**<br>КУПЛИ-ПРОДАЖИ<br>ВОЗДУШНОГО СУДНА |
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE<br>OF THE REPUBLIC OF UZBEKISTAN<br>FOR PRIVATIZATION,<br>DEMONOPOLIZATION AND<br>DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ<br>РЕСПУБЛИКИ УЗБЕКИСТАН ПО<br>ПРИВАТИЗАЦИИ,<br>ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ<br>КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY<br>OF THE REPUBLIC OF UZBEKISTAN<br>"UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ<br>РЕСПУБЛИКИ УЗБЕКИСТАН<br>«УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city            27 /02016 | Ташкент            27 /02016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter – "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушного судна (далее - «Договор») заключен в г. Ташкенте между: |
| **STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION** (hereinafter – "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | **ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ** (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company **"RUSAVIAINVEST" Ltd.** (hereinafter – "Purchaser"), having its legal address at 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией **ООО «РУСАВИАИНВЕСТ»** (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the **NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS"** (hereinafter – "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием **НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «O'ZBEKISTON HAVO YO'LLARI»** (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тяна В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |

| HEREBY IT IS AGREED the following: | НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ о следующем: |
|---|---|
| **1. DEFINITIONS AND THEIR INTERPRETATION** | **1. ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
| **Act of assessment of the technical condition of aircraft** means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | **Акт технического осмотра воздушного судна** - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путем его инспектирования и подтверждения подписями представителей Участника и Покупателя. |
| **Act of acceptance-transfer of aircraft** (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment No. 2) | **Акт приема-передачи воздушного судна** (далее по тексту Договора – «Акт приема-передачи») - документ, подтверждающий факт приема и передачи воздушного судна, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложение № 2) |
| **Aircraft** means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No. 3 | **Воздушное судно** — описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по воздушному судну, указанному в приложении № 3 |
| **Aircraft documentation** means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | **Документация по воздушному судну** - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| **Business Day** means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | **Рабочий день** — любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| **Delivery** means transfer of title on aircraft from Participant to Purchaser under this Agreement. | **Поставка** - передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| **Aircraft condition at delivery "as is, where is"** means technical condition of aircraft, at the moment of its Delivery. | **Состояние воздушного судна при поставке «как есть, где есть»** - техническое состояние воздушного судна на момент Поставки |
| **Delivery date** means the day, which is Business Day and on which the aircraft delivery occurs. | **Дата поставки** - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |

| | |
|---|---|
| Partial aircraft loss means partial damages of aircraft which are not the causes of total aircraft loss. | Частичная потеря воздушного судна - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |
| Sale Documents include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже – включают в себя настоящий Договор, Акт приёма-передачи воздушного судна и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора. |

| | |
|---|---|
| **2. AGREEMENT SUBJECT** | **2. ПРЕДМЕТ ДОГОВОРА** |
| 2.1 According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Aircompany "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft A-310 MSN 706 to the possession of Purchaser under Attachments No. 1, being the integral part of this Agreement, in condition "as is, where is", Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1 В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90), Распоряжением Президента Республики Узбекистан от 14.07.2015г № Р-4502, Продавец и Участник передают в собственность Покупателю воздушное судно А-310 заводской № 706 согласно Приложению №1, являющемуся неотъемлемой частью настоящего Договора, в состоянии «как есть, где есть», а Покупатель принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2 At the execution of this Agreement the aircraft is the property of the Republic of Uzbekistan, is not in any pledge, and there is no any encumbrance on it. | 2.2 Воздушное судно на момент заключения настоящего Договора является собственностью Республики Узбекистан, не находится в залоге и на него отсутствуют какие-либо обременения. |
| 2.3 Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3 Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушное судно, свободное и чистое от каких-либо прав третьих лиц. |
| 2.4 Aircraft shall be passed under act of acceptance-transfer, executed in accordance with the Attachment No. 2, in completeness according to the accompanying technical documentation. | 2.4. Воздушное судно передаётся по акту приема-передачи, оформленным в соответствии с Приложением № 2, в комплектации согласно сопроводительной технической документации. |
| 2.5 Title on aircraft shall be transferred to Purchaser upon receiving the money on currency account of Participant and signing the Act of acceptance-transfer for aircraft by it under paragraph 4.3 of this Agreement. | 2.5. Право собственности на воздушное судно переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пункту 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

AR 0579

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments to it, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft.<br><br>Attachments to this Agreement are its integral part and have equal legal effect with it. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора.<br>Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательств Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

AR 0580

| | |
|---|---|
| 3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail. | 3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу. |
| 3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement. | 3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора. |
| 3.8 Participant's obligation to deliver aircraft shall be conditional on satisfaction its preliminary conditions with Purchaser. | 3.8 Обязательство Участника поставить воздушное судно обусловлено выполнением его предварительной договоренности с Покупателем. |
| 3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant. | 3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником. |
| 3.10 Purchaser's obligation to accept aircraft delivery in condition "as is, where is" shall be conditional on satisfaction its preliminary conditions with Seller and Participant. | 3.10 Обязательство Покупателя принять поставку воздушного судна в состоянии «как есть, где есть» обусловлено выполнением его предварительной договоренности с Продавцом и Участником. |
| 3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser. | 3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем. |
| **4. PRICE AND PAYMENT ORDER** | **4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ** |
| 4.1 Price of aircraft in total is indicated in Attachments No. 1 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement. | 4.1 Выкупная цена за воздушное судно в целом указана в Приложении №1 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора. |
| 4.2 Price of aircraft is the following: A-310 MSN 706 – 2,000,000.00 US dollars; | 4.2 Выкупная цена воздушного судна составляет: А-310 заводской № 706 - 2 000 000 долларов США; |

4.3 In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircraft and signs the acts of technical inspection of aircraft. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways".

4.3 В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушного судна и подписывает Акт технического осмотра воздушного судна, и в течение 10 рабочих дней, с даты подписания данного Акта, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари».

4.4 Net amount of payment for aircraft shall be transferred to the currency account of the Participant in US Dollars.

4.4 Чистая сумма выкупного платежа за воздушное судно должна быть переведена в Долларах США на банковский счет Участника.

4.5 Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 3655 US dollars as well as amount for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment.

4.5. Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 3 462,07 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты.

4.6 Date of money receiving on the currency account of the Participant shall be considered as date of payment.

4.6. Датой оплаты считается дата поступления денежных средств на валютный счет Участника.

**5. SELLER'S OBLIGATIONS**

**5 ОБЯЗАТЕЛЬСТВА ПРОДАВЦА**

5.1 Seller undertakes to make registration of this Agreement.

5.1 Продавец обязуется произвести регистрацию настоящего Договора.

**6. PURCHASER'S RIGHTS AND OBLIGATIONS**

**6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ**

6.1 Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft before inspection of its technical condition and before date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery.

6.1 Покупатель или его представители имеют право произвести "предварительный осмотр" воздушного судна до проведения инспекции его технического состояния и до даты Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по хранению воздушного судна на момент Поставки.

6.2 After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of aircraft on or before the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the

6.2 После подписания настоящего договора, Покупатель за свой счет имеет право произвести инспекцию технического состояния воздушного судна на момент или до даты Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция

AR 0582

| | |
|---|---|
| date and in such place that shall be agreed by the Participant and Purchaser. | будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель. |
| Inspection shall include: | Инспекция должна включать: |
| 1.  physical inspection of technical documentation of aircraft; | 1.  физическую инспекцию технической документации на воздушное судно; |
| 2.  physical inspection of aircraft: | 2.  физическую инспекцию воздушного судна: |
| (a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine as well as full; | (a)  выполнение полной видео-инспекции бароскопом (A) компрессоров низкого и высокого давления и (В) зоны турбины двигателей; |
| (b) engines starting in accordance with relevant maintenance manual; | (b)  выполнение запусков двигателей в соответствии с применимым руководством по техническому обслуживанию; |
| (c) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable; | (c)  проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо; |
| 6.3    If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement. | 6.3    При неудовлетворительных результатах инспекции, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор. |
| 6.4    Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant. | 6.4    Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника. |
| 6.5    Purchaser shall make payment in amount of aircraft price as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement. | 6.5    Покупатель производит оплату в размере выкупного платежа за воздушное судно, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3 и 11.3 настоящего Договора. |

| | |
|---|---|
| 6.6 Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days from the moment of invoice receiving. | 6.6 Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5. настоящего Договора. |
| 6.7 Purchaser shall make acceptance of aircraft and its technical documentation under this Agreement. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser. | 6.7 Покупатель, на условиях настоящего Договора осуществляет приемку воздушного судна и его технической документации. Результаты приема-передачи воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем. |
| 6.8 Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser. | 6.8 Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного судна с момента перехода воздушного судна в собственность Покупателя. |
| 6.9 Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country. | 6.9 Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя. |
| **7. RIGHTS AND OBLIGATIONS OF PARTICIPANT** | **7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА** |
| 7.1 Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft. | 7.1 Участник совместно с Покупателем до момента подписания настоящего Договора произведёт осмотр воздушного судна |
| 7.2 Participant shall agree with Purchaser the date and time of inspection of technical condition of aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days. | 7.2 Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния воздушного судна, а также окажет содействие в её проведении в течение 10 последующих дней. |
| 7.3 Participant shall agree with Purchaser the date of Delivery of aircraft and transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation. | 7.3 Участник согласует с Покупателем дату Поставки воздушного судна и передаст Покупателю воздушное судно с оформлением Акта приема-передачи на воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушного судна в стране ввоза. |
| 7.4 Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection | 7.4 Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в |

| | |
|---|---|
| of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate this Agreement. | ходе технической инспекции воздушного судна и извещения Покупателя о принятом решении Участника: (a) устранить выявленные недостатки за счет Участника; или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5 Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5 Участник устранит недостатки, выявленные Покупателем в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6 Participant shall provide performing of all formalities (including customs procedures), set for aircraft export from the country of Seller. | 7.6 Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7 Participant shall inform Purchaser in writing during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7 Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8 Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8 Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1 Transfer of aircraft shall be performed by Participant on the terms "FCA – International airport Tashkent", Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1. Передача воздушного судна будет осуществлена Участником на условиях «FCA - Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2 Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2 Датой передачи воздушного суда считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3 Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser | 8.3 Акт приёма-передачи воздушного судна подписывается Участником и |

AR 0585

| after technical inspection of aircraft and fixing the found discrepancies by Participant. | Покупателем после проведения его технического осмотра и устранения Участником выявленных несоответствий. |
|---|---|
| 8.4 Fixing the discrepancies found during technical inspection of aircraft shall be performed by Participant during twenty (20) calendar days. | 8.4 Устранение недостатков, выявленных в ходе технической инспекции воздушного судна, будет осуществлено Участником в течение '20 (двадцати) календарных дней. |
| 8.5 Purchaser's representative shall have originals of power of attorney (in three exemplars) for aircraft obtaining and signing the Act of acceptance-transfer. | 8.5 Представитель Покупателя должен иметь оригиналы доверенности в трех экземплярах на право получения воздушного суда и подписания Акта приема-передачи. |
| 8.6 Risk of accidental loss or accidental damage of aircraft shall pass from Participant to Purchaser upon transferring the aircraft to the possession of Purchaser. | 8.6 Риск случайной утраты или случайного повреждения воздушного судна переходит от Участника к Покупателю с момента перехода воздушного судна в собственность Покупателя. |
| 8.7 In the place of acceptance-transfer of aircraft Purchaser on its own account shall make decoding of necessary equipment and remove registration and state marks in accordance with Aviation rules of the Republic of Uzbekistan unless otherwise agreed by the Parties. | 8.7 В пункте приема-передачи воздушного суда Покупатель за свой счет производит раскодировку необходимого оборудования и удаляет регистрационные, государственные опознавательные знаки и символики в соответствии с Авиационными правилами Республики Узбекистан, если иное не согласовано Сторонами. |
| **9. TECHNICAL DOCUMENTATION** | **9 ТЕХНИЧЕСКАЯ ДОКУМЕНТАЦИЯ** |
| 9.1 Technical documentation (logbooks, passports etc.) for aircraft, power unit, aggregates and componentry as well as additional equipment shall be properly executed and passed by Participant to Purchaser in whole volume. | 9.1 Техническая документация (формуляры, паспорта и т.д.) на воздушное судно, силовые установки, агрегаты и комплектующие изделия, а также дополнительное оборудование должна быть оформлена соответствующим образом и передана Участником Покупателю в полном объёме. |
| 9.2 Technical documentation shall contain all exploitation records, executed in established order, total operating time for aircraft, engines, units and aggregates as well as signatures and seals of operating enterprises. | 9.2 Техническая документация должна содержать все эксплуатационные записи, оформленные в установленном порядке, итоговые наработки воздушного судна, двигателей, узлов и агрегатов, а также подписи и печати эксплуатационных предприятий. |
| 9.3 Passing the documentation shall be recorded in the Act of acceptance-transfer. | 9.3 Передача документации отражается в Акте приема-передачи. |
| **10 PARTIES' GUARANTEES** | **10 ГАРАНТИИ СТОРОН** |
| 10.1 Each Party has all rights and authorities and has undertaken all necessary actions .in | 10.1 Каждая из Сторон располагает всеми правами и полномочиями и предприняла |

| | |
|---|---|
| accordance with its articles of association within the legislation in force for execution and performing this Agreement and for successful fulfillment of other actions provided for by this Agreement. | все необходимые действия в соответствии со своими учредительными документами в рамках действующего законодательства для выполнения и оформления настоящего Договора, а также для успешного выполнения иных действий, предусмотренных настоящим Договором. |
| 10.2   This Agreement is the legally executed instrument, valid and binding for fulfillment for each Parties and has legal force for each Parties in accordance with its provisions. | 10.2   Настоящий Договор является юридически оформленным документом, действующим и обязательным к выполнению для каждой из Сторон и имеет юридическую силу в отношении каждой из Сторон в соответствии с его положениями. |
| 10.3   Purchaser confirms and ensures Seller and Participant that at date of signing this Agreement: | 10.3 Покупатель подтверждает и гарантирует Продавцу и Участнику, что на дату подписания настоящего Договора: |
| a) it is independent legal entity, properly established under the legislation of Russian Federation, and will carry out its activity regarding purchased aircraft according to the current legislation of state of registration; | а) он является независимым юридическим лицом, надлежащим образом организованным по законодательству Российской Федерации, и будет осуществлять свою деятельность в отношении приобретаемого воздушного судна по действующему законодательству страны регистрации; |
| b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized; | б) лица, подписывающие настоящий Договор от имени Покупателя, являются надлежащим образом уполномоченными; |
| c) it is not in process of any reorganization and doesn't assume the same that may materially adversely affect its relevant financial position or ability of Purchaser to perform obligations, set in this Agreement; | в) он не находится в процессе какой-либо реорганизации или не предполагает таковую, которая могла бы существенно и неблагоприятно отразиться на его соответствующем финансовом положении или способности Покупателя выполнять обязательства, указанные в настоящем Договоре; |
| d) it has received all permissions of necessary governmental bodies in order to legally and efficiently carry out its business, and information advised to Seller regarding legal status of Purchaser is full and reliable. | г) он располагает всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Продавцу в отношении правового статуса Покупателя, является полной и достоверной. |

AR 0587

| | |
|---|---|
| 10.4 Seller and Participant confirm and ensure Purchaser that at date of signing this Agreement: | 10.4. Продавец и Участник подтверждают и гарантируют Покупателю, что на дату подписания настоящего Договора: |
| they are independent legal entity, properly established under the legislation of the Republic of Uzbekistan, and will carry out its activity regarding aircraft according to the current legislation of the Republic of Uzbekistan; | а) они являются независимыми юридическими лицами, надлежащим образом органнзованными по законодательству Республики Узбекистан, и будут осуществлять свою деятельность в отношении воздушного судна по действующему законодательству Республики Узбекистан; |
| persons, signing this Agreement on behalf of Purchaser, have been duly authorized; | б) лица, подлисывающие настоящий договор от имени Продавца и Участника, являются надлежащим образом уполномоченными; |
| they are not in process of any reorganization and don't assume the same that may materially adversely affect its relevant financial position or ability of Seller and Participant to perform obligations, set in this Agreement; | в) они не находятся в процессе какой-либо реорганизации или не предполагается таковая, которая могла бы существенно и неблагоприятно отразиться на их соответствующем финансовом положении или способности Продавца и Участника выполнять обязательства, указанные в настоящем Договоре; |
| they have received all permissions of necessary governmental bodies in order to legally and efficiently carry out their business, and information advised to Purchaser regarding legal status of Seller and Participant is full and reliable. | г) они располагают всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Покупателю в отношении правового статуса Продавца и Участника, является полной и достоверной. |
| 10.5 Parties mutually undertake to refrain from any actions that may result in situation when the Parties' Guarantees are not reliable or won't be performed. | 10.5. Стороны принимают взаимные обязательства воздерживаться от совершения каких-либо действий, вследствие которых Гарантии Сторон не будут являться истинными или не будут выполнены. |

**11. RESPONSIBILITY OF THE PARTIES FOR BREACH OF OBLIGATION UNDER AGREEMENT** | **11. ОТВЕТСТВЕННОСТЬ СТОРОН ЗА НАРУШЕНИЕ ДОГОВОРНЫХ ОБЯЗАТЕЛЬСТВ**

| | |
|---|---|
| 11.1 The Party unreasonably avoid performing its obligations under this Agreement, shall reimburse other Party all losses caused by this fact and documentary confirmed. | 11.1. Сторона, необоснованно уклоняющаяся от исполнения своих обязательств по настоящему Договору, должна возместить другой Стороне все возникающие от этого документально подтвержденные убытки. |

11.2 If after signing this Agreement any Party can't or doesn't comply with its obligation under this Agreement or if in any time after signing this Agreement any Party has known about any fact or event which shows that any Guarantee, set in this Agreement is incorrect or misleading or any obligation of the Parties was not or won't be observed, then in such cases the Party suffered shall have the right to judicially require invalidation or termination of this Agreement and payment of damages.

11.2 Если после подписания настоящего Договора одна из Сторон не смогла или не соблюдает все свои обязательства по настоящему Договору или, если в любое время после подписания настоящего Договора одной из Сторон становится известно о каком-либо факте или событии, которое показывает, что какая-либо Гарантия, изложенная в настоящем Договоре, является неверной или вводящей в заблуждение или, что какое-либо обязательство Сторон не было или не будет соблюдено, то в любом таком случае потерпевшая Сторона вправе требовать признания недействительным или расторжения настоящего Договора в судебном порядке и возмещения понесенных убытков.

11.3 In the case of late payments of aircraft price by Purchaser and reimbursement of expenses of Participant in accordance with paragraphs 4.3 and 4.5 of this Agreement Purchaser shall pay Participant the penalties in amount of 0.4% of outstanding payment per day of delay, but no more than 50% of outstanding amount. If Purchaser doesn't make payment of aircraft price and Participant' expenses, including penalties (if any) during three months after date, provided for in paragraphs 4.3 and 4.5, then Seller and Participant shall have the right to terminate this Agreement in established order.

11.3 В случае несвоевременной оплаты Покупателем выкупного платежа и возмещения расходов Участника в соответствии с пунктами 4.3. и 4.5. настоящего Договора, Покупатель уплачивает Участнику пеню в размере 0,4% от суммы просроченного платежа за каждый день просрочки, но не более 50% суммы просроченного платежа. При этом если Покупателем в течение трех месяцев после окончания предусмотренного пунктами 4.3. и 4.5. срока не будет оплачен выкупной платеж и расходы Участника, а также пени (в случае возникновения), то Продавец и Участник вправе расторгнуть настоящий Договор в установленном порядке.

11.4 In the case of Agreement termination due to Purchaser's break the amounts previously paid in aircraft price by Purchaser under this Agreement shall be returned by Participant to the Purchaser. At the same time Participant shall have the right to apply penalty in amount of 15% of aircraft price. Aircraft shall be returned to Participant by Purchaser.

11.4 В случае расторжения настоящего Договора по инициативе Покупателя средства, ранее перечисленные Покупателем в счет оплаты выкупного платежа по настоящему Договору, возвращаются Участником Покупателю. При этом Участник применяет штраф в размере 15% от суммы выкупных платежей. Воздушное судно возвращается Покупателем Участнику.

11.5 In the case of Agreement termination due to Purchaser's break the expense of Participant mentioned in paragraph 4.5 of this Agreement are not to be returned.

11.5 В случае расторжения настоящего Договора по инициативе Покупателя расходы Участника, указанные в пункте 4.5. настоящего Договора, возврату не подлежат.

11.6 Payment of penalty for non-fulfilment or improper fulfilment of provisions of this Agreement by the Parties shall not release

11.6 Уплата неустойки за неисполнение или ненадлежащее исполнение Сторонами условий настоящего Договора не

AR 0589

| Party in fault from performing obligations undertaken under this Agreement. | освобождает виновную Сторону от исполнения принятых на себя по Договору обязательств. |
|---|---|

| 12.1 The law of the Republic of Uzbekistan is recognized as the governing law regarding possible disputes under this Agreement. | 12.1. Применимым правом в отношении возможных споров по настоящему договору Стороны признают право Республики Узбекистан. |
|---|---|
| 12.2 Any disputes, controversy or claims arisen out of or related to this Agreement or breach, termination or invalidation of this Agreement in the case of impossibility to reach mutual arrangement shall be considered in the courts of the Republic of Uzbekistan in accordance with the legislation of the Republic of Uzbekistan. Parties have undertaken to assume all necessary measures for resolving possible discrepancies through negotiations, submitting written claims before applying to court of justice. | 12.2. Любые споры, разногласия или претензии, возникающие или относящиеся к настоящему Договору, либо нарушение, прекращение действия или недействительность настоящего Договора, в случае невозможности достижения взаимной договоренности, рассматриваются в судах Республики Узбекистан в соответствии с законодательством Республики Узбекистан. Стороны берут на себя обязательства принять все необходимые меры для рассмотрения возможных разногласий путем переговоров, предъявления письменных претензий перед обращением в судебные органы. |
| 12.3 Existence of dispute, controversies or claims, as well as impending legal proceedings shall not release any Party from fulfilment of its relevant obligations under this Agreement by it. | 12.3 Наличие спора, разногласий или претензий, равно как и предстоящее рассмотрение дела в суде не освобождает ни одну из Сторон от выполнения ею соответствующих обязательств в соответствии с настоящим Договором. |
| 12.4 Claiming order of pre-trial consideration of dispute is mandatory. Period of reply on claim received is equal 30 calendar days. | 12.4 Претензионный порядок досудебного рассмотрения спора является обязательным. Срок ответа на полученную претензию – 30 календарных дней. |
| 12.5 On matters arisen at performing, amendment or termination of this Agreement and not provided for in this Agreement the Parties shall be guided by current legislation of the Republic of Uzbekistan. | 12.5 В вопросах, возникающих при исполнении, изменении либо расторжении настоящего Договора и не предусмотренных настоящим Договором, Стороны руководствуются действующим законодательством Республики Узбекистан. |

| 13.1 Neither Party bears responsibility before other ones for non-fulfilment of obligations due to events of force majeure, caused by circumstances arisen without Parties' will and desire, which might not be foreseen or avoid, including declared or actual war, civil strife, epidemic, embargo, earthquake, flood, fires and other Acts of God. | 13.1 Ни одна из Сторон не несет ответственности перед другой Стороной за невыполнение обязательств вследствие событий непреодолимой силы, обусловленных обстоятельствами, возникшими помимо воли и желания Сторон, которые нельзя предвидеть или избежать, включая объявленную или фактическую войну, |

| | гражданские волнения, эпидемии, блокаду, эмбарго, землетрясения, наводнения, пожары и другие стихийные бедствия. |
|---|---|
| 13.2 Certificate issued by relevant authorized body of state of the Party is sufficient confirmation of existence and duration of event of force majeure. | 13.2. Свидетельство, выданное соответствующим и уполномоченным органом государства Стороны Договора, является достаточным подтверждением наличия и продолжительности действия события непреодолимой силы. |
| 13.3 Party that doesn't perform its obligations shall during thirty (30) days give the notice about restriction and its influence on obligations fulfilment under Agreement to other Parties. | 13.3 Сторона, которая не исполняет своего обязательства, должна в течение 30 (тридцати) дать другой Стороне письменное извещение дней о препятствии и его влиянии на исполнение обязательств по Договору. |
| 13.4 If force majeure circumstances exist during three (3) successive months and don't show cessation signs, then this Agreement may be terminated by the Parties through giving the notice to other Parties. | 13.4 Если обстоятельства непреодолимой силы действуют на протяжении 3 (трех) последовательных месяцев и не обнаруживают признаков прекращения, настоящий Договор может быть расторгнут Сторонами путем направления уведомления другой Стороне. |

AR 0591

| 14 LEGAL ADDRESSES, REQUISITES AND SIGNATURES OF THE PARTIES | 14. ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН |
|---|---|
| **SELLER** | **ПРОДАВЕЦ** |
| State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition | Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции Республика Узбекистан |
| 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, | 100003, г. Ташкент, пр. Узбекистанский, 55 |
| Currency account 2▇▇▇▇▇9002 | Валютный счет: ▇▇▇▇▇9002 |
| RKC Main Tashkent city branch of the Central bank of the Republic of Uzbekistan | РКЦ Главное Ташкентское городское управление Центрального Банка РУз, |
| Bank code 00014, Individual Nqumber of tax Pay▇▇ | код 00014, ИНН ▇▇▇ |
| First Deputy Chairman | Первый заместитель председателя |
| S.X.Gafarov | Гафаров С.Х |



| **PURCHASER** | **ПОКУПАТЕЛЬ** |
|---|---|
| "RUSAVIAINVEST" Ltd. | ООО «РУСАВИАИНВЕСТ» |
| 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, | 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, |
| Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75 | Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75 |
| rusaviainvest@mail.ru | rusaviainvest@mail.ru |
| CORRESPONDENT BANK: JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA | CORRESPONDENT BANK: JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA |
| SWIFT: CHASUS33XXX | SWIFT: CHASUS33XXX |
| ACCOUNT WITH CORRESPONDENT BANK: ▇▇0991 | ACCOUNT WITH CORRESPONDENT BANK: ▇▇0991 |
| BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM | BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM |
| BENEFICIARY'S ACCOUNT.: ▇▇3843 | BENEFICIARY'S ACCOUNT.: ▇▇3843 |
| Director General | Генеральный директор |
| A.K.Vorobyev | Воробьёв А.К. |
| Company seal | м.п. |





| **PARTICIPANT** | **УЧАСТНИК** |
|---|---|
| National air company of the Republic of Uzbekistan "Uzbekistan Airways" | НАК «Узбекистон хаво йуллари» |
| 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan | Республика Узбекистан, 100060 г. Ташкент пр. Амира Темура 41. |
| Individual Number of tax Payer | ИНН 2 |
| OKPO | OKPO |
| OKONX | OKOHX |
| Currency account: 7030 | Валютный счет: 7030 |
| Central operation branch of the National Bank for Foreign Economic Activity of the Republic of Uzbekistan | Центральный операционный отдел Национального банка ВЭД Республики Узбекистан |
| Bank code: 00882 | Код банка: 00882 |
| SWIFT : NBFAUZ2X | SWIFT: NBFAUZ2X |

Director General

Company seal

Генеральный директор

___ В.Н.

М.П.

воздушное судно НАК «Узбекистон хаво йуллари», подлежащее реализации
ООО «РУСАВИАИНВЕСТ»

| | Тип воздушного судна и авиационных двигателей | Бортовой номер | Заводской номер | Дата выпуска | Стоимость в долл. США |
|---|---|---|---|---|---|
| I | Воздушное судно    A-310<br>ТН-ВЭД код | UK 31003 | 706 | 1998 | 2 000 000 |
| | Авиационный двигатель PW-4152<br>ТН-ВЭД код | | P724942 | 1998 | |
| | Авиационный двигатель    PW-4152<br>ТН-ВЭД код | | P724943 | 1998 | |
| | Силовая установка   GTCP-331-250<br>ТН-ВЭД код | | P-1318 | 1992 | |

AR 0594

### А К Т
**приёма-передачи**

воздушного судна Airbus A-310-324
серийный номер изготовителя 706

ООО «РУСАВИАИНВЕСТ» (Покупатель) настоящим подтверждает, что согласно настоящему Договору №____от « »_____ 2016 года между НАК «Узбекистон хаво йуллари» (Участник) и ООО «РУСАВИАИНВЕСТ» (Покупатель) в отношении воздушного судна A-310-324 UK 31003:

(a)   Покупатель провел инспекцию воздушного судна, и воздушное судно соответствует описанию и находится в таком техническом состоянии и так оборудовано, как требуют условия настоящего Договора;

(b)   Участник передал воздушное судно;

(c)   Покупатель принял воздушное судно;

(d)   Покупатель получил всю техническую документацию по воздушному судну, провел ее инспекцию и убедился в ее полноте и удовлетворительности.

(e)   Местом Поставки является Международный аэропорт «Ташкент» и дата Поставки - « » _____2016 год.

Дата « »_____ 2016 года

от Участника:                                          от Покупателя:
_____ /Тян В.Н. /                        _____/Воробьёв А.К./
М.П.                                                            М.П.

## Описание воздушного судна

Данное Приложение является неотъемлемой частью настоящего Договора о купле-продаже и, в таком виде составляет документ, применимый к покупке воздушного судна Airbus A-310-324 серийный № 706, как предусмотрено пунктом 3.1. настоящего Договора.

("N/A" означает неприменимость):

| | |
|---|---|
| 1. Самолет Airbus A-310-324<br>Изготовитель – корпорация Airbus,<br>конструкция - пассажирский,<br>модель – A-310-324,<br>серийный номер изготовителя - 706,<br>принадлежность и регистрационный<br>номер- НАК «Узбекистон хаво йуллари»<br>UK 31003,         двигатели - PW-4152 | 2. Двигатели PW-4152<br>№1  SN # P724942  24.01.98.<br>№2  SN # P724943  24.01.98. |
| 3. Документация по Самолету -<br>Формуляры и паспорта  на воздушное<br>судно, силовые установки, агрегаты и<br>комплектующие изделия, а также<br>дополнительное оборудование | 4. Аренда (N/A) |
| 5. Арендатор ( N/A) | 6. Страна регистрации - Узбекистан |
| 7АДополнительные  Предварительные<br>Условия к Обязательствам Участника<br>продать Самолет (статьи 7.4 и 7.8)<br><br>7ВДополнительные<br>Предварительные    Условия    к<br>Обязательствам  Покупателя  купить<br>Самолет (статьи 6.1, 6.2, 6.3, 6.4, 6.5,<br>6.6, 6.12) | 8. Покупная цена – 2 000 000 (два<br>миллиона) долларов США. |
| 9. Депозит [N/A] | 10. Проценты по Депозиту [N/A] |
| 11. Перерасчет при Поставке [N/A] | 12. Банковский счет Участника<br>ИНН<br>ОКРО<br>ОКОНХ<br>Валютный счет:                     7030<br>Центральный операционный отдел<br>Национального банка ВЭД Республики<br>Узбекистан |
| 13. Дополнительные Положения,<br>относящиеся к налогам  [N/A] | 14 Инспекция - за счёт Покупателя |
| 15. Требования по Состоянию при<br>Поставке  - «как есть, где есть» | 16. Предел возмещения ущерба N/A |

AR 0596

| | |
|---|---|
| 17. Полная Потеря [N/A] | 18. Владение - [N/A] |
| 19. Планируемая Дата Поставки [укажите] | 20. Место Поставки-Международный аэропорт «Ташкент» |
| 21. Окончательная Дата Поставки [укажите] | 22. Продавец – Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции |
| 23. Гарантии Изготовителя [N/A] | 24. Компенсации [N/A] |
| 25. Страхование Ответственности [N/A] | 26. Дополнительные События Прекращения Договора[N/A] |
| 27А. Дополнительные Представления и Гарантии Продавца [N/A] 27В. Дополнительные Представления и Гарантии Покупателя [N/A] | 28. Извещения [укажите разрешенные средства передачи и адреса] |
| 29. [намеренно опущена] | 30. Юрисдикция - «исключительная» |
| 31. Передача Контракта по факсу / Электронными средствами -допустима по адресу: | 32. Затраты и Расходы Покупатель оплачивает расходы по пункту 4.6. настоящего Договора |
| 33. Рабочий день в г. Ташкент, г.Москва | 34. Документы по Продаже – настоящий Договор со всеми Приложениями |

**В ПОДТВЕРЖДЕНИЕ ЧЕГО,** Стороны подписали данное Приложение в соответствующие даты, указанные ниже.

от Участника:                                    от Покупателя:

_____ /Тян В.Н. /              _____ /Воробьёв А.К./

B

AR 0598

| | | | **INVOICE № 2.2.1-2352** |
| :-- | :-- | :-- | :-- |
| | ⓔ **UZBEKISTAN** *airways* | | **DATE: 01.11.2016** |

**Seller:** State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition

**ADDRESS** 55, Uzbekistan Ave., 100003 Tashkent, Uzbekistan

**Participant,**
**ADDRESS:** UZBEKISTAN AIRWAYS
41, Amir Temur Ave., 100060, Tashkent , Uzbekistan

Please remit payment without deduction to the following bank account of the Participant:
**Account No** (USD) 7030

**Account with:** Central operation branch of the
National bank for Foreign Economic Activity
of the Republic of Uzbekistan

**SWIFT CODE:** NBFAUZ2X | **BANK CODE:** 00882

**E-mail:** fo@uzairways.com

**Purchaser** RUSAVIAINVEST, LTD.

**ADDRESS** 25, 1 Soviet side str., Shchelkovo,
141100 Moscow, Russia

**ATTENTION:** Director General
A.K. Vorobyev

**E-mail** rusaviainvest@mail.ru

| SUBJECT: AIRCRAFT | QTY | UNIT PRICE USD | VAT % | TOTAL USD |
| :-- | :--: | :--: | :--: | :--: |
| One Airbus Model A310 aircraft, Reg. No. UK 31003, MSN 706 Equipped with: two Pratt & Whitney model PW4152 engines MSN P724942 and P724943, and GTCP 331-250 APU P-1318 In accordance with the Agreement No. 2 on Sale-Purchase of Aircraft dated October 27, 2016 | 1 | 2 000 000,00 | - | 2 000 000,00 |
| | | | | **2 000 000,00** |

Note: Uzbekistan Airways has right to correct the invoice in case of disagreement

**GENERAL DIRECTOR** V.N. TYAN

**FINANCIAL DIRECTOR** A.A. SATTAROV

AR 0599

C

AR 0600



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 200000 | **Category:** | Wire Transfer |
| **Currency Type:** | usd | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

Our company RUSAVIAINVEST, 25, 1-st Soviet per, Shelkovo city, Russia, is a remitter of blocked funds in the amount of 200,000 dollars to the beneficiary of the National Air Company of the Republic of Uzbekistan "Uzbekistan Airways". 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan. Our bank is a payer of ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM, intermediary bank of JPMORGAN CHASE BANK N.A., beneficiary's bank National Bank for Foreign Economic Activity of the Republic of Uzbekistan, Bank code: 00882, SWIFT: NBFAUZ2?

## Contact Information

### Applicant

| | | | |
|---|---|---|---|
| **Contact Category:** | Institution | | |
| **Organization Name:** | RUSAVIAINVEST | | |
| **Point of Contact Name:** | | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | | |
| Line2: | | | |
| Line3: | | | |
| City: | Shelkovo | **State:** | Moscow |
| Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | |
| **Phone:** Office: | 7-4955444375 | | |
| Mobile: | | | |
| Fax: | 7-4955444375 | | |
| **Principal Place of Business:** | Moscow region | | |
| **Place where Business is Incorporated:** | Russia | | |

### Correspondent

| | | | |
|---|---|---|---|
| **Contact Category:** | Institution | | |
| **Organization Name:** | RUSAVIAINVEST | | |
| **Point of Contact Name:** | | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | | |
| Line2: | | | |
| Line3: | | | |
| City: | Shelkovo | **State:** | Moscow |
| Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | | |
| **Phone:** Office: | 7-4955444375 | | |
| Mobile: | | | |
| Fax: | 7-4955444375 | | |
| **Principal Place of Business:** | Moscow region | | |
| **Place where Business is Incorporated:** | Russia | | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |
| **Point of Contact Name:** | |
| **Address:** Line1: | |
| Line2: | |

|  | Line3: |  |  |  |
|--|--------|--|--|--|
|  | City: | New York | State: | NY |
|  | Zip: | 10004 | Country: | United States |

**Email Address:**
**Phone:**    Office:
         Mobile:
         Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

**Contact Category:**    Institution
**Organization Name:**    RUSAVIAINVEST
**Point of Contact Name:**
**Address:**    Line1:    25, 1st Soviet pereulok
         Line2:
         Line3:

|  | City: | Schelkovo | State: |  |
|--|-------|-----------|--------|--|
|  | Zip: |  | Country: | Russia (Russian Fed.) |

**Email Address:**    info@rusaviainvest.ru
**Phone:**    Office:    7-4955444375
         Mobile:
         Fax:    7-4955444375
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

**Contact Category:**    Institution
**Organization Name:**    AKB ABSOLUT BANK (PAO)
**Point of Contact Name:**
**Address:**    Line1:
         Line2:
         Line3:

|  | City: | Moscow | State: |  |
|--|-------|--------|--------|--|
|  | Zip: |  | Country: | Russia (Russian Fed.) |

**Email Address:**
**Phone:**    Office:    7-4957777171
         Mobile:
         Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

**Contact Category:**    Institution
**Organization Name:**    JPMORGAN CHASE BANK
**Point of Contact Name:**
**Address:**    Line1:
         Line2:
         Line3:

|  | City: |  | State: |  |
|--|-------|--|--------|--|
|  | Zip: |  | Country: |  |

**Email Address:**
**Phone:**    Office:
         Mobile:
         Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

**Contact Category:**    Institution
**Organization Name:**    National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**

**Address:**   Line1:
            Line2:
            Line3:
            City:        Tashkent                                **State:**
            Zip:                                                  **Country:**    Uzbekistan

**Email Address:**
**Phone:**    Office:
          Mobile:
          Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**      Institution
**Organization Name:**     National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**    Line1:
            Line2:
            Line3:
            City:        Tashkent                                **State:**
            Zip:                                                  **Country:**    Uzbekistan
**Email Address:**
**Phone:**    Office:
          Mobile:
          Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
| --- | --- |
| invoice | Supplemental Information |
| swift | Supplemental Information |
| passport of director and owner | Supplemental Information |
| bank answer 1 | Supplemental Information |
| Application Summary | License Request |

## Certification

**Signature:**                                                      **Date:**    4/24/2017
**Email Address:**      info@rusaviainvest.ru

D



# OFAC
### Office of Foreign Assets Control

License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 200000 | **Category:** | Wire Transfer |
| **Currency Type:** | usd | **Program(s):** | Foreign Terrorist Organizations |
| **Date Blocked:** | 4/11/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

We have blocked transfer amount 200 000 usd to Uzbekistan National Aircompany. It full legal contract. We ask you to clarify the circumstances and misunderstanding with this payment delay and allow execution of payment under the contract or to perform a refund.

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** |
| Zip: | | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | | |
| **Principal Place of Business:** | CIS countries | |
| **Place where Business is Incorporated:** | Russia | |

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** |
| Zip: | | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | | |
| **Principal Place of Business:** | CIS countries | |
| **Place where Business is Incorporated:** | Russia | |

### Financial Blocked Funds

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | DEUTSCHE BANK TRUST COMPANY AMERICAS | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | | |
| Line2: | | |
| Line3: | | |
| City: | New York | **State:** NY |
| Zip: | 10004 | **Country:** United States |

**Email Address:**
**Phone:**      **Office:**
            **Mobile:**
            **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

**Contact Category:**    Institution
**Organization Name:**    RUSAVIAINVEST
**Point of Contact Name:**
**Address:**    **Line1:**    25, 1st Soviet pereulok
            **Line2:**
            **Line3:**
            **City:**    Schelkovo           **State:**
            **Zip:**                    **Country:**    Russia (Russian Fed.)
**Email Address:**    info@rusaviainvest.ru
**Phone:**      **Office:**    7-4955444375
            **Mobile:**
            **Fax:**
**Principal Place of Business:**      CIS
**Place where Business is Incorporated:**    Russia

## Remitting Financial Institution

**Contact Category:**    Institution
**Organization Name:**    AKB ABSOLUT BANK (PAO)
**Point of Contact Name:**
**Address:**    **Line1:**
            **Line2:**
            **Line3:**
            **City:**    Moscow           **State:**
            **Zip:**                    **Country:**    Russia (Russian Fed.)
**Email Address:**
**Phone:**      **Office:**    7-4957777171
            **Mobile:**
            **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

**Contact Category:**    Institution
**Organization Name:**    DEUTSCHE BANK TRUST COMPANY AMERICAS
**Point of Contact Name:**
**Address:**    **Line1:**
            **Line2:**
            **Line3:**
            **City:**                    **State:**
            **Zip:**                    **Country:**
**Email Address:**
**Phone:**      **Office:**
            **Mobile:**
            **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

**Contact Category:**    Institution
**Organization Name:**    National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:**    **Line1:**    41 Amir Temur Ave
            **Line2:**
            **Line3:**

|  | City: | Tashkent | | State: | |
|  | Zip: | 100060 | | Country: | Uzbekistan |

**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:** Institution
**Organization Name:** National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:** Line1:
Line2:
Line3:

|  | City: | Tashkent | | State: | |
|  | Zip: | | | Country: | Uzbekistan |

**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
|---|---|
| invoice | Supplemental Information |
| contract | Supplemental Information |
| registration of company | Supplemental Information |
| passport of director and owner | Supplemental Information |
| Application Summary | License Request |

## Certification

**Signature:**    [redacted]    **Date:** 5/4/2017
**Email Address:** info@rusaviainvest.ru

E



# License Application

## Application Information

| | | | | |
|---|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | | **Category:** | Wire Transfer |
| **Currency Type:** | USD | | **Program(s):** | Foreign Terrorist Organizations |
| **Date Blocked:** | 4/3/2017 | | **Previous Case ID:** | |

**Description of Subject Matter:**

We have blocked transfer amount 1000 000 usd to Uzbekistan National Aircompany. It full legal contract. We ask you to clarify the circumstances and misunderstanding with this payment delay and allow execution of payment

under the contract or to perform a refund.The blocked transaction in the amount of 1 million dollars as a preliminary payment under an official

contract to the national airline of Uzbekistan. Our Russian company Rusaviainvest and the Uzbek national company, Uzbekistan Airways are not on the sanctions lists. Correspondent Bank advised us that funds have blocked as per OFAC of global terrorism programm. The our deal is clean and has no relationship with terrorism, all amounts go to the national bank of Uzbekistan.

## Contact Information

### Applicant

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | |
| | Line2: | | | |
| | Line3: | | | |
| | City: | Shelkovo | **State:** | |
| | Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | info@rusaviainvest.ru | | |
| **Phone:** | Office: | 7-4955444375 | | |
| | Mobile: | | | |
| | Fax: | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Correspondent

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | |
| | Line2: | | | |
| | Line3: | | | |
| | City: | Shelkovo | **State:** | |
| | Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | info@rusaviainvest.ru | | |
| **Phone:** | Office: | 7-4955444375 | | |
| | Mobile: | | | |
| | Fax: | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |

**Point of Contact Name:**
**Address:**      **Line1:**
              **Line2:**
              **Line3:**
              **City:**        New York                                    **State:**      NY
              **Zip:**         10004                                       **Country:**    United States
**Email Address:**
**Phone:**        **Office:**
              **Mobile:**
              **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

**Contact Category:**        Institution
**Organization Name:**       RUSAVIAINVEST
**Point of Contact Name:**
**Address:**      **Line1:**       25, 1st Soviet pereulok
              **Line2:**
              **Line3:**
              **City:**        Schelkovo                                   **State:**
              **Zip:**         141100                                      **Country:**    Russia (Russian Fed.)
**Email Address:**        info@rusaviainvest.ru
**Phone:**        **Office:**
              **Mobile:**
              **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

**Contact Category:**        Institution
**Organization Name:**       AKB ABSOLUT BANK (PAO)
**Point of Contact Name:**
**Address:**      **Line1:**
              **Line2:**
              **Line3:**
              **City:**        Moscow                                      **State:**
              **Zip:**                                                     **Country:**    Russia (Russian Fed.)
**Email Address:**
**Phone:**        **Office:**       7-4957777171
              **Mobile:**
              **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

**Contact Category:**        Institution
**Organization Name:**       JPMORGAN CHASE BANK
**Point of Contact Name:**
**Address:**      **Line1:**
              **Line2:**
              **Line3:**
              **City:**                                                    **State:**
              **Zip:**                                                     **Country:**
**Email Address:**
**Phone:**        **Office:**
              **Mobile:**
              **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

**Contact Category:** Institution
**Organization Name:** National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:** Line1:
Line2:
Line3:
City: Tashkent **State:**
Zip: **Country:** Uzbekistan
**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:** Institution
**Organization Name:** National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:** Line1:
Line2:
Line3:
City: Tashkent **State:**
Zip: **Country:** Uzbekistan
**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
|---|---|
| registration of company | Supplemental Information |
| contract | Supplemental Information |
| Application Summary | License Request |

## Certification

**Signature:** **Date:** 5/19/2017
**Email Address:** info@rusaviainvest.ru



РОССИЙСКАЯ ФЕДЕРАЦИЯ
RUSSIAN FEDERATION

Подпись владельца
Holder's signature

**RUS**

РОССИЙСКАЯ ФЕДЕРАЦИЯ RUSSIAN FEDERATION

Тип/Type    Код государства/Code of state    Паспорт №/Passport No.
**P**    **RUS**

Фамилия/Surname
**ВОРОБЬЕВ /**
**VOROBEV**

Имя/Given names
**АНДРЕЙ КОНСТАНТИНОВИЧ /**
**ANDREI**

Гражданство/Nationality
**РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION**

Дата рождения/Date of birth
Пол/Sex    Место рождения/Place of birth
**М / М**    **Г. МОСКВА / USSR**
**31.03.2016**
Дата выдачи/Date of issue
**31.08.2026**

Орган, выдавший документ / Authority
**ФМС 50022**

Подпись владельца / Holder's signature

AR 0613

G

AR 0614



**Абсолют Банк**

FROM: AKB ABSOLUT BANK (PAO)
TO: ООО "RUSAVIAINVEST"

Референс запроса ABS201704113376S
Касательно Вашего заявления на перевод №8 от 30.03.2017 на сумму USD 200,000-00 в пользу UZBEKISTAN
AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE
BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000.00/USD DATED 4/3/2017 YOUR REFERENCE
NUMBER 496606/07-31 OUR TRANSACTION REFERENCE NUMBER 2144394090FS.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE
DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

*Абсолют Банк
Отдел
корреспондентских
счетов*

1

AR 0615

H



FROM: AKB ABSOLUT BANK (PAO)
TO: ООО "RUSAVIAINVEST"

Референс запроса ABS201704113377S
Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000.000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017 YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION REFERENCE NUMBER 1665792093JX.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113377S

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500 PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

С уважением,
начальник отдела корреспонентских счетов
Силина М.А.

1

AR 0618

# Абсолют Банк

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113376S

Касательно Вашего заявления на перевод №8 от 30.03.2017 на сумму USD 200,000.00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496606/07-31 OUR TRANSACTION
REFERENCE NUMBER 2144394090FS. PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED:
THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.

Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

*[печать: Абсолют банк, Отдел корреспондентских счетов]*

AR 0619

J

AR 0620



**Абсолют Банк**

FROM: AKB ABSOLUT BANK (PAO)
TO: ООО "RUSAVIAINVEST"

Референс запроса ABS201704113377S
Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496908/07-03 OUR TRANSACTION
REFERENCE NUMBER 1665792093JX .PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED: THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.
Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

*(печать: Абсолют Банк — Отдел корреспондентских счетов)*

AR 0621

K



FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704133380A
Касательно Вашего заявления на перевод №10 от 10.04.2017 на сумму USD 200000 в пользу UZBEKISTAN
AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента DEUTSCHE BANK
TRUST COMPANY AMERICAS о том, что данный платеж не исполнен и находится на проверке комплаенс.

QUOTE
WE REFER TO YOUR 103 DATED 04/11/17 REFERENCE 498059/07-11 FOR USD 200000.00 VALUE 04/11/17 THIS
TRANSACTION HAS NOT BEEN COMPLETED DUE TO PENDING FURTHER REVIEW BY COMPLIANCE UNIT OR
DEUTSCHE BANK COMPLIANCE POLICY.
WE WILL ADVISE YOU UPON RECEIPT OF FURTHER INSTRUCTIONS FROM THEM.
WE WILL DEBIT YOUR ACCOUNT AND PLACE FUNDS INTO A SUSPENSE ACCOUNT AT DEUTSCHE BANK TRUST
COMPANY
PENDING COMPLETION OF COMPLIANCE REVIEW AND WILL ADVISE YOU UPON RECEIPT THEIR RESPONSE.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704133380A

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

1

AR 0623

AR 0624



**Абсолют Банк**

дата_____  № _____

на № _____  от _____

FROM: AKCIONERNYi KOMMERcESKIi BANK ABSOLuT BANK (OAO)
TO: OBSHCHESTVO S OGRANICHENNOY OTVETSTVENNOST'YU " RUSAVIAINVEST"

Референс запроса ABS201704133380A
Касательно Вашего запроса N24 от 21/04/17 на отзыв денежных средств в сумме USD 200000, отправленных по `` `` ` `
заявлению на перевод №10 от 10.04.2017 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent
Uzbekistan, UZBEKISTAN, Tashkent
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента DEUTSCHE BANK
TRUST COMPANY AMERICAS о том, что средства по указанному переводу не могут быть возвращены, т.к.
заблокированы OFAC.
Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на
разблокирование средств по следующему адресу:
LICENSE DEPARTMENT, DIRECTOR OFFICE OF
FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

QUOTE
UNDER REGULATIONS ISSUED BY THE US OFFICE OF
FOREIGN ASSETS CONTROL (OFAC) PLEASE BE ADVISED
THAT THE FUNDS HAVE BEEN PLACED INTO A BLOCKED
ACCOUNT AT DEUTSCHE BANK TRUST COMPANY.
WE REGRET ANY INCONVENIENCE OUR ACTIONS MAY HAVE
CAUSED BUT WE ARE PROHIBITED FROM RETURNING
BLOCKED FUNDS UNTIL SUCH TIME AS OFAC ISSUES A
LICENSE PERMITTING RELEASE OF THESE FUNDS.

SHOULD YOU WISH TO APPLY FOR A LICENSE YOU MUST
CONTACT:LICENSE DEPARTMENT, DIRECTOR OFFICE OF
FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220

ANY QUESTIONS REGARDING APPLICATION FOR A LICENSE
CAN BE REFERRED TO YOUR RELATIONSHIP MANAGER.

PLEASE QUOTE OUR REFERENCE NUMBER, 170411 612369
IN ALL FUTURE CORRESPONDENCE RELATING TO THIS
CASE.

REGARDS, PAYMENT INVESTIGATIONS
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704133380A

THANK YOU AND BEST REGARDS
ABSOLUT BANK

AR 0625

M

AR 0626

Operator: ▓▓▓▓▓

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier: O CHASUS33XXX 103 496606/07-31 170331

### Message Header

| | | |
|---|---|---|
| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:
Unit: None
Institution: ABSLRUMMXXX

ABSOLUT BANK
MOSCOW, RUSSIAN FEDERATION

Receiver:
Institution: CHASUS33XXX

JPMORGAN CHASE BANK, N.A.
NEW YORK, NY, UNITED STATES

### Message Text

**20:** Sender's Reference
496606/07-31

**23B:** Bank Operation Code
CRED

**32A:** Value Date/Currency/Interbank Settled Amount
170331
USD
200,000.00

**33B:** Currency/Instructed Amount
USD
200,000.00

**50F:** Ordering Customer
/▓▓▓▓▓3843
1/OOO KOSAVIAINVEST
1/▓▓▓▓▓▓▓▓
2/SOVETSKII 1-I PER, D. 25
3/RU/SHELKOVO 141100

**57A:** Account With Institution
NBFAUZ2XXXX
NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
TASHKENT
UZBEKISTAN

**59:** Beneficiary Customer
/▓▓▓▓▓▓7030
UZBEKISTAN AIRWAYS,
41, AMIR TEMUR AVE.,
100060 TASHKENT,
UZBEKISTAN

**70:** Remittance Information
PAYMENT BY INVOICE 2.2.1-2352
DATED 01/11/2016 ACCORDING
THE AGREEMENT 2 DD 27.10.16
FOR AIRCRAFT A-310

**71A:** Details of Charges
OUR

### Network Data

Network: SWIFT*

### End of Report

Mon Apr 10 17:41:18 2017

Отражение в балансе Банка

Дт ▓▓▓▓▓▓▓▓▓▓▓     Кт ▓▓▓▓▓▓▓▓

АКБ "АБСОЛЮТ БАНК" (ПАО)

БИК ▓▓▓▓▓
К/с ▓▓▓▓▓▓
31 мар 2017

AR 0627

N

Operator: [REDACTED]

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier: O CHASUS33XXX 103 496908/07-03 170403

### Message Header

| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer |
| --- | --- | --- |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:
| | Unit: | None |
| | Institution: | ABSLRUMMXXX | ABSOLUT BANK<br>MOSCOW, RUSSIAN FEDERATION |

Receiver:
| | Institution: | CHASUS33XXX | JPMORGAN CHASE BANK, N.A.<br>NEW YORK, NY, UNITED STATES |

### Message Text

20: Sender's Reference
    496908/07-03
23D: Bank Operation Code
    CRED
32A: Value Date/Currency/Interbank Settled Amount
    170403
    USD
    1,000,000.00
33B: Currency/Instructed Amount
    USD
    1,000,000.00
50F: Ordering Customer
    [REDACTED]3843
    1/OOO RUSAVIAINVEST
    1/
    2/SOVETSKII [REDACTED] PER, D. 25
    3/RU/SHELKOVO 141100
57A: Account With Institution
    NBFAUZ2XXXX
    NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
    TASHKENT
    UZBEKISTAN
59: Beneficiary Customer
    /[REDACTED]7030
    UZBEKISTAN AIRWAYS,
    41, AMIR TEMUR AVE.,
    100060 TASHKENT,
    UZBEKISTAN
70: Remittance Information
    PAYMENT BY INVOICE 2.2.1-2353 DATED
    01/11/2016 ACCORDING THE AGREEMENT
    3 DD 27.10.16 FOR AIRCRAFT RJ-85
71A: Details of Charges
    OUR

### Network Data

Network: SWIFT

### End of Report

Mon Apr 10 17:18:22 2017

### Отражение в балансе Банка

Дт [REDACTED]                    Кт [REDACTED]

АКБ "АБСОЛЮТ БАНК" (ПАО)
БИК [REDACTED]
К/с [REDACTED]
03 апр 2017

AR 0629

Operator: ▮▮▮▮▮▮▮

Message Preparation Application: Message Modification
Unique Message Identifier: O BKTRUS33XXX 103 498059/07-11 170411

## Message Header

| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
|-----|-------|--------|
| Priority: | Normal | |
| Monitoring: | None | |

Sender:

| | Unit: | None |
|--|-------|------|
| | Institution: | ABSLRUMMXXX | ABSOLUT BANK MOSCOW, RUSSIAN FEDERATION |

Receiver:

| | Institution: | BKTRUS33XXX | DEUTSCHE BANK TRUST COMPANY AMERICAS NEW YORK, NY, UNITED STATES |
|--|-------------|-------------|------|

## Message Text

20: Sender's Reference
498059/07-11

23B: Bank Operation Code
CRED

32A: Value Date/Currency/Interbank Settled Amount
170411
USD
200,000.00

33D: Currency/Instructed Amount
USD
200,000.00

50F: Ordering Customer
/▮▮▮▮▮▮▮3843
1/OOO AUSAVIAINVEST
3/SOVEISKIY 1-Y PER, D. 25
3/RU/SHELKOVO 141100

56A: Intermediary Institution
CHASUS33XXX
JPMORGAN CHASE BANK, N.A.
NEW YORK, NY
UNITED STATES

57A: Account With Institution
NBFAUZ2XXXX
NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
TASHKENT
UZBEKISTAN

59: Beneficiary Customer
/▮▮▮▮▮▮▮7030
UZBEKISTAN AIRWAYS,
41, AMIR TEMUR AVE.,
100060 TASHKENT,
UZBEKISTAN

70: Remittance Information
PAYMENT BY INVOICE 2.2.1-2352 DATED
01/11/2016 ACCORDING THE AGREEMENT
2 DD 27.10.16 FOR AIRCRAFT A-310

71A: Details of Charges
OUR

72: Sender to Receiver Information
/OUROUR/

## Network Data

Network: SWIFT*

## End of Report

Thu Apr 13 10:49:44 2017

## Отражение в балансе Банка

Дт ▮▮▮▮▮▮▮          Кр ▮▮▮▮▮▮▮

АКБ "АБСОЛЮТ БАНК" (ПАО)
БИК ▮▮▮
К/с ▮▮▮
11 апр 2017

AR 0631



**After printing this label:**
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

# B.8

Letter from Creizman LLC, including
attachments to OFAC, dated 7/5/2017

AR 0633

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

565 FIFTH AVENUE 7TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 972-0200
FAX: (646) 200-5022
ECREIZMAN@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Facsimile and*
*Federal Express*

▮▮▮▮▮▮▮▮
Chief, Blocked Assets Administration and Analysis
Office of Foreign Assets Control
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

**Re:** **License Application to Unblock Funds**
**Case Numbers: SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
**Reference Numbers: ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear ▮▮▮▮▮▮

I represent a company based in Moscow called Rusiaviainvest, OOO. Rusaviainvest's principal business is the purchase and sale of used aircraft, aircraft parts, and aircraft maintenance and repair. In connection with an agreement to purchase a used aircraft from Uzbekistan Airways, Uzbekistan's national air carrier, three wire transfers totaling $1,400,000 were blocked by JPMorgan Chase Bank, N.A., and Deutsche Bank National Trust Company in late March and early April 2017 based on what I believe is the mistaken impression that the transaction violates one or more OFAC sanctions programs.

Rusaviainvest is not owned, and does not employ anyone on the SDN list, and a search using our own OFAC compliance software results in no hits. I also did not recognize any prohibition against doing business with Uzbekistan Airways. The only potential basis for a mistake is that Rusaviainvest may have been confused with a company with a similar name, "Rusavia, Ltd." whose website is en.rusavia.com, which, according to the website, deals in a "Russian-American project" titled "Warplanes to Syria." To be clear, Rusaviainvest, Ltd. does not deal with military equipment or weaponry.

Under its contract with Uzbekistan Airways, Rusaviainvest is subject to liquidated damages for failure to pay. While I would imagine such a delay would be subject to a force majeure clause, the law that governs the contract is Uzbekistan law. My client initially

AR 0634

2017 JUL. 12  AM10: 54

AR 0635

submitted licenses to unblock the funds in April and May, and after hiring me, my firm made a supplemental submission, dated June 6, 2017, with exhibits, which are attached to this letter.

I have been unable to make any headway on behalf of my client in getting the funds released, and, if appropriate, paid to Uzbekistan Airways. Nor have I been able to speak with anyone from OFAC to attempt to address any issues or concerns. I therefore am reaching out to you.

I would appreciate a response at your earliest convenience from you or a member of your staff. I thank you in advance for your consideration in this matter.

Very truly yours,

*Eric Creizman*

Eric M. Creizman

Enclosures

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

565 FIFTH AVENUE 7TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 972-0200
FAX: (646) 290-5922
ECREIZ@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Email, Facsimile,*
*and Federal Express*

June 6, 2017

Office of Foreign Assets Control
Licensing Division
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Re:    **License Application to Unblock Funds**
    **Case Numbers:  SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
    **Reference Numbers:  ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear OFAC Licensing Officer:

This law firm has been retained to represent Rusaviainvest, OOO (the "Company" or "Rusaviainvest") in connection with the Company's above-referenced applications for licenses to unblock funds in the total amount of $1,400,000, wired by the Company to purchase a used aircraft from Uzbekistan Airways, Uzbekistan's national air carrier. A copy of the contract to purchase the aircraft (the "Contract") and a copy of the invoice for purchase (the "Invoice") are annexed hereto as Exhibits A and B. I am writing to supplement the information provided by the Company in its applications to unblock the funds, dated April 24, 2017, May 5, 2017, and May 19, 2017, which are annexed hereto as Exhibits C, D, and E. Under the terms of the Contract, the Company is required to pay liquidated damages for any delay in payment. Such damages are accruing. *See* Exhibit A at ¶¶11.1-11.6.

## Background of the Company and the Transaction

Rusaviainvest engages in the business of wholesale trading of transportation vehicles, including airplane spare parts and engines, and also contracts for the maintenance and repair of such vehicles, including aircraft. The Company's office is located in Moscow, Russia with the address: 25, 1st Soviet Side Street, Schelkovo, Moscow, 14110, Russia. The Company is 100% owned by Andrei Vorobev, who is also its CEO and only officer. (Mr. Vorobev's Russian Federation passport is annexed hereto as Exhibit F). The purpose of the transaction was for the Company to sell the parts of the aircraft.

AR 0637

The Company has been in business since 2008, and has eight employees. The Company does not deal in weapons, arms, or military equipment and does not do business with any Country's military or any military organization. Prior to above-referenced matter, Rusaviainvest has never had any of its funds relating to any of its transactions blocked by OFAC.

The Company should not be confused with a company with a similar name, "Rusavia, Ltd." whose website is en.rusavia.com, which, according to the website, deals in a "Russian-American project" titled "Warplanes to Syria." In contrast, Rusaviainvest, Ltd. does not deal with military equipment or weaponry.

### The Wired Funds and Blocking of those Funds

Pursuant to the Contract and Invoice, on March 30, 2017, the Company sent a wire of $200,000 and on March 31, 2017, the Company sent a wire of $1,000,000, through its bank, Absolut Bank, with the intended recipient bank as JPMorgan Chase Bank, N.A. (*See* Exhibits G and H). Absolut Bank subsequently informed the Company that the transactions were "BLOCKED AS PER OFAC." (*See id.*). Absolut Bank later informed the Company that "THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL TERRORISM SANCTIONS REGULATIONS." (*See* Exhibits I and J).

Pursuant to the same Contract and Invoice, on April 10, 2017, the Company sent a wire of $200,000 through its bank, Absolut Bank, with the intermediary bank as JPMorgan Chase Bank, NA and with the receiving institution as Deutsche Bank Trust Company Americas. (*See* Exhibit I). Absolut Bank subsequently informed the Company that the transaction was not completed "DUE TO PENDING FURTHER REVIEW BY COMPLIANCE UNIT OR DEUTSCHE BANK COMPLIANCE POLICY. . . . WE WILL DEBIT YOUR ACCOUNT AND PLACE FUNDS INTO A SUSPENSE ACCOUNT AT DEUTSCHE BANK TRUST COMPANY." (*See* Exhibit K). Absolut Bank later informed the Company that "THE FUNDS HAVE BEEN PLACED INTO A BLOCKED ACCOUNT AT DEUTSCHE BANK TRUST COMPANY. . . . WE ARE PROHIBITED FROM RETURNING BLOCKED FUNDS UNTIL SUCH TIME AS OFAC ISSUES A LICENSE PERMITTING RELEASE OF THESE FUNDS." (*See* Exhibit L).

Additional records evidencing the wire transfers are annexed hereto as Exhibits M, N, and O.

### The Funds Should be Unblocked

The case numbers assigned to the blocking of the funds suggest that the compliance departments of JPMorgan Chase and Deutsche Bank believed that the parties to the transaction or the purposes of the transaction in some way violated the Russian/Ukranian Sanctions Program or the Global Terrorism Sanctions Program. We respectfully submit that the funds were blocked in error.

*First*, as stated above, the purpose of the transaction was to obtain the used aircraft from the Uzbekistan national air carrier to sell its spare parts for commercial purposes. The Company

does not trade with any military agency or organization and has absolutely nothing to do with any terrorist organization.

*Second*, the owner of the Company is not an SDN. He is not affiliated with any SDNs, nor does he do business with any SDNs. None of the Company's employees is an SDN. Furthermore, to the extent there is any confusion, as stated above, the Company has nothing to do with Rusavia, Ltd.

#### Conclusion

Because the Company has done nothing to violate any OFAC sanctions program, and because it is now facing substantial financial hardship as a result of the blocking of those funds, we respectfully request that the funds be unblocked and delivered to Uzbekistan's national air carrier, Uzbekistan Airways. In the alternative, if the transaction is being blocked due to Uzbekistan Airways, we respectfully request the funds be returned to the Company.

I would appreciate communication from your office in order to address any questions or concerns, or to provide additional documentation, if desired.

If you have questions, please feel free to contact me.

Very truly yours,

Eric Creizman

Enclosures

# EXHIBITS

**Exhibit A**

AR 0642

| AGREEMENT № 1 ON SALE-PURCHASE OF AIRCRAFT | ДОГОВОР № 1 КУПЛИ-ПРОДАЖИ ВОЗДУШНОГО СУДНА |
|---|---|
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city          "  " 2016 | Ташкент          "  " 2016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter - "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушного судна (далее - «Договор») заключен в г. Ташкенте между: |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION (hereinafter - "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company "RUSAVIAINVEST" Ltd. (hereinafter "Purchaser"), having its legal address at 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией ООО «РУСАВИАИНВЕСТ» (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" (hereinafter - "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «O'ZBEKISTON HAVO YO'LLARI» (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тяна В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |

| | |
|---|---|
| **HEREBY IT IS AGREED** the following: | **НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ** о следующем: |
| **1. DEFINITIONS AND THEIR INTERPRETATION** | **1. ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
| **Act of assessment of the technical condition of aircraft** means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | **Акт технического осмотра воздушного судна** - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путем его инспектирования и подтверждения подписями представителей Участника и Покупателя; |
| **Act of acceptance-transfer of aircraft** (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment No. 2) | **Акт приема-передачи воздушного судна** (далее по тексту Договора – «Акт приема-передача») - документ, подтверждающий факт приема и передачи воздушного судна, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложение № 2) |
| **Aircraft** means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No. 3 | **Воздушное судно** - описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по воздушному судну, указанному в приложении № 3 |
| **Aircraft documentation** means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | **Документация по воздушному судну** - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| **Business Day** means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | **Рабочий день** - любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| **Delivery** means transfer of title on aircraft from Participant to Purchaser under this Agreement. | **Поставка** - передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| **Aircraft condition at delivery "as is, where is"** means technical condition of aircraft, at the moment of its Delivery. | **Состояние воздушного судна при поставке «как есть, где есть»** - техническое состояние воздушного судна на момент Поставки |
| **Delivery date** means the day, which is Business Day and on which the aircraft delivery occurs. | **Дата поставки** - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |

| | |
|---|---|
| Partial aircraft loss means partial damages of aircraft which are not the causes of total aircraft loss. | Частичная потеря воздушного судна - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |
| Sale Documents include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже - включают в себя настоящий Договор, Акт приёма-передачи воздушного судна, и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора. |

## 2.  AGREEMENT SUBJECT

| | |
|---|---|
| 2.  **AGREEMENT SUBJECT** | 2.  **ПРЕДМЕТ ДОГОВОРА·** |
| 2.1  According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Aircompany "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft A-310 MSN 706 to the possession of Purchaser under Attachments No. 1, being the integral part of this Agreement, in condition "as is, where is", Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1  В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90), Распоряжением Президента Республики Узбекистан от 14.07.2015г № Р-4502, Продавец и Участник передают в собственность Покупателю воздушное судно А-310 заводской № 706 согласно Приложению №1, являющемуся неотъемлемой частью настоящего Договора, в состоянии «как есть, где есть», а Покупатель принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2  At the execution of this Agreement the aircraft is the property of the Republic of Uzbekistan, is not in any pledge, and there is no any encumbrance on it. | 2.2  Воздушное судно на момент заключения настоящего Договора является собственностью Республики Узбекистан, не находится в залоге и на него отсутствуют какие-либо обременения. |
| 2.3  Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3  Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушное судно, свободное и чистое от каких-либо прав третьих лиц. |
| 2.4  Aircraft shall be passed under act of acceptance-transfer, executed in accordance with the Attachment No. 2, in completeness according to the accompanying technical documentation. | 2.4.  Воздушное судно передаётся по акту приема-передачи, оформленным в соответствии с Приложением № 2, в комплектации согласно сопроводительной технической документации. |
| 2.5  Title on aircraft shall be transferred to Purchaser upon receiving the money on currency account of Participant and signing the Act of acceptance-transfer for aircraft by it under paragraph 4.3 of this Agreement. | 2.5.  Право собственности на воздушное судно переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пунк·у 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

AR 0645

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments to it, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft.<br><br>Attachments to this Agreement are its integral part and have equal legal effect with it. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора.<br>Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательств Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

AR 0646

3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail.

3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу.

3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement.

3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора.

3.8 Participant's obligation to deliver aircraft shall be conditional on satisfaction its preliminary conditions with Purchaser.

3.8 Обязательство Участника поставить воздушное судно обусловлено выполнением его предварительной договоренности с Покупателем.

3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant.

3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником.

3.10 Purchaser's obligation to accept aircraft delivery in condition "as is, where is" shall be conditional on satisfaction its preliminary conditions with Seller and Participant.

3.10 Обязательство Покупателя принять поставку воздушного судна в состоянии «как есть, где есть» обусловлено выполнением его предварительной договоренности с Продавцом и Участником.

3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser.

3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем.

## 4. PRICE AND PAYMENT ORDER

## 4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ

4.1 Price of aircraft in total is indicated in Attachments No. 1 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement.

4.1 Выкупная цена за воздушное судно в целом указана в Приложении №1 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора.

4.2 Price of aircraft is the following: A-310 MSN 706 - 2,000,000.00 US dollars;

4.2 Выкупная цена воздушного судна составляет: A-310 заводской № 706 - 2 000 000 долларов США;

4.3 · In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircraft and signs the acts of technical inspection of aircraft. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways".

4.3 В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушного судна и подписывает Акт технического осмотра воздушного судна, и в течение 10 рабочих дней, с даты подписания данного Акта, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари».

4.4 Net amount of payment for aircraft shall be transferred to the currency account of the Participant in US Dollars.

4.4 Чистая сумма выкупного платежа за воздушное судно должна быть переведена в Долларах США на банковский счет Участника.

4.5 Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 3655 US dollars as well as payment for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment.

4.5. Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 3 462,07 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты.

4.6 Date of money receiving on the currency account of the Participant shall be considered as date of payment.

4.6. Датой оплаты считается дата поступления денежных средств на валютный счет Участника.

## 5. SELLER'S OBLIGATIONS

## 5 ОБЯЗАТЕЛЬСТВА ПРОДАВЦА

5.1 Seller undertakes to make registration of this Agreement.

5.1 Продавец обязуется произвести регистрацию настоящего Договора.

## 6. PURCHASER'S RIGHTS AND OBLIGATIONS

## 6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ

6.1 Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft before inspection of its technical condition and before date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery.

6.1 Покупатель или его представители имеют право произвести "предварительный осмотр" воздушного судна до проведения инспекции его технического состояния и до даты Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по хранению воздушного судна на момент Поставки.

6.2 After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of aircraft on or before the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the

6.2 После подписания настоящего договора, Покупатель на свой счет имеет право произвести инспекцию технического состояния воздушного судна на момент или до даты Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция

| | |
|---|---|
| date and in such place that shall be agreed by the Participant and Purchaser. | будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель. |
| Inspection shall include: | Инспекция должна включать: |
| 1. physical inspection of technical documentation of aircraft; | 1. физическую инспекцию технической документации на воздушное судно; |
| 2. physical inspection of aircraft: | 2. физическую инспекцию воздушного судна: |
| (a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine as well as full; | (a) выполнение полной видео-инспекции бароскопом (A) компрессоров низкого и высокого давления и (B) зоны турбины двигателей; |
| (b) engines starting in accordance with relevant maintenance manual; | (b) выполнение запусков двигателей в соответствии с применимым руководством по техническому обслуживанию; |
| (c) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable; | (c) проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо; |
| 6.3 If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement. | 6.3 При неудовлетворительных результатах инспекция, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор. |
| 6.4 Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant. | 6.4 Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника. |
| 6.5 Purchaser shall make payment in amount of aircraft price as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement. | 6.5 Покупатель производит оплату в размере выкупного платежа за воздушное судно, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3 и 11.3 настоящего Договора. |

AR 0649

| | |
|---|---|
| 6.6 Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days from the moment of invoice receiving. | 6.6 Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5. настоящего Договора. |
| 6.7 Purchaser shall make acceptance of aircraft and its technical documentation under this Agreement. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser. . | 6.7 Покупатель, на условиях настоящего Договора осуществляет приемку воздушного судна и его технической документации. Результаты приема-передачи воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем. |
| 6.8 Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser. | 6.8 Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного суда с момента перехода воздушного судна в собственность Покупателя. |
| 6.9 Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country. | 6.9 Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя. |
| **7. RIGHTS AND OBLIGATIONS OF PARTICIPANT** | **7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА** |
| 7.1 Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft. | 7.1 Участник совместно с Покупателем до момента подписания настоящего Договора произведёт осмотр воздушного судна |
| 7.2 Participant shall agree with Purchaser the date and time of inspection of technical condition of aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days. | 7.2 Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния воздушного судна, а также окажет содействие в её проведения в течение 10 последующих дней. |
| 7.3 Participant shall agree with Purchaser the date of Delivery of aircraft and transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation. | 7.3 Участник согласует с Покупателем дату Поставки воздушного судна и передаст Покупателю воздушное судно с оформлением Акта приема-передачи на воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушного судна в стране ввоза. |
| 7.4 Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection | 7.4 Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в |

| | |
|---|---|
| of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate this Agreement. | ходе технической инспекции воздушного судна и извещения Покупателя о принятом решении Участника: (a) устранить выявленные недостатки за счет Участника; или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5　Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5　Участник устранит недостатки, выявленные Покупателем в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6　Participant shall provide performing of all formalities (including customs procedures), set for aircraft export from the country of Seller. | 7.6　Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7　Participant shall inform Purchaser in writing during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7　Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8　Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8　Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1　Transfer of aircraft shall be performed by Participant on the terms "FCA International airport Tashkent", Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1.　Передача воздушного судна будет осуществлена Участником на условиях «FCA – Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2　Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2　Датой передачи воздушного судна считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3　Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser | 8.3　Акт приёма-передачи воздушного судна подписывается Участником и |

| AGREEMENT № ⸰ ON SALE-PURCHASE OF AIRCRAFT | ДОГОВОР № ⸰ КУПЛИ-ПРОДАЖИ ВОЗДУШНОГО СУДНА |
|---|---|
| BETWEEN | МЕЖДУ |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ |
| AND COMPANY "RUSAVIAINVEST" | И КОМПАНИЕЙ «РУСАВИАИНВЕСТ» |
| WITH PARTICIPATION | С УЧАСТИЕМ |
| OF THE NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" | НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «УЗБЕКИСТОН ХАВО ЙУЛЛАРИ» |
| Tashkent city ⸰⸰ ⸰ 2016 | Ташкент ⸰⸰ ⸰2016 |
| THE PRESENT AGREEMENT of sale-purchase of aircraft (hereinafter - "Agreement") is executed in Tashkent between: | НАСТОЯЩИЙ ДОГОВОР купли-продажи воздушного судна (далее - «Договор») заключен в г. Ташкенте между: |
| STATE COMMITTEE OF THE REPUBLIC OF UZBEKISTAN FOR PRIVATIZATION, DEMONOPOLIZATION AND DEVELOPMENT OF COMPETITION (hereinafter – "Seller"), having its legal address at 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, represented by the First Deputy Chairman S.X.Gafarov, acting under Statute and Order No. 174k-LS dated 04.12.2014, | ГОСУДАРСТВЕННЫМ КОМИТЕТОМ РЕСПУБЛИКИ УЗБЕКИСТАН ПО ПРИВАТИЗАЦИИ, ДЕМОНОПОЛИЗАЦИИ И РАЗВИТИЮ КОНКУРЕНЦИИ (далее - «Продавец»), имеющим юридический адрес: 100003, Республика Узбекистан, г. Ташкент, проспект Узбекистанский, 55, в лице Первого заместителя Председателя С.Х.Гафарова, действующего на основании Положения и приказа от 04.12.2014г., №174к-ЛС; |
| company "RUSAVIAINVEST" Ltd. (hereinafter – "Purchaser"), having its legal address at 25, 1ˢᵗ Soviet side street, Shchelkovo, Moscow, 141100 Russia, represented by the Director General A.K.Vorobyev, acting under Statute, | компанией ООО «РУСАВИАИНВЕСТ» (далее - «Покупатель»), имеющей юридический адрес: 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, в лице Генерального директора Воробьёва А.К., действующего на основании Устава; |
| with participation of the NATIONAL AIRCOMPANY OF THE REPUBLIC OF UZBEKISTAN "UZBEKISTAN AIRWAYS" (hereinafter – "Participant"), having its legal address at 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan, represented by the Director General V.N.Tyan, acting under Statute | с участием НАЦИОНАЛЬНОЙ АВИАКОМПАНИИ РЕСПУБЛИКИ УЗБЕКИСТАН «О'ZBEKISTON HAVO YO'LLARI» (далее - «Участник»), имеющей юридический адрес: 100060, Республика Узбекистан, г. Ташкент, проспект Амира Темура, 41, в лице Генерального директора Тян В.Н., действующего на основании Устава. |
| Collectively hereinafter they are named as "Parties" and individually as "Party" | Все вместе именуемые как «Стороны» и каждая по отдельности «Сторона». |

| HEREBY IT IS AGREED the following: | НАСТОЯЩИМ ДОСТИГНУТО СОГЛАШЕНИЕ о следующем: |
|---|---|
| **1. DEFINITIONS AND THEIR INTERPRETATION** | **1. ОПРЕДЕЛЕНИЯ И ИХ ИНТЕРПРЕТАЦИЯ** |
| Act of assessment of the technical condition of aircraft means document, presenting the results of mutual assessment of actual technical condition and completeness of aircraft through its inspection and confirmation by signatures of representatives of the Participant and the Purchaser | Акт технического осмотра воздушного судна - документ, отражающий результаты совместной оценки фактического технического состояния и комплектности воздушного судна путём его инспектирования и подтверждения подписями представителей Участника и Покупателя. |
| Act of acceptance-transfer of aircraft (hereinafter – "Act of acceptance-transfer") means document evidencing the fact of acceptance and transfer of aircraft and being the integral part of this Agreement, confirmed by signatures of representatives of the Participant and the Purchaser (Attachment No. 2) | Акт приема-передачи воздушного судна (далее по тексту Договора – «Акт приема-передачи») - документ, подтверждающий факт приема и передачи воздушного судна, являющийся неотъемлемой частью настоящего Договора, подтвержденный подписями представителей Участника и Покупателя. (Приложение № 2) |
| Aircraft means description of aircraft, including individual references to all engines, parts and documentation on aircraft, listed in Attachments No. 3 | Воздушное судно - описание воздушного судна, включая отдельные ссылки на все двигатели, части и документацию по воздушному судну, указанному в приложении № 3 |
| Aircraft documentation means all log books, records, manuals and other documents, to this Agreement, and all addendums, renewals and amendments made on them before transferring the aircraft to Purchaser. | Документация по воздушному судну - все бортовые журналы, записи по воздушному судну, руководства и другие документы, к настоящему Договору, и все дополнения, обновления и замены, сделанные по ним до передачи воздушного судна Покупателю. |
| Business Day means any day other than a Saturday, Sunday or holidays, on which banks are opened for business in all cities, mentioned in this Agreement. | Рабочий день – любой день, кроме субботы или воскресенья, либо праздников, на который банки открыты для бизнеса во всех городах, указанных в настоящем Договоре. |
| Delivery means transfer of title on aircraft from Participant to Purchaser under this Agreement. | Поставка - передача права собственности на воздушное судно от Участника к Покупателю согласно настоящему Договору. |
| Aircraft condition at delivery "as is, where is" means technical condition of aircraft, at the moment of its Delivery. | Состояние воздушного судна при поставке «как есть, где есть» - техническое состояние воздушного судна на момент Поставки |
| Delivery date means the day, which is Business Day and on which the aircraft delivery occurs. | Дата поставки - дата, которая является рабочим днем и на которую происходит поставка воздушного судна. |

| | |
|---|---|
| Partial aircraft loss means partial damages of aircraft which are not the causes of total aircraft loss. | Частичная потеря воздушного судна - частичные повреждения воздушного судна, которые не являются причиной полной утраты воздушного судна. |
| Sale Documents include this Agreement, Act of acceptance-transfer of aircraft and any written document, agreed by the Parties and amended or added any of above mentioned documents of this Agreement. | Документы по продаже - включают в себя настоящий Договор, Акт приёма-передачи воздушного судна, и любое письменное соглашение, согласованное Сторонами, изменяющее или дополняющее любой из вышеуказанных документов настоящего Договора. |

## 2. AGREEMENT SUBJECT / 2. ПРЕДМЕТ ДОГОВОРА·

| | |
|---|---|
| 2.1 According to the resolution of the Interdepartmental Commission on considering the matters and preparing the conclusions regarding write-off of fixed assets of the National Aircompany "Uzbekistan Airways" (Protocol No. 90 dated 18.06.2015) and Order of the President of the Republic of Uzbekistan No. R-4502 dated 14.07.2015, the Seller and Participant shall transfer aircraft A-310 MSN 706 to the possession of Purchaser under Attachments No. 1, being the integral part of this Agreement, in condition "as is, where is", Purchaser shall pay its price and accept it in accordance with the terms and in order, provided for by this Agreement. | 2.1 В соответствии с заключением Межведомственной комиссии по рассмотрению вопросов и подготовке заключений о списании с баланса НАК «Узбекистон хаво йуллари» основных средств (протокол от 18.06.2015г № 90), Распоряжением Президента Республики Узбекистан от 14.07.2015г № Р-4502, Продавец и Участник передают в собственность Покупателю воздушное судно А-310 заводской № 706 согласно Приложению №1, являющемуся неотъемлемой частью настоящего Договора, в состоянии «как есть, где есть», а Покупатель принимает его в соответствии с условиями и порядком, предусмотренным настоящим Договором. |
| 2.2 At the execution of this Agreement the aircraft is the property of the Republic of Uzbekistan, is not in any pledge, and there is no any encumbrance on it. | 2.2 Воздушное судно на момент заключения настоящего Договора является собственностью Республики Узбекистан, не находится в залоге и на него отсутствуют какие-либо обременения. |
| 2.3 Subject to the provisions of this Agreement Seller shall transfer to Purchaser upon Delivery the title on aircraft, free and clear of any rights of third parties. | 2.3 Согласно статьям настоящего Договора, Продавец передаёт Покупателю при Поставке право собственности на воздушное судно, свободное и чистое от каких-либо прав третьих лиц. |
| 2.4 Aircraft shall be passed under act of acceptance-transfer, executed in accordance with the Attachment No. 2, in completeness according to the accompanying technical documentation. | 2.4. Воздушное судно передаётся по акту приема-передачи, оформленным в соответствии с Приложением № 2, в комплектации согласно сопроводительной технической документации. |
| 2.5 Title on aircraft shall be transferred to Purchaser upon receiving the money on currency account of Participant and signing the Act of acceptance-transfer for aircraft by it under paragraph 4.3 of this Agreement. | 2.5. Право собственности на воздушное судно переходит к Покупателю после поступления денежных средств на валютный счет Участника согласно пункту 4.3. настоящего Договора и подписания им акта приема-передачи каждого воздушного судна. |

AR 0654

| 3. GENERAL PROVISIONS | 3. ОБЩИЕ ПОЛОЖЕНИЯ |
|---|---|
| 3.1 This Agreement, including Attachments to it, constitutes the entire agreement, which cancels and prevails over any previous understandings, agreements or decisions, whether oral or written, between the Parties with respect to the subject matter of the Aircraft.<br><br>Attachments to this Agreement are its integral part and have equal legal effect with it. | 3.1. Настоящий Договор, включая Приложения к нему, представляет собой полное соглашение, которое отменяет и превалирует над всеми предыдущими договоренностями, соглашениями или решениями, устными или письменными, между Сторонами относительно предмета настоящего Договора.<br>Приложения к настоящему Договору являются его неотъемлемой частью и имеют одинаковую с ним юридическую силу. |
| 3.2 All terms and conditions of this Agreement are binding on and are applied to the Parties, their relevant legal successors or persons, to whom corresponding rights and/or obligations of the Parties may be assigned under mutual consent between the Parties. | 3.2 Все положения и условия настоящего Договора имеют обязательный характер и применяются по отношению к Сторонам, их соответствующим правопреемникам или лицам, которым по взаимному согласованию между Сторонами могут быть переданы их соответствующие права и/или обязательства. |
| 3.3 Neither Seller, nor Purchaser may assign the rights and obligations under this agreement in whole or partially without prior written consent of other Parties. Assignment of the rights and obligations, made with breach of terms of this Agreement, shall be considered as invalid and illegal. Non-agreed assignment of whole or any part of rights under this Agreement shall not discharge assigning Party from obligations under this Agreement unless such discharge was expressly submitted in written by other Parties. | 3.3 Ни Продавец, ни Покупатель, ни Участник не могут передавать полностью или частично права и обязательства по настоящему Договору без предварительного письменного согласия других Сторон. Передача прав и обязательств, осуществленная с нарушением условий настоящего Договора, признается не действительной и не имеющей юридической силы. Не согласованная, не запланированная передача всех или какой-либо части прав по настоящему Договору не освобождает передающую Сторону от обязательств по настоящему Договору, если такое освобождение от обязательств не было явным образом в письменной форме предоставлено другими Сторонами. |
| 3.4 This Agreement shall become effective upon its signing by the Parties and registration in authorized bodies of the Republic of Uzbekistan and shall be valid till full performing the obligations by the Parties. | 3.4. Настоящий Договор вступает в силу с момента его подписания Сторонами и регистрации в уполномоченных органах Республики Узбекистан и действует до полного выполнения обязательства Сторонами. |
| 3.5 The Parties have agreed that all correspondence under this Agreement shall be made in Russian and English. | 3.5 Стороны пришли к соглашению, что документооборот по исполнению Сторонами условий настоящего Договора составляется на русском и английском языках. |

3.6 This Agreement and its Attachments, being its integral part, are executed in Russian and English in three counterparts, having equal legal effect, one counterpart for each Party. In the case of any discrepancies between texts in Russian and English the text in Russian shall prevail.

3.6 Настоящий Договор и Приложения к нему, являющиеся его неотъемлемой частью, составлены на русском и английском языках в трех экземплярах, имеющих одинаковую юридическую силу, по одному экземпляру для каждой из Сторон. В случае разногласий между русским и английским языком, текст на русском языке имеет преимущественную силу.

3.7 Amendments, addendums to this Agreement shall be only valid, if they are executed in written, signed by authorized representatives of the Parties and registered according to the paragraph 3.4 of this Agreement.

3.7 Изменения, дополнения к настоящему Договору будут действительны только в том случае, если составлены в письменной форме и подписаны полномочными представителями всех Сторон и зарегистрированы в соответствии с пунктом 3.4. настоящего Договора.

3.8 Participant's obligation to deliver aircraft shall be conditional on satisfaction its preliminary conditions with Purchaser.

3.8 Обязательство Участника поставить воздушное судно обусловлено выполнением его предварительной договоренности с Покупателем.

3.9 Purchaser has agreed to take commercially reasonable efforts to perform preliminary conditions with Participant.

3.9 Покупатель соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Участником.

3.10 Purchaser's obligation to accept aircraft delivery in condition "as is, where is" shall be conditional on satisfaction its preliminary conditions with Seller and Participant.

3.10 Обязательство Покупателя принять поставку воздушного судна в состоянии «как есть, где есть» обусловлено выполнением его предварительной договоренности с Продавцом и Участником.

3.11 Participant has agreed to take commercially reasonable efforts to perform preliminary conditions with Purchaser.

3.11 Участник соглашается предпринять коммерчески обоснованные усилия для обеспечения выполнения предварительной договорённости с Покупателем.

### 4. PRICE AND PAYMENT ORDER

### 4. ВЫКУПНАЯ ЦЕНА И ПОРЯДОК ЕЁ ОПЛАТЫ

4.1 Price of aircraft in total is indicated in Attachments No. 1 of this Agreement and shall be transferred to the currency account of the Participant under terms of this Agreement.

4.1 Выкупная цена за воздушное судно в целом указана в Приложении №1 настоящего Договора и должна быть переведена на валютный счет Участника в соответствии с условиями настоящего Договора.

4.2 Price of aircraft is the following: A-310 MSN 706 - 2,000,000.00 US dollars;

4.2 Выкупная цена воздушного судна составляет: A-310 заводской № 706 - 2 000 000 долларов США;

4.3    In accordance with provisions of this Agreement, after signing of it by the Parties, registration in authorized bodies of the Republic of Uzbekistan and after becoming effective under paragraph 3.4, the Payer shall make inspection of aircraft and signs the acts of technical inspection of aircraft. During 10 business days Payer shall make 100% direct advance payment to the currency account of the NAC "Uzbekistan Airways".

4.4    Net amount of payment for aircraft shall be transferred to the currency account of the Participant in US Dollars.

4.5    Purchaser shall reimburse Participant for any expenses related to assessment and expertise of assessment of aircraft in amount 3655 US dollars as well as amount for payment of custom procedures within the territory of the Republic of Uzbekistan in amount of 0,1% of customs valuation on the date of payment.

4.6    Date of money receiving on the currency account of the Participant shall be considered as date of payment.

## 5. SELLER'S OBLIGATIONS

5.1    Seller undertakes to make registration of this Agreement.

## 6. PURCHASER'S RIGHTS AND OBLIGATIONS

6.1    Purchaser or its representatives shall have the right for "preliminary inspection" of aircraft before inspection of its technical condition and before date of Delivery to confirm compliance with uninterrupted performing the regulation on aircraft storage at the moment of Delivery.

6.2    After execution of this Agreement Purchaser shall have the right for its own account to make inspection of technical condition of aircraft on or before the date of Delivery to receive evidence that aircraft satisfies the terms of Delivery. Such inspection shall be performed during 10 days from the

---

4.3    В соответствии с положениями настоящего Договора, после подписания Сторонами настоящего Договора, регистрации его в уполномоченных органах Республики Узбекистан и, после вступления Договора в силу в соответствии с п.3.4., Покупатель производит осмотр воздушного судна и подписывает Акт технического осмотра воздушного судна, и в течение 10 рабочих дней, с даты подписания данного Акта, осуществляет 100% предоплату в виде прямого платёжа на валютный счет НАК «Узбекистон хаво йуллари».

4.4    Чистая сумма выкупного платежа за воздушное судно должна быть переведена в Долларах США на банковский счет Участника.

4.5.    Покупатель возмещает Участнику расходы Участника, связанные с оценкой и экспертизой оценки воздушных судов в размере 3 462,07 долларов США, а также сумму по оплате таможенных процедур на территории Республики Узбекистан в размере 0,1% от таможенной стоимости на день оплаты.

4.6.    Датой оплаты считается дата поступления денежных средств на валютный счет Участника.

## 5 ОБЯЗАТЕЛЬСТВА ПРОДАВЦА

5.1    Продавец обязуется произвести регистрацию настоящего Договора.

## 6. ПРАВА И ОБЯЗАТЕЛЬСТВА ПОКУПАТЕЛЯ

6.1    Покупатель или его представители имеют право произвести "предварительный осмотр" воздушного судна до проведения инспекции его технического состояния и до даты Поставки, чтобы подтвердить соблюдение беспрерывного выполнения регламентов по хранению воздушного судна на момент Поставки.

6.2    После подписания настоящего договора, Покупатель за свой счет имеет право произвести инспекцию технического состояния воздушного судна на момент или до даты Поставки, чтобы убедиться, что воздушное судно соответствует условиям Поставки. Такая инспекция

date and in such place that shall be agreed by the Participant and Purchaser.

Inspection shall include:

1. physical inspection of technical documentation of aircraft;

2. physical inspection of aircraft:

(a) performing full video-inspection by baroscopic (A) high-pressure compressors and low-pressure compressors and (B) turbine zone of engine as well as full;

(b) engines starting in accordance with relevant maintenance manual;

(c) aircraft checking on presence of structural repairs and compliance of these repairs with Manufacturer's manual on structural repairs or Manufacturer's recommendations, as applicable;

6.3 If results of inspection are unsatisfied, then Purchaser on its own and sole discretion during ten (10) days shall make decision and notify the Seller about the fact that Purchaser will not purchase aircraft and cancels this Agreement.

6.4 Purchaser shall indemnify and hold Participant, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Purchaser in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Participant.

6.5 Purchaser shall make payment in amount of aircraft price as well as penalties (if any) in order and in form provided for in paragraphs 4.3 and 11.3 of this Agreement.

будет проведена в течение 10 дней с момента и в том месте, которые согласуют Участник и Покупатель.

Инспекция должна включать:

1. физическую инспекцию технической документации на воздушное судно;

2. физическую инспекцию воздушного судна:

(a) выполнение полной видео-инспекции бароскопом (А) компрессоров низкого и высокого давления и (В) зоны турбины двигателей;

(b) выполнение запусков двигателей в соответствии с применимым руководством по техническому обслуживанию;

(c) проверку воздушного судна на наличие структурных ремонтов и соответствие указанных ремонтов Руководству изготовителя по структурным ремонтам или Рекомендациям изготовителя, как применимо;

6.3 При неудовлетворительных результатах инспекции, по единоличному и исключительному решению Покупателя, Покупатель имеет десять (10) рабочих дней для принятия решения и извещения Продавца о том, что Покупатель не будет покупать воздушное судно и прерывает настоящий Договор.

6.4 Покупатель возместит и будет поддерживать освобождение Участника, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Покупателя в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна, согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Участника.

6.5 Покупатель производит оплату в размере выкупного платежа за воздушное судно, а также пени, в случае их возникновения, в порядке и в сроки, предусмотренные пунктами 4.3 и 11.3 настоящего Договора.

| | |
|---|---|
| 6.6   Purchaser shall reimburse the expenses of Participant, indicated in paragraph 4.5 of this Agreement during ten (10) business days from the moment of invoice receiving. | 6.6   Покупатель возмещает в течение 10 (десяти) рабочих дней с момента получения выставленных счетов расходы Участника, указанные в пункте 4.5. настоящего Договора. |
| 6.7   Purchaser shall make acceptance of aircraft and its technical documentation under this Agreement. Results of acceptance-transfer of aircraft shall be executed in form of Act of acceptance-transfer, signed by the Participant and Purchaser. | 6.7   Покупатель, на условиях настоящего Договора осуществляет приемку воздушного судна и его технической документации. Результаты приема-передачи воздушного судна оформляются двусторонним Актом приема-передачи, подписанным Участником и Покупателем. |
| 6.8   Purchaser shall bear all risks of loss, damage, technical condition and completeness of aircraft upon transferring the aircraft to the possession of Purchaser. | 6.8   Покупатель несёт все риски утраты, повреждения, технического состояния и комплектности воздушного судна с момента перехода воздушного судна в собственность Покупателя. |
| 6.9   Purchaser shall in its own account obtain official permissions, perform all customs formalities needed for aircraft import to the Purchaser's country. | 6.9   Покупатель за свой счет получает официальные разрешения, выполняет все таможенные формальности, необходимые для ввоза воздушного судна в страну Покупателя. |
| **7. RIGHTS AND OBLIGATIONS OF PARTICIPANT** | **7. ПРАВА И ОБЯЗАТЕЛЬСТВА УЧАСТНИКА ДОГОВОРА** |
| 7.1   Before signing this Agreement the Participant together with Purchaser shall make preliminary inspection of aircraft. | 7.1   Участник совместно с Покупателем до момента подписания настоящего Договора произведёт осмотр воздушного судна |
| 7.2   Participant shall agree with Purchaser the date and time of inspection of technical condition of aircraft by Purchaser's representatives as well as assist in its implementation during 10 next days. | 7.2   Участник согласует с Покупателем дату и время проведения представителями Покупателя инспекции технического состояния воздушного судна, а также окажет содействие в её проведении в течение 10 последующих дней. |
| 7.3   Participant shall agree with Purchaser the date of Delivery of aircraft and transfer the aircraft to Purchaser with execution of the Act of acceptance-transfer for aircraft as well as pass accompanying technical documentation and other documents and documents needed for Purchaser for customs clearance and registration of aircraft in the country of importation. | 7.3   Участник согласует с Покупателем дату Поставки воздушного судна и передаст Покупателю воздушное судно с оформлением Акта приема-передачи на воздушное судно, а также передаст сопроводительную техническую документацию и иные документы, а также документы, необходимые Покупателю для таможенной очистки и регистрации воздушного судна в стране ввоза. |
| 7.4   Participant shall have ten (10) business days from submitting the written application by Purchaser for consideration of discrepancies found by Purchaser during technical inspection | 7.4   Участник имеет десять (10) рабочих дней, с момента предъявления Покупателем письменного заявления, для рассмотрения недостатков выявленных Покупателем в |

| | |
|---|---|
| of aircraft and giving notification to Purchaser about its decision either (a) to rectify defects on account of Participant or (b) to decline the requirement on defects fixing and terminate this Agreement. | ходе технической инспекции воздушного судна и извещения Покупателя о принятом решении Участника: (a) устранить выявленные недостатки за счет Участника; или (b) отклонить требование по устранению выявленных недостатков или прервать настоящий Договор. |
| 7.5    Participant shall fix defects found by Purchaser during inspection of aircraft at its transfer during twenty (20) calendar days. | 7.5    Участник устранит недостатки, выявленные Покупателем в ходе технической инспекции воздушного судна при его передаче в течение 20 (двадцати) календарных дней. |
| 7.6    Participant shall provide performing of all formalities (including customs procedures), set for aircraft export from the country of Seller. | 7.6    Участник обеспечит выполнение всех формальностей (в том числе таможенных процедур), установленных при вывозе воздушного суда из страны Продавца. |
| 7.7    Participant shall inform Purchaser in writing during four (4) days about registration of this Agreement in authorized bodies of the Republic of Uzbekistan. | 7.7    Участник в 4-х дневной срок письменно уведомит Покупателя о регистрации настоящего Договора в уполномоченных органах Республики Узбекистан. |
| 7.8    Participant shall indemnify and hold Purchaser, its directors, officers, employees, agents and subcontractors harmless from any claims and losses resulted from death or body injury of some representative or employee of Participant in connection with any demonstrative flight or aircraft inspection under this Agreement unless they are caused by gross negligence or willful carelessness of Purchaser. | 7.8    Участник возместит и будет поддерживать освобождение Покупателя, его директоров, руководителей, работников, агентов и субподрядчиков от всех исков и потерь, возникших из-за смерти или травмы какого-либо представителя или работника Участника в связи с каким-либо демонстрационным полетом или инспекцией воздушного судна согласно данному Договору, если только они не вызваны грубой небрежностью или намеренной халатностью Покупателя. |
| **8. TERMS AND DATES OF AIRCRAFT TRANSFERRING** | **8. УСЛОВИЯ И СРОКИ ПЕРЕДАЧИ ВОЗДУШНЫХ СУДОВ** |
| 8.1    Transfer of aircraft shall be performed by Participant on the terms "FCA International airport Tashkent", Republic of Uzbekistan in accordance with "Incoterms-2010" | 8.1.    Передача воздушного судна будет осуществлена Участником на условиях «FCA – Международный аэропорт «Ташкент», Республика Узбекистан, в соответствии с «Инкотермс-2010». |
| 8.2    Date of signing the Act of acceptance-transfer of aircraft by representatives of Participant and Purchaser shall be considered as date of aircraft transfer. | 8.2    Датой передачи воздушного судна считается дата подписания Акта приема-передачи представителями Участника и Покупателя. |
| 8.3    Act of acceptance-transfer of aircraft shall be signed by Participant and Purchaser | 8.3    Акт приёма-передачи воздушного судна подписывается Участником и |

| | |
|---|---|
| after technical inspection of aircraft and fixing the found discrepancies by Participant. | Покупателем после проведения его технического осмотра и устранения Участником выявленных несоответствий. |
| **8.4** Fixing the discrepancies found during technical inspection of aircraft shall be performed by Participant during twenty (20) calendar days. | **8.4** Устранение недостатков, выявленных в ходе технической инспекции воздушного судна, будет осуществлено Участником в течение 20 (двадцати) календарных дней. |
| **8.5** Purchaser's representative shall have originals of power of attorney (in three exemplars) for aircraft obtaining and signing the Act of acceptance-transfer. | **8.5** Представитель Покупателя должен иметь оригиналы доверенности в трех экземплярах на право получения воздушного суда и подписания Акта приема-передачи. |
| **8.6** Risk of accidental loss or accidental damage of aircraft shall pass from Participant to Purchaser upon transferring the aircraft to the possession of Purchaser. | **8.6** Риск случайной утраты или случайного повреждения воздушного судна переходят от Участника к Покупателю с момента перехода воздушного судна в собственность Покупателя. |
| **8.7** In the place of acceptance-transfer of aircraft Purchaser on its own account shall make decoding of necessary equipment and remove registration and state marks in accordance with Aviation rules of the Republic of Uzbekistan unless otherwise agreed by the Parties. | **8.7** В пункте приема-передачи воздушного суда Покупатель за свой счет производит раскодировку необходимого оборудования и удаляет регистрационные, государственные опознавательные знаки и символики в соответствии с Авиационными правилами Республики Узбекистан, если иное не согласовано Сторонами. |

## 9. TECHNICAL DOCUMENTATION | 9 ТЕХНИЧЕСКАЯ ДОКУМЕНТАЦИЯ

| | |
|---|---|
| **9.1** Technical documentation (logbooks, passports etc.) for aircraft, power unit, aggregates and componentry as well as additional equipment shall be properly executed and passed by Participant to Purchaser in whole volume. | **9.1** Техническая документация (формуляры, паспорта и т.д.) на воздушное судно, силовые установки, агрегаты и комплектующие изделия, а также дополнительное оборудование должна быть оформлена соответствующим образом и передана Участником Покупателю в полном объёме. |
| **9.2** Technical documentation shall contain all exploitation records, executed in established order, total operating time for aircraft, engines, units and aggregates as well as signatures and seals of operating enterprises. | **9.2** Техническая документация должна содержать все эксплуатационные записи, оформленные в установленном порядке, итоговые наработки воздушного судна, двигателей, узлов и агрегатов, а также подписи и печати эксплуатационных предприятий. |
| **9.3** Passing the documentation shall be recorded in the Act of acceptance-transfer. | **9.3** Передача документации отражается в Акте приема-передачи. |

## 10 PARTIES' GUARANTEES | 10 ГАРАНТИИ СТОРОН

| | |
|---|---|
| **10.1** Each Party has all rights and authorities and has undertaken all necessary actions in | **10.1** Каждая из Сторон располагает всеми правами и полномочиями и предприняла |

accordance with its articles of association within the legislation in force for execution and performing this Agreement and for successful fulfillment of other actions provided for by this Agreement.

10.2 This Agreement is the legally executed instrument, valid and binding for fulfillment for each Parties and has legal force for each Parties in accordance with its provisions.

10.3 Purchaser confirms and ensures Seller and Participant that at date of signing this Agreement:

a) it is independent legal entity, properly established under the legislation of Russian Federation, and will carry out its activity regarding purchased aircraft according to the current legislation of state of registration;

b) persons, signing this Agreement on behalf of Purchaser, have been duly authorized;

c) it is not in process of any reorganization and doesn't assume the same that may materially adversely affect its relevant financial position or ability of Purchaser to perform obligations, set in this Agreement;

d) it has received all permissions of necessary governmental bodies in order to legally and efficiently carry out its business, and information advised to Seller regarding legal status of Purchaser is full and reliable.

все необходимые действия в соответствии со своими учредительными документами в рамках действующего законодательства для выполнения и оформления настоящего Договора, а также для успешного выполнения иных действий, предусмотренных настоящим Договором.

10.2 Настоящий Договор является юридически оформленным документом, действующим и обязательным к выполнению для каждой из Сторон и имеет юридическую силу в отношении каждой из Сторон в соответствии с его положениями.

10.3 Покупатель подтверждает и гарантирует Продавцу и Участнику, что на дату подписания настоящего Договора:

а) он является независимым юридическим лицом, надлежащим образом организованным по законодательству Российской Федерации, и будет осуществлять свою деятельность в отношении приобретаемого воздушного судна по действующему законодательству страны регистрации;

б) лица, подписывающие настоящий Договор от имени Покупателя, являются надлежащим образом уполномоченными;

в) он не находится в процессе какой-либо реорганизации или не предполагает таковую, которая могла бы существенно и неблагоприятно отразиться на его соответствующем финансовом положении или способности Покупателя выполнять обязательства, указанные в настоящем Договоре;

г) он располагает всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Продавцу в отношении правового статуса Покупателя, является полной и достоверной.

AR 0662

| | |
|---|---|
| 10.4 Seller and Participant confirm and ensure Purchaser that at date of signing this Agreement: | 10.4. Продавец и Участник подтверждают и гарантируют Покупателю, что на дату подписания настоящего Договора: |
| they are independent legal entity, properly established under the legislation of the Republic of Uzbekistan, and will carry out its activity regarding aircraft according to the current legislation of the Republic of Uzbekistan; | а) они являются независимыми юридическими лицами, надлежащим образом организованными по законодательству Республики Узбекистан, и будут осуществлять свою деятельность в отношении воздушного судна по действующему законодательству Республики Узбекистан; |
| persons, signing this Agreement on behalf of Purchaser, have been duly authorized; | б) лица, подписывающие настоящий договор от имени Продавца и Участника, являются надлежащим образом уполномоченными; |
| they are not in process of any reorganization which can't assume the same that may materially adversely affect its relevant financial position or ability of Seller and Participant to perform obligations, set in this Agreement; | в) они не находятся в процессе какой-либо реорганизации или не предполагается таковая, которая могла бы существенно и неблагоприятно отразиться на их соответствующем финансовом положении или способности Продавца и Участника выполнять обязательства, указанные в настоящем Договоре; |
| they have received all permissions of necessary governmental bodies in order to legally and efficiently carry out their business, and information advised to Purchaser regarding legal status of Seller and Participant is full and reliable. | г) они располагают всеми одобрениями всех необходимых государственных органов для того, чтобы законно и эффективно вести свою хозяйственную деятельность, а информация, сообщенная Покупателю в отношении правового статуса Продавца и Участника, является полной и достоверной. |
| 10.5 Parties mutually undertake to refrain from any actions that may result in situation when the Parties' Guarantees are not reliable or won't be performed. | 10.5. Стороны принимают взаимные обязательства воздерживаться от совершения каких-либо действий, вследствие которых Гарантии Сторон не будут являться истинными или не будут выполнены. |

| | |
|---|---|
| **11. RESPONSIBILITY OF THE PARTIES FOR BREACH OF OBLIGATION UNDER AGREEMENT** | **11. ОТВЕТСТВЕННОСТЬ СТОРОН ЗА НАРУШЕНИЕ ДОГОВОРНЫХ ОБЯЗАТЕЛЬСТВ** |
| 11.1 The Party unreasonably avoid performing its obligations under this Agreement, shall reimburse other Party all losses caused by this fact and documentary confirmed. | 11.1. Сторона, необоснованно уклоняющаяся от исполнения своих обязательств по настоящему Договору, должна возместить другой Стороне все возникающие от этого документально подтвержденные убытки. |

| | |
|---|---|
| 11.2   If after signing this Agreement any Party can't or doesn't comply with its obligation under this Agreement or if in any time after signing this Agreement any Party has known about any fact or event which shows that any Guarantee, set in this Agreement is incorrect or misleading or any obligation of the Parties was not or won't be observed, then in such cases the Party suffered shall have the right to judicially require invalidation or termination of this Agreement and payment of damages. | 11.2   Если после подписания настоящего Договора одна из Сторон не смогла или не соблюдает все свои обязательства по настоящему Договору или, если в любое время после подписания настоящего Договора одной из Сторон становится известно о каком-либо факте или событии, которое показывает, что какая-либо Гарантия, изложенная в настоящем Договоре, является неверной или вводящей в заблуждение или, что какое-либо обязательство Сторон не было или не будет соблюдено, то в любом таком случае потерпевшая Сторона вправе требовать признания недействительным или расторжения настоящего Договора в судебном порядке и возмещения понесенных убытков. |
| 11.3   In the case of late payments of aircraft price by Purchaser and reimbursement of expenses of Participant in accordance with paragraphs 4.3 and 4.5 of this Agreement Purchaser shall pay Participant the penalties in amount of 0.4% of outstanding payment per day of delay, but no more than 50% of outstanding amount. If Purchaser doesn't make payment of aircraft price and Participant' expenses, including penalties (if any) during three months after date, provided for in paragraphs 4.3 and 4.5, then Seller and Participant shall have the right to terminate this Agreement in established order. | 11.3   В случае несвоевременной оплаты Покупателем выкупного платежа и возмещения расходов Участника в соответствии с пунктами 4.3. и 4.5. настоящего Договора, Покупатель уплачивает Участнику пеню в размере 0,4% от суммы просроченного платежа за каждый день просрочки, но не более 50% суммы просроченного платежа. При этом если Покупателем в течение трех месяцев после окончания предусмотренного пунктами 4.3. и 4.5. срока не будет оплачен выкупной платеж и расходы Участника, а также пени (в случае возникновения), то Продавец и Участник вправе расторгнуть настоящий Договор в установленном порядке. |
| 11.4   In the case of Agreement termination due to Purchaser's break the amounts previously paid in aircraft price by Purchaser under this Agreement shall be returned by Participant to the Purchaser. At the same time Participant shall have the right to apply penalty in amount of 15% of aircraft price. Aircraft shall be returned to Participant by Purchaser. | 11.4   В случае расторжения настоящего Договора по инициативе Покупателя средства, ранее перечисленные Покупателем в счет оплаты выкупного платежа по настоящему Договору, возвращаются Участником Покупателю. При этом Участник применяет штраф в размере 15% от суммы выкупных платежей. Воздушное судно возвращается Покупателем Участнику. |
| 11.5   In the case of Agreement termination due to Purchaser's break the expense of Participant mentioned in paragraph 4.5 of this Agreement are not to be returned. | 11.5   В случае расторжения настоящего Договора по инициативе Покупателя расходы Участника, указанные в пункте 4.5. настоящего Договора, возврату не подлежат. |
| 11.6   Payment of penalty for non-fulfilment or improper fulfilment of provisions of this Agreement by the Parties shall not release | 11.6   Уплата неустойки за неисполнение или ненадлежащее исполнение Сторонами условий настоящего Договора не |

| Party in fault from performing obligations undertaken under this Agreement. | освобождает виновную Сторону от исполнения принятых на себя по Договору обязательств. |
|---|---|
| **12. APPLICABLE LAW, DISPUTE RESOLUTION** | **12 ПРИМЕНИМОЕ ПРАВО, РАЗРЕШЕНИЕ СПОРОВ** |
| 12.1 The law of the Republic of Uzbekistan is recognized as the governing law regarding possible disputes under this Agreement. | 12.1. Применимым правом в отношении возможных споров по настоящему договору Стороны признают право Республики Узбекистан. |
| 12.2 Any disputes, controversy or claims arisen out of or related to this Agreement or breach, termination or invalidation of this Agreement in the case of impossibility to reach mutual arrangement shall be considered in the courts of the Republic of Uzbekistan in accordance with the legislation of the Republic of Uzbekistan. Parties have undertaken to assume all necessary measures for resolving possible discrepancies through negotiations, submitting written claims before applying to court of justice. | 12.2. Любые споры, разногласия или претензии, возникающие или относящиеся к настоящему Договору, либо нарушение, прекращение действия или недействительность настоящего Договора, в случае невозможности достижения взаимной договоренности, рассматриваются в судах Республики Узбекистан в соответствии с законодательством Республики Узбекистан. Стороны берут на себя обязательства принять все необходимые меры для рассмотрения возможных разногласий путем переговоров, предъявления письменных претензий перед обращением в судебные органы. |
| 12.3 Existence of dispute, controversies or claims, as well as impending legal proceedings shall not release any Party from fulfilment of its relevant obligations under this Agreement by it. | 12.3 Наличие спора, разногласий или претензий, равно как и предстоящее рассмотрение дела в суде не освобождает ни одну из Сторон от выполнения ею соответствующих обязательств в соответствии с настоящим Договором. |
| 12.4 Claiming order of pre-trial consideration of dispute is mandatory. Period of reply on claim received is equal 30 calendar days. | 12.4 Претензионный порядок досудебного рассмотрения спора является обязательным. Срок ответа на полученную претензию - 30 календарных дней. |
| 12.5 On matters arisen at performing, amendment or termination of this Agreement and not provided for in this Agreement the Parties shall be guided by current legislation of the Republic of Uzbekistan. | 12.5 В вопросах, возникающих при исполнении, изменении либо расторжении настоящего Договора и не предусмотренных настоящим Договором, Стороны руководствуются действующим законодательством Республики Узбекистан. |
| **13. FORCE MAJEURE** | **13 ФОРС-МАЖОР** |
| 13.1 Neither Party bears responsibility before other ones for non-fulfilment of obligations due to events of force majeure, caused by circumstances arisen without Parties' will and desire, which might not be foreseen or avoid, including declared or actual war, civil strife, epidemic, embargo, earthquake, flood, fires and other Acts of God. | 13.1 Ни одна из Сторон не несет ответственности перед другой Стороной за невыполнение обязательств вследствие событий непреодолимой силы, обусловленных обстоятельствами, возникшими помимо воли и желания Сторон, которые нельзя предвидеть или избежать, включая объявленную или фактическую войну, |

AR 0665

| | гражданские волнения, эпидемии, блокаду, эмбарго, землетрясения, наводнения, пожары и другие стихийные бедствия. |
|---|---|
| 13.2 Certificate issued by relevant authorized body of state of the Party is sufficient confirmation of existence and duration of event of force majeure. | 13.2. Свидетельство, выданное соответствующим и уполномоченным органом государства Стороны Договора, является достаточным подтверждением наличия и продолжительности действия события непреодолимой силы. |
| 13.3 Party that doesn't perform its obligations shall during thirty (30) days give the notice about restriction and its influence on obligations fulfilment under Agreement to other Parties. | 13.3 Сторона, которая не исполняет своего обязательства, должна, в течение 30 (тридцати) дать другой Стороне письменное извещение дней о препятствии и его влиянии на исполнение обязательств по Договору. |
| 13.4 If force majeure circumstances exist during three (3) successive months and don't show cessation signs, then this Agreement may be terminated by the Parties through giving the notice to other Parties. | 13.4 Если обстоятельства непреодолимой силы действуют на протяжении 3 (трех) последовательных месяцев и не обнаруживают признаков прекращения, настоящий Договор может быть расторгнут Сторонами путем направления уведомления другой ( тороне. |

| 14 LEGAL ADDRESSES, REQUISITES AND SIGNATURES OF THE PARTIES | 14. ЮРИДИЧЕСКИЕ АДРЕСА, РЕКВИЗИТЫ И ПОДПИСИ СТОРОН |
|---|---|
| **SELLER** | **ПРОДАВЕЦ** |
| State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition | Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции |
| 55, Uzbekistan avenue, Tashkent, 100003, Republic of Uzbekistan, | Республика Узбекистан 100003, г. Ташкент, пр. Узбекистанский, 55 |
| Currency account [redacted] 9002 | Валютный счет [redacted] 39002 |
| RKC Main Tashkent city branch of the Central bank of the Republic of Uzbekistan | РКЦ Главное Ташкентское городское управление Центрального Банка РУз, |
| Bank code 00014, Individual Nqumber of tax Payer | код 00014, ИНН [redacted] |
| First Deputy Chairman | Первый заместитель председателя |
| _signature_ S.X.Gafarov | _signature_ Гафаров С.Х |
| Company seal | м.п. |

| **PURCHASER** | **ПОКУПАТЕЛЬ** |
|---|---|
| "RUSAVIAINVEST" Ltd. | ООО «РУСАВИАИНВЕСТ» |
| 25, 1st Soviet side street, Shchelkovo, Moscow, 141100 Russia, | 141100 Россия, г. Москва, Щелково, 1-й Советский переулок, 25, |
| Tel (+7 495) 777-18-70, факс (+7 495) 544-43-75 | Тел (+7 495) 777-18-70, факс (+7 495) 544-43-75 |
| rusaviainvest@mail.ru | rusaviainvest@mail.ru |
| CORRESPONDENT BANK: | CORRESPONDENT BANK: |
| JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA | JPMORGAN CHASE BANK N.A, NEW YORK, NY, USA |
| SWIFT: CHASUS33XXX | SWIFT: CHASUS33XXX |
| ACCOUNT WITH CORRESPONDENT BANK: [redacted] 0991 | ACCOUNT WITH CORRESPONDENT BANK: [redacted] 0991 |
| BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM | BENEFICIARY'S BANK: ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM |
| BENEFICIARY'S ACCOUNT.: [redacted] 3843 | BENEFICIARY'S ACCOUNT.: [redacted] 3843 |
| Director General | Генеральный директор |
| _signature_ A.K.Vorobyev | _signature_ Воробьёв А.К. |
| Company seal | м.п. |

| PARTICIPANT | УЧАСТНИК |
|---|---|
| National air company of the Republic of Uzbekistan "Uzbekistan Airways" | НАК «Узбекистон хаво йуллари» |
| 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan | Республика Узбекистан, 100060 г. Ташкент пр. Амира Темура 41. |
| Individual Number of tax Payer: ▮ | ИНН ▮ |
| OKPO ▮ | ОКРО ▮ |
| OKONX ▮ | ОКОНХ ▮ |
| Currency account: ▮ 7030 | Валютный счет: ▮ 7030 |
| Central operation branch of the National Bank for Foreign Economic Activity of the Republic of Uzbekistan | Центральный операционный отдел Национального банка ВЭД Республики Узбекистан |
| Bank code: 00882 | Код банка: 00882 |
| SWIFT : NBFAUZ2X | SWIFT: NBFAUZ2X |
| Director General | Генеральный директор |
| V.N. Tyan | Тян В.Н. |
| Company seal | м.п. |

воздушное судно НАК «Узбекистон хаво йуллари», подлежащее реализация
ООО «РУСАВИАИНВЕСТ»

| Тип воздушного судна и авиационных двигателей | Бортовой номер | Заводской номер | Дата выпуска | Стоимость в долл. США |
|---|---|---|---|---|
| Воздушное судно А-310 ТН-ВЭД код | UK 31003 | 706 | 1998 | |
| Авиационный двигатель PW-4152 ТН-ВЭД код | | Р724942 | 1998 | |
| Авиационный двигатель PW-4152 ТН-ВЭД код | | Р724943 | 1998 | 2 000 000 |
| Силовая установка GTCP-331-250 ТН-ВЭД код | | Р-1318 | 1992 | |

AR 0669

## А К Т
### приёма-передачи

воздушного судна Airbus А-310-324
серийный номер изготовителя 706

**ООО «РУСАВИАИНВЕСТ»** (Покупатель) настоящим подтверждает, что согласно настоящему Договору № ___от « » ___ 2016 года между НАК **«Узбекистоп хаво йуллари»** (Участник) и **ООО «РУСАВИАИНВЕСТ»** (Покупатель) в отношении воздушного судна А-310-324 UK 31003:

(a) Покупатель провел инспекцию воздушного судна, и воздушное судно соответствует описанию и находится в таком техническом состоянии и так оборудовано, как требуют условия настоящего Договора;

(b) Участник передал воздушное судно;

(c) Покупатель принял воздушное судно;

(d) Покупатель получил всю техническую документацию по воздушному судну, провел ее инспекцию и убедился в ее полноте и удовлетворительности.

(e) Местом Поставки является Международный аэропорт «Ташкент» и дата Поставки - « » 2016 год.

Дата « » __ __ 2016 года

от Участника:                                         от Покупателя:
_____ /Тян В.Н. /                    __ _____/Воробьёв А.К./
МП.                                                              М.П.

## Описание воздушного судна

Данное Приложение является неотъемлемой частью настоящего Договора о купле-продаже и, в таком виде составляет документ, применимый к покупке воздушного судна Airbus A-310-324 серийный № 706, как предусмотрено пунктом 3.1. настоящего Договора.

("N/A" означает неприменимость):

| | |
|---|---|
| 1. Самолет Airbus A-310-324<br>Изготовитель – корпорация Airbus,<br>конструкция - пассажирский,<br>модель – A-310-324,<br>серийный номер изготовителя – 706,<br>принадлежность и регистрационный<br>номер- НАК «Узбекистон хаво йуллари»<br>UK 31003,      двигателя - PW-4152 | 2. Двигателя PW-4152<br>№1  SN # P724942  24.01.98.<br>№2  SN # P724943  24.01.98. |
| 3. Документация по Самолету -<br>Формуляры и паспорта  на воздушное<br>судно, силовые установки, агрегаты и<br>комплектующие изделия, а также<br>дополнительное оборудование | 4. Аренда (N/A) |
| 5. Арендатор ( N/A) | 6. Страна регистрации - Узбекистан |
| 7А Дополнительные  Предварительные<br>Условия к Обязательствам Участника<br>продать Самолет (статьи 7.4 и 7.8)<br><br>7В Дополнительные<br>Предварительные    Условия    к<br>Обязательствам  Покупателя  купить<br>Самолет (статьи 6.1, 6.2, 6.3, 6.4, 6.5,<br>6.6, 6.12) | 8. Покупная цена – 2 000 000 (два<br>миллиона) долларов США. |
| 9. Депозит [N/A] | 10. Проценты по Депозиту [N/A] |
| 11. Перерасчет при Поставке [N/A] | 12. Банковский счет Участника<br>ИНН ▮▮▮▮▮<br>ОКРО ▮▮▮▮▮<br>ОКОНХ ▮▮▮▮▮<br>Валютный счет: ▮▮▮▮▮7030<br>Центральный операционный отдел<br>Национального банка ВЭД Республики<br>Узбекистан |
| 13. Дополнительные Положения,<br>относящиеся к налогам  [N/A] | 14 Инспекция - за счёт Покупателя |
| 15. Требования по Состоянию при<br>Поставке - «как есть, где есть» | 16. Предел возмещения ущерба N/A |

AR 0671

| | |
|---|---|
| 17. Полная Потеря [N/A] | 18. Владение - [N/A] |
| 19. Планируемая Дата Поставки [укажите] | 20. Место Поставки-Международный аэропорт «Ташкент» |
| 21. Окончательная Дата Поставки [укажите] | 22. Продавец - Государственный комитет Республики Узбекистан по приватизации, демонополизации и развитию конкуренции |
| 23. Гарантии Изготовителя [N/A] | 24. Компенсации [N/A] |
| 25. Страхование Ответственности [N/A] | 26. Дополнительные События Прекращения Договора[N/A] |
| 27A. Дополнительные Представления и Гарантии Продавца [N/A]<br><br>27B. Дополнительные Представления и Гарантии Покупателя [N/A] | 28. Извещения [укажите разрешенные средства передачи и адреса] |
| 29. [намеренно опущена] | 30. Юрисдикция - «исключительная» |
| 31. Передача Контракта по факсу / Электронными средствами -допустима по адресу: | 32. Затраты и Расходы Покупатель оплачивает расходы по пункту 4.6. настоящего Договора |
| 33. Рабочий день в г. Ташкент, г.Москва | 34. Документы по Продаже – настоящий Договор со всеми Приложениями |

**В ПОДТВЕРЖДЕНИЕ ЧЕГО,** Стороны подписали данное Приложение в соответствующие даты, указанные ниже.

от Участника:

_____ /Тян В.Н. /

от Покупателя:

_____ /Воробьёв А.К./

**Exhibit B**

AR 0674

UZBEKISTAN airways

INVOICE № 2.2.1.2352
DATE: 01.11.201-

| | | |
|---|---|---|
| Seller: | State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition | Purchaser: RUSAVIAINVEST, LTD. |
| ADDRESS: | 55 Uzbekistan Ave., 100003 Tashkent Uzbekistan | ADDRESS: 25 1 Junye side str., Shchelkovo, 141100 Moscow, Russia |
| Participant ADDRESS | UZBEKISTAN AIRWAYS 41, Amir Temur Ave., 100060, Tashkent , Uzbekistan | ATTENTION: Director General A.K. Vorobyev |

Please remit payment without deduction to the following bank account of the Participant
Account No (USD) 7030
Account with Central operation branch of the
National bank for Foreign Economic Activity
of the Republic of Uzbekistan

SWIFT CODE: NBFAU2ZX     |     BANK CODE: 00882
E-mail: fs@uzairways.com     E-mail: rusaviainvest@mail.ru

| SUBJECT: AIRCRAFT | QTY | UNIT PRICE USD | VAT % | TOTAL USD |
|---|---|---|---|---|
| One Airbus Model A310 aircraft, Reg. No. UK 31003, MSN 706 | | | | |
| Equipped with : two Pratt & Whitney model PW4152 engines MSN P724942 and P724943, and GTCP 331-250 APU P-1318 | 1 | 2 000 000,00 | - | 2 000 000,00 |
| In accordance with the Agreement No. 2 on Sale-Purchase of Aircraft dated October 27, 2016 | | | | |
| | | | | 2 000 000,00 |

Note : Uzbekistan Airways has right to direct the invoce in case of disagreement.

GENERAL DIRECTOR                                V.N. TYAN

FINANCIAL DIRECTOR                             A.A. SATTAROV

AR 0675

C

AR 0676

**Exhibit C**

AR 0677



**License Application**

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 200000 | **Category:** | Wire Transfer |
| **Currency Type:** | usd | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

Our company RUSAVIAINVEST, 25, 1-st Soviet per, Sheikovo city, Russia, is a remitter of blocked funds in the amount of 200,000 dollars to the beneficiary of the National Air Company of the Republic of Uzbekistan "Uzbekistan Airways". 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan. Our bank is a payer of ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM, intermediary bank of JPMORGAN CHASE BANK N.A., beneficiary's bank National Bank for Foreign Economic Activity of the Republic of Uzbekistan, Bank code: 00882, SWIFT: NBFAUZ22

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet persuiok | |
| Line2: | | |
| Line3: | | |
| City: | Sheikovo | **State:** Moscow |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | 7-4955444375 | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is incorporated:** | Russia | |

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet persuiok | |
| Line2: | | |
| Line3: | | |
| City: | Sheikovo | **State:** Moscow |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | 7-4955444375 | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is incorporated:** | Russia | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |
| **Point of Contact Name:** | |
| **Address:** Line1: | |
| Line2: | |

AR 0678

|          | Line3:   |          |          |               |
|----------|----------|----------|----------|---------------|
|          | City:    | New York | State:   | NY            |
|          | Zip:     | 10004    | Country: | United States |

**Email Address:**
**Phone:**          Office:
                    Mobile:
                    Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

| **Contact Category:** | Institution |
|---|---|
| **Organization Name:** | RUSAVIAINVEST |

**Point of Contact Name:**

| **Address:** | Line1: | 25, 1st Soviet pereulok |  |  |
|---|---|---|---|---|
|  | Line2: |  |  |  |
|  | Line3: |  |  |  |
|  | City: | Schelkovo | State: |  |
|  | Zip: |  | Country: | Russia (Russian Fed.) |

| **Email Address:** | info@rusaviainvest.ru |
|---|---|
| **Phone:** | Office: | 7-4955444376 |
|  | Mobile: | ▮▮▮▮▮ |
|  | Fax: | 7-4955444375 |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

| **Contact Category:** | Institution |
|---|---|
| **Organization Name:** | AKB ABSOLUT BANK (PAO) |

**Point of Contact Name:**

| **Address:** | Line1: |  |  |  |
|---|---|---|---|---|
|  | Line2: |  |  |  |
|  | Line3: |  |  |  |
|  | City: | Moscow | State: |  |
|  | Zip: |  | Country: | Russia (Russian Fed.) |

| **Email Address:** |  |
|---|---|
| **Phone:** | Office: | 7-4957777171 |
|  | Mobile: |  |
|  | Fax: |  |

**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

| **Contact Category:** | Institution |
|---|---|
| **Organization Name:** | JPMORGAN CHASE BANK |

**Point of Contact Name:**

| **Address:** | Line1: |  |  |
|---|---|---|---|
|  | Line2: |  |  |
|  | Line3: |  |  |
|  | City: |  | State: |
|  | Zip: |  | Country: |

**Email Address:**
**Phone:**          Office:
                    Mobile:
                    Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

| **Contact Category:** | Institution |
|---|---|
| **Organization Name:** | National air company of the Republic of Uzbekistan "Uzbekistan Airways" |

**Point of Contact Name:**

AR 0679

Address:       Line1:
               Line2:
               Line3:
               City:        Tashkent                            State:
               Zip:                                             Country:      Uzbekistan
Email Address:
Phone:         Office:
               Mobile:
               Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Beneficiary Financial Institution

Contact Category:       Institution
Organization Name:      National Bank for Foreign Economic Activity of the Republic of Uzbekistan
Point of Contact Name:
Address:       Line1:
               Line2:
               Line3:
               City:        Tashkent                            State:
               Zip:                                             Country:      Uzbekistan
Email Address:
Phone:         Office:
               Mobile:
               Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Attachments

| Name | Document Type |
| --- | --- |
| invoice | Supplemental Information |
| swift | Supplemental Information |
| passport of director and owner | Supplemental Information |
| bank answer 1 | Supplemental Information |
| Application Summary | License Request |

## Certification

Signature:                                                     Date:       4/24/2017
Email Address:          info@usavalinvest.ru

AR 0680

D

AR 0681

Exhibit D

AR 0682



# License Application

## Application Information

| | |
|---|---|
| **Application Type:** | Release Of Blocked Funds |
| **Blocked Amount:** | 200000 |
| **Currency Type:** | usd |
| **Date Blocked:** | 4/11/2017 |

| | |
|---|---|
| **Application Reason:** | New Application |
| **Category:** | Wire Transfer |
| **Program(s):** | Foreign Terrorist Organizations |
| **Previous Case ID:** | |

**Description of Subject Matter:**

We have blocked transfer amount 200 000 usd to Uzbekistan National Aircompany. It full legal contract. We ask you to clarify the circumstances and misunderstanding with this payment delay and allow execution of payment under the contract or to perform a refund.

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok |
| | Line2: | |
| | Line3: | |
| | City: | Shelkovo |
| | Zip: | |

| | |
|---|---|
| **State:** | |
| **Country:** | Russia (Russian Fed.) |

| | | |
|---|---|---|
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** | Office: | 7-4955444375 |
| | Mobile: | |
| | Fax: | |

| | | |
|---|---|---|
| **Principal Place of Business:** | | CIS countries |
| **Place where Business is Incorporated:** | | Russia |

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok |
| | Line2: | |
| | Line3: | |
| | City: | Shelkovo |
| | Zip: | |

| | |
|---|---|
| **State:** | |
| **Country:** | Russia (Russian Fed.) |

| | | |
|---|---|---|
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** | Office: | 7-4955444375 |
| | Mobile: | |
| | Fax: | |

| | | |
|---|---|---|
| **Principal Place of Business:** | | CIS countries |
| **Place where Business is Incorporated:** | | Russia |

### Financial Blocked Funds

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | DEUTSCHE BANK TRUST COMPANY AMERICAS | |
| **Point of Contact Name:** | | |
| **Address:** | Line1: | |
| | Line2: | |
| | Line3: | |
| | City: | New York |
| | Zip: | 10004 |

| | | |
|---|---|---|
| **State:** | NY | |
| **Country:** | United States | |

AR 0683

**Email Address:**
**Phone:**      **Office:**
                **Mobile:**
                **Fax:**
**Principal Place of Business:**
**Place where Business is incorporated:**

## Remitter

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** **Line1:** | 25, 1st Soviet pereulok | |
| **Line2:** | | |
| **Line3:** | | |
| **City:** | Schelkovo | **State:** . |
| **Zip:** | | **Country:** Russia (Russian Fed.) |

**Email Address:**          Info@rusaviainvest.ru
**Phone:**      **Office:**      7-4955444375
                **Mobile:**
                **Fax:**
**Principal Place of Business:**              CIS
**Place where Business is incorporated:**     Russia

## Remitting Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | AKB ABSOLUT BANK (PAO) | |
| **Point of Contact Name:** | | |
| **Address:** **Line1:** | | |
| **Line2:** | | |
| **Line3:** | | |
| **City:** | Moscow | **State:** |
| **Zip:** | | **Country:** Russia (Russian Fed.) |

**Email Address:**
**Phone:**      **Office:**      7-4957777171
                **Mobile:**
                **Fax:**
**Principal Place of Business:**      .
**Place where Business is incorporated:**

## Intermediary Financial Institution

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | DEUTSCHE BANK TRUST COMPANY AMERICAS | |
| **Point of Contact Name:** | | |
| **Address:** **Line1:** | | |
| **Line2:** | | |
| **Line3:** | | |
| **City:** | | **State:** |
| **Zip:** | | **Country:** |

**Email Address:**
**Phone:**      **Office:**
                **Mobile:**
                **Fax:**
**Principal Place of Business:**
**Place where Business is incorporated:**

## Beneficiary

| | | |
|---|---|---|
| **Contact Category:** . | Institution | |
| **Organization Name:** | National air company of the Republic of Uzbekistan "Uzbekistan Airways" | |
| **Point of Contact Name:** | | |
| **Address:** **Line1:** | 41 Amir Temur Ave | |
| **Line2:** | | |
| **Line3:** | | |

AR 0684

|  | City: | Tashkent |  | State: |  |
|--|-------|----------|--|--------|--|
|  | Zip:  | 100060   |  | Country: | Uzbekistan |

**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:** Institution
**Organization Name:** National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:** Line1:
Line2:
Line3:
City: Tashkent                                State:
Zip:                                         Country: Uzbekistan
**Email Address:**
**Phone:** Office:
Mobile:
Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
|------|---------------|
| invoice | Supplemental Information |
| contract | Supplemental Information |
| registration of company | Supplemental Information |
| passport of director and owner | Supplemental Information |
| Application Summary | License Request |

## Certification

Signature:                                                         Date:    5/4/2017
Email Address:          info@rusaviainvest.ru

AR 0685

E

AR 0686

**Exhibit E**

AR 0687



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | USD | **Program(s):** | Foreign Terrorist Organizations |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

We have blocked transfer amount 1000 000 usd to Uzbekistan National Aircompany. It full legal contract. We ask you to clarify the circumstances and misunderstanding with this payment delay and allow execution of payment

under the contract or to perform a refund.The blocked transaction in the amount of 1 million dollars as a preliminary payment under an official

contract to the national airline of Uzbekistan. Our Russian company Rusaviainvest and the Uzbek national company, Uzbekistan Airways are not on the sanctions lists. Correspondent Bank advised us that funds have blocked as per OFAC of global terrorism programm. The our deal is clean and has no relationship with terrorism, all amounts go to the national bank of Uzbekistan.

## Contact Information

### Applicant

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | |
| | Line2: | | | |
| | Line3: | | | |
| | City: | Shelkovo | **State:** | |
| | Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | info@rusaviainvest.ru | | |
| **Phone:** | Office: | 7-4955444375 | | |
| | Mobile: | | | |
| | Fax: | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Correspondent

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | RUSAVIAINVEST | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | |
| | Line2: | | | |
| | Line3: | | | |
| | City: | Shelkovo | **State:** | |
| | Zip: | 141100 | **Country:** | Russia (Russian Fed.) |
| **Email Address:** | | info@rusaviainvest.ru | | |
| **Phone:** | Office: | 7-4955444375 | | |
| | Mobile: | | | |
| | Fax: | | | |
| **Principal Place of Business:** | | Moscow region | | |
| **Place where Business is Incorporated:** | | Russia | | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |

AR 0688

Point of Contact Name:
Address:      Line1:
              Line2:
              Line3:
              City:        New York                          State:       NY
              Zip:         10004                             Country:     United States
Email Address:
Phone:        Office:
              Mobile:
              Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Remitter

Contact Category:        Institution
Organization Name:       RUSAVIAINVEST
Point of Contact Name:
Address:      Line1:       25, 1st Soviet peroulok
              Line2:
              Line3:
              City:        Schelkovo                         State:
              Zip:         141100                            Country:     Russia (Russian Fed.)
Email Address:            info@rusaviainvest.ru
Phone:        Office:
              Mobile:
              Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Remitting Financial Institution

Contact Category:        Institution
Organization Name:       AKB ABSOLUT BANK (PAO)
Point of Contact Name:
Address:      Line1:
              Line2:
              Line3:
              City:        Moscow                            State:
              Zip:                                           Country:     Russia (Russian Fed.)
Email Address:
Phone:        Office:      7-4957777171
              Mobile:
              Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Intermediary Financial Institution

Contact Category:        Institution
Organization Name:       JPMORGAN CHASE BANK
Point of Contact Name:
Address:      Line1:
              Line2:
              Line3:
              City:                                          State:
              Zip:                                           Country:
Email Address:
Phone:        Office:
              Mobile:
              Fax:
Principal Place of Business:
Place where Business is Incorporated:

## Beneficiary

AR 0689

**Contact Category:**    Institution
**Organization Name:**    National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:**    **Line1:**
           **Line2:**
           **Line3:**
           **City:**    Tashkent          **State:**
           **Zip:**                 **Country:**    Uzbekistan
**Email Address:**
**Phone:**    **Office:**
          **Mobile:**
          **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**    Institution
**Organization Name:**    National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**    **Line1:**
           **Line2:**
           **Line3:**
           **City:**    Tashkent          **State:**
           **Zip:**                 **Country:**    Uzbekistan
**Email Address:**
**Phone:**    **Office:**
          **Mobile:**
          **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name | Document Type |
|------|---------------|
| registration of company | Supplemental Information |
| contract | Supplemental Information |
| Application Summary | License Request |

## Certification

**Signature:**                               **Date:**    5/19/2017
**Email Address:**    info@rusaviainvest.ru

AR 0690

F

AR 0691

**Exhibit F**



AR 0693

G

AR 0694

**Exhibit G**

AR 0695



**Абсолют Банк**

FROM: AKB ABSOLUT BANK (PÁO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113376S
Касательно Вашего заявления на перевод №8 от 30.03.2017 на сумму USD 200,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE.
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000.00/USD DATED 4/3/2017 YOUR REFERENCE NUMBER 498608/07-31 OUR TRANSACTION REFERENCE NUMBER 2144394090FS.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500 PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

1

H

# Exhibit H

AR 0698



FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S
Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000.000-00 в пользу UZBEKISTAN
AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE
BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017 YOUR REFERENCE
NUMBER 496908/07-03 OUR TRANSACTION REFERENCE NUMBER 1665792093JX.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113377S

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE
DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

С уважением,
начальник отдела корреспондентских счетов
Скпина М.А.

**Exhibit I**



## Абсолют Банк

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113376S

Касательно Вашего заявления на перевод N48 от 30.03.2017 на сумму USD 200,000.00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

· Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496606/07-31 OUR TRANSACTION
REFERENCE NUMBER 2144394090FS. PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED:
THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.
Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

J

**Exhibit J**

AR 0704



**FROM:** AKB ABSOLUT BANK (PAO)
**TO:** OOO "RUSAVIAINVEST"

Референс запроса ABS201704113377S

Касательно Вашего заявления на перевод №9 от 31.03.2017 на сумму USD 1,000.000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 1,000,000.00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 498908/07-03 OUR TRANSACTION
REFERENCE NUMBER 1665792093JX .PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED: THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средства.
Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

AR 0705

K

AR 0706



FROM: AKB ABSOLUT BANK (PAO)
TO: ООО "RUSAVIAINVEST"

Референс запроса ABS201704133380A
Касательно Вашего заявления на перевод №10 от 10.04.2017 на сумму USD 200000 в пользу UZBEKISTAN"
AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента DEUTSCHE BANK
TRUST COMPANY AMERICAS о том, что данный платеж не исполнен и находится на проверке комплаенс.

QUOTE
WE REFER TO YOUR 103 DATED 04/11/17 REFERENCE 498059/07-11 FOR USD 200000.00 VALUE 04/11/17 THIS
TRANSACTION HAS NOT BEEN COMPLETED DUE TO PENDING FURTHER REVIEW BY COMPLIANCE UNIT OR
DEUTSCHE BANK COMPLIANCE POLICY.
WE WILL ADVISE YOU UPON RECEIPT OF FURTHER INSTRUCTIONS FROM THEM.
WE WILL DEBIT YOUR ACCOUNT AND PLACE FUNDS INTO A SUSPENSE ACCOUNT AT DEUTSCHE BANK TRUST
COMPANY
PENDING COMPLETION OF COMPLIANCE REVIEW AND WILL ADVISE YOU UPON RECEIPT THEIR RESPONSE.
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704133380A

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

АР 0707

L

Exhibit L

AR 0709



FROM: AKCIONERNYI KOMMERcESKII BANK ABSOLuT BANK (OAO)
TO: OBSHCHESTVO S OGRANICHENNOY OTVETSTVENNOSTYU " RUSAVIAINVEST"

Референс запроса ABS201704133380A
Касательно Вашего запроса N24 от 21/04/17 на отзыв денежных средств в сумме USD'200000, отправленных по ** ··· **
заявлению на перевод №10 от 10.04.2017 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100080 Tashkerr
Uzbekistan, UZBEKISTAN, Tashkent
Настоящими информируем Вас, что мы получили сообщение от нашего банка-корреспондента DEUTSCHE BANK
TRUST COMPANY AMERICAS о том, что средства по указанному переводу не могут быть возвращены, т.к.
заблокированы OFAC.
Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на
разблокирование средств по следующему адресу:
LICENSE DEPARTMENT, DIRECTOR OFFICE OF
FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

QUOTE
UNDER REGULATIONS ISSUED BY THE US OFFICE OF
FOREIGN ASSETS CONTROL (OFAC) PLEASE BE ADVISED
THAT THE FUNDS HAVE BEEN PLACED INTO A BLOCKED
ACCOUNT AT DEUTSCHE BANK TRUST COMPANY.
WE REGRET ANY INCONVENIENCE OUR ACTIONS MAY HAVE
CAUSED BUT WE ARE PROHIBITED FROM RETURNING
BLOCKED FUNDS UNTIL SUCH TIME AS OFAC ISSUES A
LICENSE PERMITTING RELEASE OF THESE FUNDS.

SHOULD YOU WISH TO APPLY FOR A LICENSE YOU MUST
CONTACT:LICENSE DEPARTMENT, DIRECTOR OFFICE OF
FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500
PENNSYLVANIA AVE. NW WASHINGTON DC 20220

ANY QUESTIONS REGARDING APPLICATION FOR A LICENSE
CAN BE REFERRED TO YOUR RELATIONSHIP MANAGER.

PLEASE QUOTE OUR REFERENCE NUMBER, 170411 612369
IN ALL FUTURE CORRESPONDENCE RELATING TO THIS
CASE.

REGARDS, PAYMENT INVESTIGATIONS
UNQUOTE

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704133380A

THANK YOU AND BEST REGARDS
ABSOLUT BANK

M

# Exhibit M

AR 0712

Operator: ████

Message Preparation Application: Message Modification
Unique Message Identifier:        O CHASUS33XXX 103 496606/07-31 170331

## Message Header

| | | |
|---|---|---|
| PIN | MT103 | PIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:
      Unit:         None
      Institution:  ABSLRUMMXXX        ABSOLUT BANK
                                    MOSCOW, RUSSIAN FEDERATION

Receiver:
      Institution:  CHASUS33XXX        JPMORGAN CHASE BANK, N.A.
                                      NEW YORK, NY, UNITED STATES

## Message Text

20: Sender's Reference
      496606/07-31
23B: Bank Operation Code
      CRED
32A: Value Date/Currency/Interbank Settled Amount
                        170331
                        USD
                        200,000.00
33B: Currency/Instructed Amount
                        USD
                        200,000.00
50F: Ordering Customer
      ████████████3843
      ████████████████
      1/
      2/SOVETSKIY 1-Y PER, D. 25
      3/RU/SHELKOVO 141100
57A: Account With Institution
      NBFAUS2XXXX
      NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
      TASHKENT
      UZBEKISTAN
59: Beneficiary Customer
      /████████████7030
      UZBEKISTAN AIRWAYS,
      41, AMIR TEMUR AVE.,
      100060 TASHKENT,
      UZBEKISTAN
70: Remittance Information
      PAYMENT BY INVOICE 2.2.1-2352
      DATED 01/11/2016 ACCORDING
      THE AGREEMENT 2 DD 27.10.16
      FOR AIRCRAFT A-310
71A: Details of Charges
      OUR

## Network Data

Network: SWIFT*

                    End of Report

Mon Apr 10 17:41:18 2017

Соcredited в balance Банка

Дт ████████        Кт ████████

АКБ "АБСОЛЮТ БАНК" (ПАО)
БИК ████
К/с ████████
31 Мар 2017

AR 0713

N

# Exhibit N

Operator:

Message Preparation Application: Message Modification
Unique Message Identifier:        O CHASUS33XXX 103 496908/07-03 1704D3

Message Header

| | | |
|---|---|---|
| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:

|  | Unit: | None |  |
|---|---|---|---|
|  | Institution: | ABSLRUMMXXX | ABSOLUT BANK MOSCOW,RUSSIAN FEDERATION |

Receiver:

|  | Institution: | CHASUS33XXX | JPMORGAN CHASE BANK, N.A. NEW YORK,NY,UNITED STATES |
|---|---|---|---|

Message Text

**20:** Sender's Reference
496908/07-03

**23D:** Bank Operation Code
CRED

**32A:** Value Date/Currency/Interbank Settled Amount
170403
USD
1,000,000.00

**33B:** Currency/Instructed Amount
USD
1,000,000.00

**50F:** Ordering Customer
████████████ 843
/████████████████
1/
2/SOVETSKIY 1-Y PER, D. 25
3/RU/SHELKOVO 141100

**57A:** Account With Institution
NBFAUZ2XXXX
NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
TASHKENT
UZBEKISTAN

**59:** Beneficiary Customer
/████████████ 7030
UZBEKISTAN AIRWAYS,
41, AMIR TEMUR AVE.,
100060 TASHKENT,
UZBEKISTAN

**70:** Remittance Information
PAYMENT BY INVOICE 2.2.1-2353 DATED
01/11/2016 ACCORDING THE AGREEMENT
3 DD 27.10.16 FOR AIRCRAFT RJ-85

**71A:** Details of Charges
OUR

Network Data

Network: SWIFT*

End of Report

Mon Apr 10 17:18:22 2017

Справочно в балансе Банка

Дт ████████████        Кт ████████████

АКБ "АБСОЛЮТ БАНК" (ПАО)
БИК ████
К/с ████████████
03 апр 2017

AR 0716

**Exhibit O**

Operator: ▓▓▓▓▓▓▓

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier:          O BKTRUS33XXX 103 498059/07-11 170411

### Message Header

| | | |
|---|---|---|
| FIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |
| Sender: | | |
| | Unit: | None |
| | Institution: | ABSLRUMMXXX |
| | | ABSOLUT BANK |
| | | MOSCOW,RUSSIAN FEDERATION |
| Receiver: | | |
| | Institution: | BKTRUS33XXX |
| | | DEUTSCHE BANK TRUST COMPANY AMERICAS |
| | | NEW YORK,NY,UNITED STATES |

### Message Text

20:  Sender's Reference
     498059/07-11
23B:  Bank Operation Code
     CRED
32A:  Value Date/Currency/Interbank Settled Amount
                    170411
                    USD
                    200,000.00
33B:  Currency/Instructed Amount
                    USD
                    200,000.00
50F:  Ordering Customer
     /▓▓▓▓▓▓▓▓▓▓3843
     1/OOO ZHUKOVLATUTST
     1/
     2/SOVETSKIY 1-Y PER, D. 25
     3/RU/ZHELKOVO 141100
56A:  Intermediary Institution
     CHASUS33XXX
     JPMORGAN CHASE BANK, N.A.
     NEW YORK,NY
     UNITED STATES
57A:  Account With Institution
     NBFAUZ2XXX
     NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
     TASHKENT
     UZBEKISTAN
59:  Beneficiary Customer
     /▓▓▓▓▓▓▓▓▓▓7030
     UZBEKISTAN AIRWAYS,
     41, AMIR TEMUR AVE.,
     100060 TASHKENT,
     UZBEKISTAN
70:  Remittance Information
     PAYMENT BY INVOICE 2.2.1-2352 DATED
     01/11/2016 ACCORDING THE AGREEMENT
     2 DD 27.10.16 FOR AIRCRAFT A-310
71A:  Details of Charges
     OUR
72:  Sender to Receiver Information
     /OUROUR/

### Network Data

Network: SWIFT>

### End of Report

Thu Apr 13 10:49:44 2017

Отражение в балансе Банка

Дт ▓▓▓▓▓▓▓▓                    Кт ▓▓▓▓▓▓▓▓

АКБ "АБСОЛЮТ БАНК" (ПАО)

БИК ▓▓▓▓

К/с ▓▓▓▓▓▓▓▓

11 апр 2017

AR 0719

FedEx Service Guide.
authorized declared value. Recovery cannot exceed actual documented loss Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not
Warning: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.

3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
2. Fold the printed page along the horizontal line.
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
After printing this label:



AR 0720

# B.9

Fax from Creizman LLC, including
attachments to OFAC, dated 8/21/2017

# FAX COVER SHEET

| TO | Compliane Department |
| --- | --- |
| COMPANY | Office of Foreign Assets Control |
| FAXNUMBER | 12026222426 |
| FROM | Eric Creizman |
| DATE | 2017-08-21 19:50:25 GMT |
| RE | Case Numbers SDGT-2017-344769-1; UKRAINE-EO13661-2017- |
| 344261-1 | |

## COVER MESSAGE

Please see the attached correspondence.

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

565 FIFTH AVENUE  7TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 972-0200
FAX: (646) 200-5022
ECREIZMAN@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Facsimile* ((202) 622-2426)

August 21, 2017

Compliance Department
Office of Foreign Assets Control
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Re:     **License Applications to Unblock Funds**
        **Case Numbers: SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
        **Reference Numbers: ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear Sirs and Mesdames:

I represent Rusiaviainvest, OOO, in the above-referenced pending applications for licenses to unblock funds. After I was retained in these matters, I provided your office with a comprehensive submission with exhibits, dated June 6, 2017, and a letter to Ms. Alison Cooper, Chief of Blocked Assets Administration and Analysis, dated July 5, 2017, also enclosing several exhibits. A search of OFAC's SDN lists and other related prohibited transactions has not yielded any explanation as to why JPMorgan Chase and Deutsche Bank blocked these funds pursuant to OFAC regulations. Nor will JPMorgan Chase or Deutsche Bank comment on the matters, instead referring me to OFAC.

I have tried on a weekly basis for several months now to actually communicate with a live human being in the appropriate department so that we can address the issues and so I can provide answers to my client, which is neither owned by, nor employees, anyone on the SDN lists. Nor has any searches we have run on the particulars of the transactions on OFAC software yielded any "hits."

As is demonstrated by the substance and content of my submissions, we have attempted in good faith to obtain some understanding as to why my client's funds continue to be blocked. And although I have emailed, wrote, and called OFAC, I still have not been able to speak to a live human being, nor have I been contacted by one. My client is not a wealthy company. It is an honest business and its funds were blocked in an attempted transaction to purchase a used

Compliance Department
August 17, 2017
2|Page

airplane from the Uzbekistan national air carrier. Under the terms of its contract, my client is arguably subject to liquidated damages.

I am not trying to circumvent protocol or the normal channels, but I have made a real effort to present my client's case and would greatly appreciate the courtesy of communication and the insight such communication would provide me, so that I, in turn, can provide answers to my client.

For your reference and convenience, I am attaching the June 6, 2017 and July 5, 2017 letters—without exhibits. I respectfully request a substantive response to these submissions at your earliest convenience from a member of the OFAC staff who can provide meaningful detail about the circumstances and status of the pending applications.

I thank you in advance for your consideration in this matter.

Very truly yours,

*Eric Creizman*

Eric M. Creizman

Attachments

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

565 FIFTH AVENUE 7TH FLOOR
NEW YORK, NEW YORK 10017
TEL.: (212) 972-0200
FAX: (646) 200-5021
ECREIZ@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Email, Facsimile.*
*and Federal Express*

June 6, 2017

Office of Foreign Assets Control
Licensing Division
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

Re:  **License Application to Unblock Funds**
     **Case Numbers: SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
     **Reference Numbers: ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear OFAC Licensing Officer:

This law firm has been retained to represent Rusaviainvest, OOO (the "Company" or "Rusaviainvest") in connection with the Company's above-referenced applications for licenses to unblock funds in the total amount of $1,400,000, wired by the Company to purchase a used aircraft from Uzbekistan Airways, Uzbekistan's national air carrier. A copy of the contract to purchase the aircraft (the "Contract") and a copy of the invoice for purchase (the "Invoice") are annexed hereto as Exhibits A and B. I am writing to supplement the information provided by the Company in its applications to unblock the funds, dated April 24, 2017, May 5, 2017, and May 19, 2017, which are annexed hereto as Exhibits C, D, and E. Under the terms of the Contract, the Company is required to pay liquidated damages for any delay in payment. Such damages are accruing. *See* Exhibit A at ¶¶1.1-11.6.

## Background of the Company and the Transaction

Rusaviainvest engages in the business of wholesale trading of transportation vehicles, including airplane spare parts and engines, and also contracts for the maintenance and repair of such vehicles, including aircraft. The Company's office is located in Moscow, Russia with the address: 25, 1ˢᵗ Soviet Side Street, Schelkovo, Moscow, 14110, Russia. The Company is 100% owned by Andrei Vorobev, who is also its CEO and only officer. (Mr. Vorobev's Russian Federation passport is annexed hereto as Exhibit F). The purpose of the transaction was for the Company to sell the parts of the aircraft.

OFAC Licensing Officer
June 6, 2017
Page 2

The Company has been in business since 2008, and has eight employees. The Company does not deal in weapons, arms, or military equipment and does not do business with any Country's military or any military organization. Prior to above-referenced matter, Rusaviainvest has never had any of its funds relating to any of its transactions blocked by OFAC.

The Company should not be confused with a company with a similar name, "Rusavia, Ltd." whose website is en.rusavia.com, which, according to the website, deals in a "Russian-American project" titled "Warplanes to Syria." In contrast, Rusaviainvest, Ltd. does not deal with military equipment or weaponry.

### The Wired Funds and Blocking of those Funds

Pursuant to the Contract and Invoice, on March 30, 2017, the Company sent a wire of $200,000 and on March 31, 2017, the Company sent a wire of $1,000,000, through its bank, Absolut Bank, with the intended recipient bank as JPMorgan Chase Bank, N.A. (*See* Exhibits G and H). Absolut Bank subsequently informed the Company that the transactions were "BLOCKED AS PER OFAC." (*See id.*). Absolut Bank later informed the Company that "THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL TERRORISM SANCTIONS REGULATIONS." (*See* Exhibits I and J).

Pursuant to the same Contract and Invoice, on April 10, 2017, the Company sent a wire of $200,000 through its bank, Absolut Bank, with the intermediary bank as JPMorgan Chase Bank, NA and with the receiving institution as Deutsche Bank Trust Company Americas. (*See* Exhibit I). Absolut Bank subsequently informed the Company that the transaction was not completed "DUE TO PENDING FURTHER REVIEW BY COMPLIANCE UNIT OR DEUTSCHE BANK COMPLIANCE POLICY. . . . WE WILL DEBIT YOUR ACCOUNT AND PLACE FUNDS INTO A SUSPENSE ACCOUNT AT DEUTSCHE BANK TRUST COMPANY." (*See* Exhibit K). Absolut Bank later informed the Company that "THE FUNDS HAVE BEEN PLACED INTO A BLOCKED ACCOUNT AT DEUTSCHE BANK TRUST COMPANY. . . . WE ARE PROHIBITED FROM RETURNING BLOCKED FUNDS UNTIL SUCH TIME AS OFAC ISSUES A LICENSE PERMITTING RELEASE OF THESE FUNDS." (*See* Exhibit L).

Additional records evidencing the wire transfers are annexed hereto as Exhibits M, N, and O.

### The Funds Should be Unblocked

The case numbers assigned to the blocking of the funds suggest that the compliance departments of JPMorgan Chase and Deutsche Bank believed that the parties to the transaction or the purposes of the transaction in some way violated the Russian/Ukranian Sanctions Program or the Global Terrorism Sanctions Program. We respectfully submit that the funds were blocked in error.

*First*, as stated above, the purpose of the transaction was to obtain the used aircraft from the Uzbekistan national air carrier to sell its spare parts for commercial purposes. The Company

OFAC Licensing Officer
June 6, 2017
Page 3

does not trade with any military agency or organization and has absolutely nothing to do with any terrorist organization.

*Second*, the owner of the Company is not an SDN. He is not affiliated with any SDNs, nor does he do business with any SDNs. None of the Company's employees is an SDN. Furthermore, to the extent there is any confusion, as stated above, the Company has nothing to do with Rusavia, Ltd.

## Conclusion

Because the Company has done nothing to violate any OFAC sanctions program, and because it is now facing substantial financial hardship as a result of the blocking of those funds, we respectfully request that the funds be unblocked and delivered to Uzbekistan's national air carrier, Uzbekistan Airways. In the alternative, if the transaction is being blocked due to Uzbekistan Airways, we respectfully request the funds be returned to the Company.

I would appreciate communication from your office in order to address any questions or concerns, or to provide additional documentation, if desired.

If you have questions, please feel free to contact me.

Very truly yours,

Eric Creizman

Enclosures

# CREIZMAN LLC

ERIC M. CREIZMAN
PARTNER
ATTORNEY AT LAW

565 FIFTH AVENUE 7TH FLOOR
NEW YORK, NEW YORK 10017
TEL: (212) 972-0200
FAX: (646) 200-5022
ECREIZMAN@CREIZMANLLC.COM
WWW.CREIZMANLLC.COM

*By Facsimile and*
*Federal Express*

▆▆▆▆▆▆

Chief, Blocked Assets Administration and Analysis
Office of Foreign Assets Control
U.S. Department of the Treasury
Treasury Annex
1500 Pennsylvania Avenue, NW
Washington, D.C. 20220

**Re:    License Application to Unblock Funds**
   **Case Numbers: SDGT-2017-344769-1; UKRAINE-EO13661-2017-344261-1**
   **Reference Numbers: ABS201704113376S, ABS201704113377S, ABS201704133380A**

Dear ▆▆▆▆▆

   I represent a company based in Moscow called Rusaviainvest, OOO. Rusaviainvest's
principal business is the purchase and sale of used aircraft, aircraft parts, and aircraft
maintenance and repair. In connection with an agreement to purchase a used aircraft from
Uzbekistan Airways, Uzbekistan's national air carrier, three wire transfers totaling $1,400,000
were blocked by JPMorgan Chase Bank, N.A., and Deutsche Bank National Trust Company in
late March and early April 2017 based on what I believe is the mistaken impression that the
transaction violates one or more OFAC sanctions programs.

   Rusaviainvest is not owned, and does not employ anyone on the SDN list, and a search
using our own OFAC compliance software results in no hits. I also did not recognize any
prohibition against doing business with Uzbekistan Airways. The only potential basis for a
mistake is that Rusaviainvest may have been confused with a company with a similar name,
"Rusavia, Ltd." whose website is en.rusavia.com, which, according to the website, deals in a
"Russian-American project" titled "Warplanes to Syria." To be clear, Rusaviainvest, Ltd. does
not deal with military equipment or weaponry.

   Under its contract with Uzbekistan Airways, Rusaviainvest is subject to liquidated
damages for failure to pay. While I would imagine such a delay would be subject to a force
majeure clause, the law that governs the contract is Uzbekistan law. My client initially

AR 0728

July 5, 2017
2|Page

submitted licenses to unblock the funds in April and May, and after hiring me, my firm made a supplemental submission, dated June 6, 2017, with exhibits, which are attached to this letter.

I have been unable to make any headway on behalf of my client in getting the funds released, and, if appropriate, paid to Uzbekistan Airways. Nor have I been able to speak with anyone from OFAC to attempt to address any issues or concerns. I therefore am reaching out to you.

I would appreciate a response at your earliest convenience from you or a member of your staff. I thank you in advance for your consideration in this matter.

Very truly yours,

*Eric Creizman*

Eric M. Creizman

Enclosures

# B.10

Email from OFAC to Rusaviainvest,
including Denial Letter, dated October 5,
2017

AR 0730

| | |
|---|---|
| **From:** | OFAC Licensing |
| **To:** | info@rusaviainvest.ru |
| **Subject:** | OFAC Case No. SDGT-2017-344570-1 |
| **Date:** | Thursday, October 5, 2017 3:18:36 PM |
| **Attachments:** | 1181500_FINAL_Denial_with_signature.pdf |
| **Importance:** | High |



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. SDGT-2017-344570-1

RUSAVIAINVEST
25, 1st Soviet pereulok
Shelkovo, Moscow 141100
Russian Federation

info@rusaviainvest.ru

Dear Sir or Madam:

This letter responds to your request of 04/24/2017, to the Office of Foreign Assets Control (OFAC) requesting the release of the following blocked funds transfer:

| | |
|---|---|
| Originator: | OOO Rusaviainvest |
| Originating Bank: | Commercial bank 'Absolut Bank' (PAO) |
| Value Date: | 04/03/2017 |
| Amount: | $1,000,000.00 |
| Beneficiary Bank: | National Bank for Foreign Economic Activity of the Republic of Uzbekistan |
| Beneficiary: | Uzbekistan Airways |

JPMorgan Chase Bank National Association properly blocked this transfer pursuant to U.S. sanctions administered by OFAC. In accordance with 31 C.F.R., Ch. V and/or applicable Executive orders, all property in which a sanctions target has an interest and that comes within the possession or control of a U.S. person is blocked. Copies of the relevant regulations and Executive orders are available at OFAC's Website at http://www.treasury.gov/ofac/, or upon written request to OFAC.

Under these regulations and Executive orders, a U.S. financial institution is required to block all wire transfers in which a sanctions target has an interest and that come within the institution's possession or control, even if the institution is an intermediary and the underlying transaction does not otherwise involve a U.S. person. An interest in property sufficient to require blocking may be an interest of any nature whatsoever, direct or indirect. A blocked wire transfer is generally placed into an interest-bearing account, and the holder is prohibited from engaging in any transaction in such property or from exercising any rights, powers, or privileges with respect to such property, absent authorization from OFAC. Once a wire transfer has been blocked, OFAC does not recognize attempts to extinguish the interest of the sanctions target in the transfer by, for example, canceling the original payment instructions or effecting a second payment to the beneficiary.

As reflected by your application or by information otherwise available to OFAC, the blocked funds transfer in question involves an interest of a person sanctioned pursuant to Executive Order 13224. It is OFAC's policy to license the release of blocked property only in limited circumstances, most of which do not involve commercial activity. Upon review, OFAC has determined that this blocked funds transfer does not fall within those limited circumstances. Accordingly, licensing the release of

AR 0732

the blocked funds would be inconsistent with OFAC policy, and your request is denied. You may request reconsideration of this decision and provide additional information as described on OFAC's website at https://www.treasury.gov/resource-center/sanctions/Pages/licensing.aspx.

Sincerely,

Mary Patricia Rasmussen

Mary Patricia Rasmussen
Chief, Licensing Division
Office of Foreign Assets Control

October 5, 2017
Date

# 11

Internal OFAC Email exchange, including Licensing Division and the Office of Global Targeting, including attachments, dated August 22, 2017

AR 0734

| | |
|---|---|
| **From:** | |
| **To:** | ; |
| **Cc:** | |
| **Subject:** | RE: SDGT-2017-344569-1 and SDGT-2017-344570-1: Confirmation on Rusaviainvest or any other party involved in the transaction |
| **Date:** | Tuesday, August 22, 2017 4:06:36 PM |

Thank you for your quick response.

**From:**
**Sent:** Tuesday, August 22, 2017 4:03 PM
**To:** @treasury.gov>;
@treasury.gov>
**Cc:** @treasury.gov>; @treasury.gov>;
@treasury.gov>
**Subject:** Re: SDGT-2017-344569-1 and SDGT-2017-344570-1: Confirmation on Rusaviainvest or any other party involved in the transaction

Yes this transaction was made in the interest of an SDN.

Thanks,

---

**From:** @treasury.gov>
**Date:** August 22, 2017 at 3:55:54 PM EDT
**To:** @treasury.gov>,
@treasury.gov>
**Cc:** @treasury.gov>,
@treasury.gov>, @treasury.gov>
**Subject:** FW: SDGT-2017-344569-1 and SDGT-2017-344570-1: Confirmation on Rusaviainvest or any other party involved in the transaction

Hi     s and

Please see the below and attached licensing inquiry regarding a blocked wire transfer to Uzbekistan Airways                          Thanks for your help!

**From:** 
**Sent:** Tuesday, August 22, 2017 3:51 PM
**To:**
**Subject:** SDGT-2017-344569-1 and SDGT-2017-344570-1: Confirmation on Rusaviainvest or any other party involved in the transaction

Hi ████ ,

**SDGT-2017-344569-1:** Blocked Amount: **$200,000.00.**
**SDGT-2017-344569-1:** Blocked Amount: **$1,000,000.00.**

**Deutsche Bank Trust Company Americas** blocked **Rusaviainvest's** transfers of $ 200,000.00 and $ 1,000,000.00 to **Uzbekistan Airways**, referencing OFAC blocking memo **SDGT-10522** dated April 11, 2017.

Is **Rusaviainvest**, or any other party involved in the transaction a SDGT? ████

████

If you are able to, please reply within two weeks.   If you think it will take longer than two weeks, please send an interim response.

Thanks,

████████

License Examining Officer
Office of Foreign Assets Control
█



O F A C
Office of Foreign Assets Control

License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 200000 | **Category:** | Wire Transfer |
| **Currency Type:** | usd | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

Our company RUSAVIAINVEST, 25, 1-st Soviet per, Shelkovo city, Russia, is a remitter of blocked funds in the amount of 200,000 dollars to the beneficiary of the National Air Company of the Republic of Uzbekistan "Uzbekistan Airways", 41, Amir Temur avenue, Tashkent 100060, Republic of Uzbekistan. Our bank is a payer of ABSOLUT BANK, MOSCOW, RUSSIA SWIFT: ABSLRUMM, intermediary bank of JPMORGAN CHASE BANK N.A., beneficiary's bank National Bank for Foreign Economic Activity of the Republic of Uzbekistan, Bank code: 00882, SWIFT: NBFAUZ2?

## Contact Information

### Applicant

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** Moscow |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | 7-4955444375 | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is Incorporated:** | Russia | |

### Correspondent

| | | |
|---|---|---|
| **Contact Category:** | Institution | |
| **Organization Name:** | RUSAVIAINVEST | |
| **Point of Contact Name:** | | |
| **Address:** Line1: | 25, 1st Soviet pereulok | |
| Line2: | | |
| Line3: | | |
| City: | Shelkovo | **State:** Moscow |
| Zip: | 141100 | **Country:** Russia (Russian Fed.) |
| **Email Address:** | info@rusaviainvest.ru | |
| **Phone:** Office: | 7-4955444375 | |
| Mobile: | | |
| Fax: | 7-4955444375 | |
| **Principal Place of Business:** | Moscow region | |
| **Place where Business is Incorporated:** | Russia | |

### Financial Blocked Funds

| | |
|---|---|
| **Contact Category:** | Institution |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. |
| **Point of Contact Name:** | |
| **Address:** Line1: | |
| Line2: | |

|               | Line3:   |             |          |               |
|---------------|----------|-------------|----------|---------------|
|               | City:    | New York    | State:   | NY            |
|               | Zip:     | 10004       | Country: | United States |

**Email Address:**
**Phone:**      Office:
                Mobile:
                Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

| **Contact Category:**        | Institution             |          |                       |
|------------------------------|-------------------------|----------|-----------------------|
| **Organization Name:**       | RUSAVIAINVEST           |          |                       |
| **Point of Contact Name:**   |                         |          |                       |
| **Address:**   Line1:        | 25, 1st Soviet pereulok |          |                       |
|                Line2:        |                         |          |                       |
|                Line3:        |                         |          |                       |
|                City:         | Schelkovo               | State:   |                       |
|                Zip:          |                         | Country: | Russia (Russian Fed.) |

**Email Address:**    info@rusaviainvest.ru
**Phone:**      Office:       7-4955444375
                Mobile:
                Fax:          7-4955444375
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

| **Contact Category:**       | Institution             |          |                       |
|-----------------------------|-------------------------|----------|-----------------------|
| **Organization Name:**      | AKB ABSOLUT BANK (PAO)  |          |                       |
| **Point of Contact Name:**  |                         |          |                       |
| **Address:**   Line1:       |                         |          |                       |
|                Line2:       |                         |          |                       |
|                Line3:       |                         |          |                       |
|                City:        | Moscow                  | State:   |                       |
|                Zip:         |                         | Country: | Russia (Russian Fed.) |

**Email Address:**
**Phone:**      Office:       7-4957777171
                Mobile:
                Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

| **Contact Category:**       | Institution         |          |   |
|-----------------------------|---------------------|----------|---|
| **Organization Name:**      | JPMORGAN CHASE BANK |          |   |
| **Point of Contact Name:**  |                     |          |   |
| **Address:**   Line1:       |                     |          |   |
|                Line2:       |                     |          |   |
|                Line3:       |                     |          |   |
|                City:        |                     | State:   |   |
|                Zip:         |                     | Country: |   |

**Email Address:**
**Phone:**      Office:
                Mobile:
                Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

| **Contact Category:**      | Institution                                                              |
|----------------------------|--------------------------------------------------------------------------|
| **Organization Name:**     | National air company of the Republic of Uzbekistan "Uzbekistan Airways"  |
| **Point of Contact Name:** |                                                                          |

AR 0738

**Address:**    Line1:
            Line2:
            Line3:
            City:        Tashkent                        State:
            Zip:                                         Country:    Uzbekistan
**Email Address:**
**Phone:**      Office:
            Mobile:
            Fax:
**Principal Place of Business:**
**Place where Business Is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**        Institution
**Organization Name:**       National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**    Line1:
            Line2:
            Line3:
            City:        Tashkent                        State:
            Zip:                                         Country:    Uzbekistan
**Email Address:**
**Phone:**      Office:
            Mobile:
            Fax:
**Principal Place of Business:**
**Place where Business Is Incorporated:**

## Attachments

| <u>Name</u> | <u>Document Type</u> |
| --- | --- |
| Invoice | Supplemental Information |
| swift | Supplemental Information |
| passport of director and owner | Supplemental Information |
| bank answer 1 | Supplemental Information |

## Certification

Signature:                                                      Date:    4/24/2017
Email Address:        info@rusaviainvest.ru

# Абсолют Банк

FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113376S

Касательно Вашего заявления на перевод №8 от 30.03.2017 на сумму USD 200,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.

Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC в соответствии с глобальными антитеррористическими санкциями. OFAC никаких разъяснений касательно своих действий не дает.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000 00/USD DATED 4/3/2017
YOUR REFERENCE NUMBER 496606/07-31 OUR TRANSACTION
REFERENCE NUMBER 2144394090FS. PLEASE NOTE OUR
COMPLIANCE DEPARTMENT HAS ADVISED:
THIS PAYMENT WAS BLOCKED UNDER THE GLOBAL
TERRORISM SANCTIONS REGULATIONS.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, для этого следует подать заявку на разблокирование средств.

Вся необходимая информация по заполнению заявки размещена на сайте:
https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx#licenses

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

Абсолют банк
Отдел
корреспондентских
счетов



FROM: AKB ABSOLUT BANK (PAO)
TO: OOO "RUSAVIAINVEST"

Референс запроса ABS201704113376S
Касательно Вашего заявления на перевод №8 от 30.03.2017 на сумму USD 200,000-00 в пользу UZBEKISTAN AIRWAYS, 41, Amir Temur Ave., 100060 Tashkent, Uzbekistan.
Настоящим информируем Вас, что мы получили сообщение от нашего банка-корреспондента JPMORGAN CHASE BANK, N.A. о том, что средства по указанному переводу заблокированы OFAC.

QUOTE
REGARDING YOUR PAYMENT ORDER IN AMOUNT OF 200,000.00/USD DATED 4/3/2017 YOUR REFERENCE NUMBER 496606/07-31 OUR TRANSACTION REFERENCE NUMBER 2144394090FS.
THIS PAYMENT HAS BEEN BLOCKED AS PER OFAC.
UNQUOTE

Для разблокирования средств необходимо получить разрешение OFAC, за которым следует обращаться: LICENSE DEPARTMENT, DIRECTOR OFFICE OF FOREIGN ASSESTS CONTROL DEPT. OF THE TREASURY 1500 PENNSYLVANIA AVE. NW WASHINGTON DC 20220.

Пожалуйста, при ответе ссылайтесь на наш референс запроса ABS201704113376S

С уважением,
начальник отдела корреспондентских счетов
Силина М.А.

AR 0741



**UZBEKISTAN airways**

INVOICE № 2.2.1-2352
DATE: 01.11.2016

| | |
|---|---|
| Seller: | State committee of the Republic of Uzbekistan for privatization, demonopolization and development of competition |
| ADDRESS: | 55  Uzbekistan Ave., 100003  Tashkent, Uzbekistan |
| Participant | **UZBEKISTAN AIRWAYS** |
| ADDRESS | 41, Amir Temur Ave., 100060, Tashkent , Uzbekistan |

Please remit payment without deduction to the following bank account of the Participant.

| | |
|---|---|
| Account No: | (USD)                    030 |
| Account with: | Central operation branch of the National bank for Foreign Economic Activity of the Republic of Uzbekistan |
| SWIFT CODE: NBFAUZ2X     | BANK CODE: 00882 |
| E-mail: | fo@uzairways.com |

| | |
|---|---|
| Purchaser | **RUSAVIANVEST, LTD.** |
| ADDRESS | 25  1 Sovet side str., Shchelkovo, 141100 Moscow, Russia |
| ATTENTION: | Director General A.K. Vorobyev |
| E-mail | rusavianvest@mail.ru |

**SUBJECT: AIRCRAFT**

| | QTY | UNIT PRICE USD | VAT % | TOTAL USD |
|---|---|---|---|---|
| One Airbus Model A310 aircraft, Reg. No. UK 31003, MSN 706 | | | | |
| Equipped with:  two Pratt & Whitney model PW4152 engines MSN P724942 and P724943, and GTCP 331-250 APU P-1318 | 1 | 2 000 000,00 | - | 2 000 000,00 |
| In accordance with the Agreement No. 2 on Sale-Purchase of Aircraft dated  October 27, 2016 | | | | |
| TOTAL AMOUNT | | | | 2 000 000,00 |

Note:  Uzbekistan Airways has right to correct the invoice in case of  discrepancies

GENERAL DIRECTOR

FINANCIAL DIRECTOR

V.N. TYAN

A.A. SATTAROV

AR 0742



РОССИЙСКАЯ ФЕДЕРАЦИЯ
RUSSIAN FEDERATION

RUS

РОССИЙСКАЯ ФЕДЕРАЦИЯ / RUSSIAN FEDERATION

ВОРОБЬЕВ /
VOROBEV

АНДРЕЙ КОНСТАНТИНОВИЧ /
ANDREI

М / M

RUS

31.03.2016

31.03.2026

Г. МОСКВА / USSR

ФМС 50022

Operator:

## Message Identifier

Message Preparation Application: Message Modification
Unique Message Identifier:       O CHASUS33XXX 103 496606/07-31 170331

## Message Header

| | | |
|---|---|---|
| PIN | MT103 | FIN MT 103 - Single Customer Credit Transfer * |
| Priority: | Normal | |
| Monitoring: | None | |

Sender:
| | | | |
|---|---|---|---|
| | Unit: | None | |
| | Institution: | ABSLRUMMXXX | ABSOLUT BANK |
| | | | MOSCOW, RUSSIAN FEDERATION |

Receiver:
| | | | |
|---|---|---|---|
| | Institution: | CHASUS33XXX | JPMORGAN CHASE BANK, N.A. |
| | | | NEW YORK, NY, UNITED STATES |

## Message Text

**20:** Sender's Reference
     496606/07-31

**23D:** Bank Operation Code
     CRED

**32A:** Value Date/Currency/Interbank Settled Amount
     170331
     USD
     200,000.00

**33B:** Currency/Instructed Amount
     USD
     200,000.00

**50F:** Ordering Customer
     /⬛⬛⬛3843
     1/⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ST
     1/
     2/SOVETSKIY 1-Y PER, D. 25
     3/RU/SHELKOVO 141100

**57A:** Account With Institution
     NBFAUZ2XXXX
     NATIONAL BANK FOR FOREIGN ECONOMIC ACTIVITY OF THE REPUBLIC OF UZBEKISTAN
     TASHKENT
     UZBEKISTAN

**59:** Beneficiary Customer
     /⬛⬛⬛⬛⬛⬛⬛030
     UZBEKISTAN AIRWAYS,
     41, AMIR TEMUR AVE.,
     100060 TASHKENT,
     UZBEKISTAN

**70:** Remittance Information
     PAYMENT BY INVOICE 2.2.1-2352
     DATED 01/11/2016 ACCORDING
     THE AGREEMENT 2 DD 27.10.16
     FOR AIRCRAFT A-310

**71A:** Details of Charges
     OUR

## Network Data

Network: SWIFT*

## End of Report

Mon Apr 10 17:41:18 2017

Отражения в балансе Банка

Дт  ⬛⬛⬛⬛⬛⬛⬛     Кт ⬛⬛⬛⬛⬛⬛⬛

АКБ "АБСОЛЮТ БАНК" (ПАО)

БИК ⬛⬛⬛

К/с ⬛⬛⬛

31 мар 2017

# Withheld in Full

Bates Numbers AR 0745 – AR 0749



# License Application

## Application Information

| | | | |
|---|---|---|---|
| **Application Type:** | Release Of Blocked Funds | **Application Reason:** | New Application |
| **Blocked Amount:** | 1000000 | **Category:** | Wire Transfer |
| **Currency Type:** | USD | **Program(s):** | Specially Designated Global Terrorist |
| **Date Blocked:** | 4/3/2017 | **Previous Case ID:** | |

**Description of Subject Matter:**

our company Rusaviainvest payment amount 1000000 USD for Uzbekistan Airways was blocked. Please unlock the translation

## Contact Information

### Applicant

| | | | | | |
|---|---|---|---|---|---|
| **Contact Category:** | Institution | | | | |
| **Organization Name:** | RUSAVIAINVEST | | | | |
| **Point of Contact Name:** | | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | | |
| | Line2: | | | | |
| | Line3: | | | | |
| | City: | Shelkovo | **State:** | | |
| | Zip: | | **Country:** | Russia (Russian Fed.) | |
| **Email Address:** | info@rusaviainvest.ru | | | | |
| **Phone:** | Office: | 7-4955444375 | | | |
| | Mobile: | | | | |
| | Fax: | | | | |
| **Principal Place of Business:** | | Moscow region | | | |
| **Place where Business is Incorporated:** | | Russia | | | |

### Correspondent

| | | | | | |
|---|---|---|---|---|---|
| **Contact Category:** | Institution | | | | |
| **Organization Name:** | RUSAVIAINVEST | | | | |
| **Point of Contact Name:** | | | | | |
| **Address:** | Line1: | 25, 1st Soviet pereulok | | | |
| | Line2: | | | | |
| | Line3: | | | | |
| | City: | Shelkovo | **State:** | | |
| | Zip: | | **Country:** | Russia (Russian Fed.) | |
| **Email Address:** | info@rusaviainvest.ru | | | | |
| **Phone:** | Office: | 7-4955444375 | | | |
| | Mobile: | | | | |
| | Fax: | | | | |
| **Principal Place of Business:** | | Moscow region | | | |
| **Place where Business is Incorporated:** | | Russia | | | |

### Financial Blocked Funds

| | | | | |
|---|---|---|---|---|
| **Contact Category:** | Institution | | | |
| **Organization Name:** | JPMORGAN CHASE BANK N.A. | | | |
| **Point of Contact Name:** | | | | |
| **Address:** | Line1: | | | |
| | Line2: | | | |
| | Line3: | | | |
| | City: | New York | **State:** | NY |
| | Zip: | 10004 | **Country:** | United States |
| **Email Address:** | | | | |

**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitter

**Contact Category:**          Institution
**Organization Name:**         RUSAVIAINVEST
**Point of Contact Name:**
**Address:**    **Line1:**
               **Line2:**
               **Line3:**
               **City:**       Schelkovo                        **State:**
               **Zip:**                                         **Country:**    Russia (Russian Fed.)
**Email Address:**
**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Remitting Financial Institution

**Contact Category:**          Institution
**Organization Name:**         AKB ABSOLUT BANK (PAO)
**Point of Contact Name:**
**Address:**    **Line1:**
               **Line2:**
               **Line3:**
               **City:**       Moscow                           **State:**
               **Zip:**                                         **Country:**    Russia (Russian Fed.)
**Email Address:**
**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Intermediary Financial Institution

**Contact Category:**          Institution
**Organization Name:**         JPMORGAN CHASE BANK
**Point of Contact Name:**
**Address:**    **Line1:**
               **Line2:**
               **Line3:**
               **City:**                                        **State:**
               **Zip:**                                         **Country:**
**Email Address:**
**Phone:**     **Office:**
               **Mobile:**
               **Fax:**
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary

**Contact Category:**          Institution
**Organization Name:**         National air company of the Republic of Uzbekistan "Uzbekistan Airways"
**Point of Contact Name:**
**Address:**    **Line1:**
               **Line2:**
               **Line3:**
               **City:**       Tashkent                         **State:**

AR 0751

|              | Zip:          |                                                                            | Country: | Uzbekistan |
|--------------|---------------|----------------------------------------------------------------------------|----------|------------|

**Email Address:**
**Phone:**      Office:
               Mobile:
               Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Beneficiary Financial Institution

**Contact Category:**       Institution
**Organization Name:**      National Bank for Foreign Economic Activity of the Republic of Uzbekistan
**Point of Contact Name:**
**Address:**     Line1:
                 Line2:
                 Line3:
                 City:          Tashkent                     State:
                 Zip:                                         Country:    Uzbekistan
**Email Address:**
**Phone:**       Office:
                 Mobile:
                 Fax:
**Principal Place of Business:**
**Place where Business is Incorporated:**

## Attachments

| Name        | Document Type            |
|-------------|--------------------------|
| bank answer | Supplemental Information |
| swift       | Supplemental Information |
| invoice     | Supplemental Information |
| pasport     | Supplemental Information |

## Certification

Signature:                                                    Date:      4/24/2017
Email Address:          info@rusaviainvest.ru

# B.12

OFAC Denial for case
SDGT-2017-344570-1 issued to
Rusaviainvest

AR 0753



**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C. 20220

Case No. SDGT-2017-344570-1

RUSAVIAINVEST
25, 1st Soviet pereulok
Shelkovo, Moscow 141100
Russian Federation

info@rusaviainvest.ru

Dear Sir or Madam:

This letter responds to your request of 04/24/2017, to the Office of Foreign Assets Control (OFAC) requesting the release of the following blocked funds transfer:

| | |
|---|---|
| Originator: | OOO Rusaviainvest |
| Originating Bank: | Commercial bank 'Absolut Bank' (PAO) |
| Value Date: | 04/03/2017 |
| Amount: | $1,000,000.00 |
| Beneficiary Bank: | National Bank for Foreign Economic Activity of the Republic of Uzbekistan |
| Beneficiary: | Uzbekistan Airways |

JPMorgan Chase Bank National Association properly blocked this transfer pursuant to U.S. sanctions administered by OFAC. In accordance with 31 C.F.R., Ch. V and/or applicable Executive orders, all property in which a sanctions target has an interest and that comes within the possession or control of a U.S. person is blocked. Copies of the relevant regulations and Executive orders are available at OFAC's Website at http://www.treasury.gov/ofac/, or upon written request to OFAC.

Under these regulations and Executive orders, a U.S. financial institution is required to block all wire transfers in which a sanctions target has an interest and that come within the institution's possession or control, even if the institution is an intermediary and the underlying transaction does not otherwise involve a U.S. person. An interest in property sufficient to require blocking may be an interest of any nature whatsoever, direct or indirect. A blocked wire transfer is generally placed into an interest-bearing account, and the holder is prohibited from engaging in any transaction in such property or from exercising any rights, powers, or privileges with respect to such property, absent authorization from OFAC. Once a wire transfer has been blocked, OFAC does not recognize attempts to extinguish the interest of the sanctions target in the transfer by, for example, canceling the original payment instructions or effecting a second payment to the beneficiary.

As reflected by your application or by information otherwise available to OFAC, the blocked funds transfer in question involves an interest of a person sanctioned pursuant to Executive Order 13224. It is OFAC's policy to license the release of blocked property only in limited circumstances, most of which do not involve commercial activity. Upon review, OFAC has determined that this blocked funds transfer does not fall within those limited circumstances. Accordingly, licensing the release of

AR 0754

the blocked funds would be inconsistent with OFAC policy, and your request is denied. You may request reconsideration of this decision and provide additional information as described on OFAC's website at https://www.treasury.gov/resource-center/sanctions/Pages/licensing.aspx.

Sincerely,

Mary Patricia Rasmussen

October 5, 2017
Date

Mary Patricia Rasmussen
Chief, Licensing Division
Office of Foreign Assets Control